# EXHIBIT F

# NEW AGREEMENT TO ASSOCIATE COUNSEL

Thelen, Reid & Priest L.L.P. ("TR&P"), on the one hand, and SCP Brunswick & Associates ("Brunswick"), Susannah Maas ("Maas"), and Francois Marland ("Marland") (jointly "European Counsel" or "EC"), on the other, hereby enter into the following agreement (the "Agreement") effective July 1, 2002:

## RECITALS

WHEREAS TR&P and Marland entered into an Attorney Client Agreement ("Attorney Client Agreement") dated February 17, 1999, pursuant to which Marland and RoNo retained TR&P to serve as counsel in its legal actions against Altus and others, related to the sale of certain business and other assets of Executive Life Insurance Co. ("ELIC"), which Attorney Client Agreement was amended on September 18, 2001 by a "Amendment to Attorney Client Agreement" and thereafter terminated by TR&P pursuant to a July 8, 2002 letter; and

WHEREAS thereafter, with the express consent of Marland and RoNo, TR&P entered into an Attorney Client Agreement with the Commissioner of the California Department of Insurance ("DOI") dated May 25, 1999 ("Commissioner Agreement"), wherein TR&P agreed to serve as counsel to the Commissioner in litigation pending against Altus Finance, SA. ("Altus") and other defendants in the Federal District Court in Los Angeles arising out of defendants' actions to obtain control over the business and other assets of ELIC and to pursue those and whatever other claims the Commissioner may have arising out of the same facts and circumstances (hereinafter referred to as the "ELIC claims"); and

WHEREAS TR&P and European Counsel then entered into an Agreement to Associate Counsel ("Original Agreement") executed on June 3 and June 30, 1999, completed with a side letter of June 2, 1999, and amended on September 18, 2001, where by the parties would jointly prosecute the ELIC claims; and

WHEREAS TR&P desires to re-negotiate the Commissioner Agreement in order to obtain advances, but needs to restructure the agreements between the parties as a predicate to such negotiations with the Commissioner; and

WHEREAS TR&P also desires to re-negotiate the fee splitting terms under the Original Agreement, for various reasons that were discussed among the parties during the preceding months; and

WHEREAS to facilitate TR&P's negotiations with the Commissioner the parties desire to replace the Attorney Client Agreement and Original Agreement and any and all other agreements between TR&P, on the one hand, and either Marland, RoNo or the European Counsel, on the other, with this new Agreement as the sole agreement between them;

NOW THEREFORE, in consideration for the mutual agreements contained herein and for other good and valuable consideration, the parties hereto agree as follows:

Page 1

EXHIBIT
FOR IDENTIFICATION
ERIC GILLIAM CSR 3338
11/9/06
WITNESS O'Neal

A.  **Definitions**

1. The "Litigation" as used herein means any lawsuit in which TR&P has been retained to represent the California Insurance Commissioner ("Commissioner") or RoNo LLC ("RoNo") with respect to claims arising out of the Executive Life Insurance Company rehabilitation and transactions related thereto, including

- *Harry W. Low v. Altus Finance S.A., et al.*, U.S. Dist. Ct., C.D. Cal., Case No. 99-02829 AHM (CWx)(the "Commissioner's Action");

- *State of California ex rel. RoNo v. Altus Finance S.A.*, U.S. Dist. Ct., C.D. Cal., Case No. CV 01 8587 AHM (CWx), including the California Attorney General's complaint in intervention in that action captioned *State of California ex rel. RoNo v. Altus Finance S.A.*, (referred to collectively herein as the "*RoNo* Action");

- *Sierra National Insurance Holdings, Inc. v. Credit Lyonnais S.A.*, U.S. Dist. Ct., C.D. Cal., Case No. 01-01339 AHM (CWx) (the "*Sierra* Action").

- *Carranza-Hernandez v. Altus Finance Corporation*, U.S. Dist. Ct., C.D.Cal., Case No. CV 99 08375 AHM;

- *Carranza-Hernandez v. Artemis S.A.*, U.S. Dist. Ct., C.D. Cal., Case No. CV 00 09593 AHM (CWx);

- *Harry W Low v. SDI Vendome S.A., et al.*, U.S. Dist. Ct., C.D. Cal., Case No. CV 02-5983 AHM.

2. "Net Recovered Fees" as used herein means the amount of fees recovered by TR&P as a result of its representation of the Commissioner on the ELIC claims in the Commissioner's Action or RoNo on its claims in the *RoNo* Action, after payment of "Reimbursed Expenses."

3. "Reimbursed Expenses" as used herein means any expenses reasonably incurred by TR&P, the beneficial owner of RoNo, Brunswick or EC in connection with their representation of or contribution to the Commissioner in the Commissioner's Action or of RoNo in the *RoNo* Action not already fully reimbursed by the Commissioner or RoNo; and said expenses shall be reimbursed out of fee recoveries in the Commissioner's Action or in the *RoNo* Action prior to the calculation of Net Recovered Fees.

B.  **Services and Compensation**

1. Assistance to Be Provided by European Counsel

Page 2

(a)  EC agrees to provide legal assistance, information and strategic advice as requested by TR&P in connection with its investigation and prosecution of the ELIC claims on behalf of the Commissioner.

(b)  Upon the request of TR&P, and unless disabled or otherwise unavailable for reasons beyond his control, Marland agrees to come to the United States and testify before a federal grand jury or in the Commissioner's Action on the following terms and conditions:

(i)  With respect to grand jury testimony, Marland agrees to appear voluntarily in Los Angeles so long as that appearance is subject to a confidentiality agreement with the United States Department of Justice that protects his identity and assures him that he will not be compelled to produce documents against his will that may be in his possession or control.

(ii)  TR&P will make all reasonable efforts to avoid the necessity of Marland testifying in the Commissioner's case. In the event that TR&P determines that such appearance cannot be avoided without prejudice to the position of the Commissioner, Marland agrees to voluntarily provide deposition testimony in Europe and come to the United States to testify in court.

(iii)  This paragraph B.1(b) supercedes any prior agreement between the parties on the subject of Marland either appearing to testify or provide documents in connection with the Litigation or any proceedings related thereto.

2.  **Fees to be Paid to European Counsel**

(a)  **The Formula**

Except as provided herein below, TR&P agrees to pay to EC, jointly, a portion of the legal fees that TR&P receives for its representation of the Commissioner on the ELIC claims in the Commissioner's Action or RoNo in the *RoNo* Action in the amount of thirty-five percent (35%) of the Net Recovered Fees.

(b)  **Payment process**

Payment to EC shall be made in the form of a cashiers check or wire transfer payable to Maas, or as directed by her, and shall be made within ten (10) business days following TR&P's receipt of readily available funds from the Commissioner. In the event of a dispute between the parties regarding such payment, TR&P shall immediately pay to EC any and all undisputed amounts. In the event any third-party disputes EC's right to receive such payment, TR&P shall nevertheless pay such amounts unless a court order or other valid legal process bars TR&P from making such payments.

(c)  **Expense reimbursement**

Page 3

The parties agree that TR&P will pay Reimbursed Expenses out of recovered fees prior to the calculation of Net Recovered Fees. To the extent insufficient fees are recovered to pay all Reimbursed Expenses, reimbursement shall be made to each party proportionately based on the total Reimbursed Expenses to which each party is entitled. Except as provided in this paragraph, TR&P shall have no obligation to pay any costs or expenses incurred by EC in fulfilling their obligations under this Agreement to prosecute and support the Litigation.

Separate and apart from the formula stated in subparagraphs (a) above, TR&P also agrees to reimburse EC for any litigation expenses advanced to TR&P by EC, to the extent TR&P obtains reimbursement for such expenses from the Commissioner.

(d) Advances by the Commissioner

In light of the substantial investment of professional time being made by TR&P in working on the Litigation, which time has not yet been compensated, TR&P may seek to obtain from the Commissioner one or more advances of funds to TR&P to be credited against any future right to recovery of attorneys fees in the Commissioner's Action. All such advances of funds to TR&P that are actually received by TR&P are referred to herein as "Advances." TR&P may request that such Advances be made subject to an agreement by the Commissioner that such Advances will be non-recourse, i.e., that TR&P's obligation to repay those Advances will be waived to the extent the ultimate obligation of the Commissioner to pay attorneys fees to TR&P is less than the amount of such Advances.

(e) Security for European Counsel

European Counsel is, subject to the following provisions, entitled to fifteen percent (15%) of the Advances.

(i) If permitted by the Commissioner, EC shall be immediately paid fifteen percent (15%) of each of the Advances.

(ii) If payment to EC of a portion of the Advances is not permitted by the Commissioner, but the Commissioner does permit an escrow arrangement as described herein, TR&P agrees to set aside fifteen percent (15%) of any Advances for services performed, and to place such funds in an interest bearing escrow account as security for the payment to EC of its share of the Net Recovered Fees at the end of the case. The funds in that escrow account may only be used to pay EC its share of the Net Recovered Fees when TR&P is entitled to a recovery of fees under the Commissioner's Agreement. Under no circumstances may the funds in the escrow account be claimed by TR&P. The term "Net Advances" as used herein refers to the Advances less the principal amount thereof placed into escrow as security for EC. In the event there is no recovery, the escrowed funds will be refunded to the Commissioner together with any interest earned thereon.

(iii) The escrow account shall be established by TR&P and EC on terms that reflect the above provisions and provide that the escrowed funds plus interest shall be disbursed to EC upon any of the following events: (i) entry of final judgment in the Commissioner's

Page 4

Action, (ii) execution of a settlement agreement in the Commissioner's Action resolving the case as to all defendants, or (iii) the written consent of both EC and TR&P.

    (iv)    The escrow account shall bear interest in favor of the EC.

    (f)    **Settlement of Final Fees**

In the event fees paid by the DOI are reduced by the amount of one or more Advances, the amounts paid by TR&P to EC under the formula in subparagraph (a) shall be calculated as follows:

    (i)    <u>If the DOI allows immediate payment to EC of 15% of Advances</u>, or if an escrow is established as provided in B.2(e) above, then upon receipt of any fee award:

    (A)    TR&P shall first pay Reimbursed Expenses out of the fees paid to it by DOI. The amount of any deducted Advances shall then be added back to the remainder of such fees paid by DOI to calculate the Net Recovered Fees.

    (B)    The formula in subparagraph (a) shall be used to determine the amount due from TR&P to EC. In applying the formula, to the extent TR&P has paid 15% of each Advance to EC, TR&P shall pay the balance due under the formula. If instead, TR&P has escrowed a portion of the Advances for the benefit of EC, the escrowed amount shall first be used to pay the fees due to EC under the formula, and then the remainder (if any) due to EC shall be paid from the fees paid to TR&P. For example, if the formula were to indicate that seven million dollars ($7 million) was due to EC, but three million dollars ($3 million) had been paid or escrowed for the benefit of EC, TR&P would be obligated to pay EC four million dollars ($4 million) <u>in addition to the portion escrowed</u>.

    (C)    In the event the Commissioner charges TR&P interest on Advances or discounts fees ultimately paid to TR&P to reflect interest on the Advances, then the cost of the interest shall be borne by TR&P and EC in the proportion that each shared in the Advances. For example, if the Advances total $2 million, the principal amount in the escrow account would be $300,000; if the Commissioner "charges" $100,000 in interest on the Advances, then 15% (or $15,000) of the $100,000 is to be borne by EC, and the balance of the interest would be borne by TR&P. Otherwise, the escrowed funds shall accrued interest for the benefit of EC and the interest shall not be included in the calculation of the amounts payable to EC.

    (ii)    If there is no escrow established as provided in B.2(e) above, then upon receipt of any fee award:

    (A)    TR&P shall first pay EC out of the fee award paid to it by DOI 17.647058% of any Advances previously received by TR&P ("EC True Up") to bring TR&P and EC to an 85/15 split that would have existed if 15% of Advances had been escrowed.

    (B)    TR&P shall next pay Reimbursed Expenses out of the fees paid to it by DOI as a fee award.

(C) To calculate the Net Recovered Fees, the amount of any deducted Advances and the EC True Up shall then be added back to the remainder of such fee award paid by DOI.

(D) The formula in subparagraph (a) shall be used to determine the amount due from TR&P to EC. The EC True Up shall be credited against that amount and the balance paid to EC from the remainder of fee award paid by DOI.

(iii) Whether or not there is an escrow, TR&P payments to EC pursuant to the formula may be up to and include the total amount of fees paid by DOI if necessary under the formula; however, under no circumstances shall application of the formula in subparagraph (a) obligate TR&P to pay to EC any portion of amounts advanced to it by DOI except as provided in the security provisions above.

The foregoing provisions concerning Advances are intended to provide TR&P with flexibility to re-negotiate the Commissioner Agreement with the DOI. The parties to this Agreement recognize that there is no assurance that the Commissioner will re-negotiate the Commissioner Agreement. The parties hereto also acknowledge that there is no assurance that TR&P will continue with its representation of the Commissioner in the Commissioner's Action.

(g) Other Consideration

(i) European Counsel and the beneficial owner of RoNo agree not to appeal the decision in the *RoNo* Action and to bring to a conclusion the representation of RoNo by all outside counsel. In reaching this decision, European Counsel and the beneficial owner of RoNo are relying on current litigation counsel for RoNo (Beck DeCorso) rather than TR&P.

(ii) To facilitate the close out of the *RoNo* Action, TR&P will pay the outstanding and future invoices due the Beck DeCorso for its services to RoNo up to the amount previously paid by EC. Thereafter, Beck DeCorso fees shall be paid by TR&P and EC on a 50/50 basis. Said payments by TR&P (as with the prior payments to Beck DeCorso by beneficial owner of RoNo) are "Reimbursed Expenses" subject to the reimbursement provisions of this Agreement.

(iii) In the event of any recovery by or to either RoNo or TR&P as a result of the *RoNo* Action, whether denominated "fees" or otherwise, said recovery shall be included in the calculation of Net Recovered Fees and distributed based on the application of the formula herein.

(iv) TR&P and Marland agree that their previously terminated Attorney Client Agreement shall be deemed to be re-instated and immediately superceded by this Agreement except that TR&P shall resume its role as general counsel to RoNo as provided in the September 18, 2001 Amendment to the Attorney Client Agreement.

(v) TR&P and Marland agree that in the future TR&P will provide legal services to Marland in the event that an action is commenced in the United States to block or otherwise prevent the distribution to EC of the funds to which EC is entitled under paragraph B.2 above. TR&P shall provide such services without charge for fees (as opposed to disbursements) up to

the first one hundred thousand dollars ($100,000) in fees and thereafter at TR&P's then current usual and customary rates.

(vi)    TR&P acknowledges that the past performance of the EC in connection with the Original Agreement together with the consideration recited herein is good and sufficient consideration for the performance of this Agreement and that EC's past performance shall not be raised as grounds for any further revision in the formula set forth in B.2(a) above.

C.    Other Terms

1.    Representation by Counsel

TR&P, on the one hand, and European Counsel, on the other, are each represented by and are relying exclusively on their own counsel and neither is relying on the other for legal advice regarding this Agreement, its terms or effect, or its enforceability under the laws of any jurisdiction. Marland specifically waives any conflict that might otherwise arise from the fact that pursuant to the Attorney Client Agreement TR&P represented him with respect to the *RoNo* Action and related matters, and he acknowledges that he is relying on the advice of separate and independent counsel with respect to his decision to enter into this new Agreement and its meaning under California law.

2.    The Commissioner

(a)    Disclosure and consent: The Parties expressly acknowledge that the fee splitting terms of this Agreement shall be disclosed to the Commissioner, that the circumstances leading to this change shall be disclosed to the Commissioner and that his consent to this Agreement shall be sought as part of an effort to obtain his agreement to pay Advances as provided in paragraph B above. <u>The effectiveness of this entire Agreement is conditioned on the Commissioner providing his consent.</u>

(b)    Confidentiality: The Parties further agree that any copy of the Agreement disclosed to the Commissioner or others (or portion thereof so disclosed) shall redact the name of Marland and any references that would be tantamount to disclosing his identity. The parties further agree to take all necessary and lawful steps to continue to preserve the confidentiality of his identity.

(c)    Other Issues: TR&P represents that it has orally disclosed to the Commissioner the fact that EC is not in a position to produce a copy of any "contrat de portage."

3.    Mutual Release

For the mutual consideration reflected herein, the parties hereby release and forever discharge one another from any and all claims they might have against one another for any breach by the other of any prior agreement between them or professional obligation of one to the other or any other obligation whether sounding in tort or contract, including, but not limited to,

Page 7

any claim that Marland or EC failed to perform any services, to deliver any documents or otherwise to fulfill any obligations of any kind to TR&P, or any claim that TR&P failed to perform any services, to adequately protect the interests of its clients (Marland/RoNo), to disclose any conflict, to obtain any required waiver or otherwise to discharge any obligations of any kind to Marland, RoNo or EC.

The parties expressly acknowledge and waive the provisions of California Civil Code section 1542, which reads:

> <u>Civil Code Section 1542:</u> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Both Parties have had the benefit of the advice of independent counsel in considering the significance of this Mutual Release and neither is relying on the advice of the other in deciding to enter into it.

4. Notices

All notices, requests, consents and other communications required to be in writing shall be deemed duly given only if (a) delivered personally or by facsimile (with hard copy by first class mail), or (b) mailed first class postage prepaid, or (c) sent by overnight courier, to the parties hereto at the following addresses or facsimile numbers:

If to TR&P -

Gary Fontana, Thelen Reid & Priest LLP, 101 2d Street, San Francisco, CA, USA 94105. Facsimile 415-371-1211.

If to European Counsel –

Philippe Brunswick, Avocat, SCP Brunswick & Assoc., 51 Avenue Raymond Pont Care, 75116 Paris, France. Facsimile 331-5365-0564,

and

François Marland, Avocat, domiciled at SCP Brunswick & Assoc., 51 Avenue Raymond Pont Care, 75116 Paris, France. Facsimile 331-5365-0564,

and

Susannah Maas, Avocat, 6 Rue Eynard, Geneva, Switzerland. Facsimile 41-22-319-7333.

Page 8

All notices, requests, consents and other communications will be deemed, if done as required herein, given upon delivery in the case of personal delivery and otherwise upon dispatch. Any party hereto may change the address or facsimile number or other information for purposes of notice by giving notice of the change as provided herein.

5.   No Assignment

No party may assign its rights or obligations hereunder without the prior written consent of the other parties.

6.   Entire Agreement

This Agreement represents the entire agreement between the parties hereto with respect to the subject matter hereof.

7.   Joint and Several Liability

Except where responsibility is allocated to one of them by name, SCP Brunswick & Assoc., Susana Maas and Francois Marland shall be jointly and severally responsible for their obligations under this Agreement and shall be solely responsible of allocating the burdens and benefits of this Agreement among themselves.

8.   Amendment

This Agreement may be amended only in writing executed by each of the parties hereto.

9.   Governing Law and Consent to Jurisdiction

This Agreement shall be construed and enforced under the laws of the State of California applicable to contracts to be wholly performed within the State. By signing this Agreement, EC and each of them hereby consent to jurisdiction in the State of California to enforce any rights arising hereunder and consent to service of process in the same manner as provided for the provision of notice herein.

10.   Execution in Counterparts

For the convenience of the parties hereto, this Agreement may be executed in counterparts.

IN WITNESS WHEREOF, this Agreement has been signed by and on behalf of the parties hereto on the dates indicated below. It shall take effect when signed by all parties.

Dated: December 19, 2002                    THELEN REID & PRIEST LLP

By: _____
      Partner

Dated: December ___, 2002

By: _____
      François Marland

Dated: December 6, 2002

SCP Brunswick & Assoc.

By: _____
      Philippe Brunswick

Dated: December 2, 2002

By: _____
      Susannah Maas

12/4/02/Draft 1.0

Page 10