# EXHIBIT 1



1   KEKER & VAN NEST, LLP
    ROBERT A. VAN NEST - #84065 (rvannest@kvn.com)
2   WENDY J. THURM - #163558(wthurm@kvn.com)
    STEVEN K. YODA - #237739 (syoda@kvn.com)
3   710 Sansome Street
    San Francisco, CA  94111-1704
4   Telephone:  (415) 391-5400
    Facsimile:  (415) 397-7188
5
    Attorneys for Plaintiff
6   THELEN REID & PRIEST LLP

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  THELEN REID & PRIEST LLP,                Case No.

12                        Plaintiff, C  06  2071

13        v.                               COMPLAINT FOR DECLARATORY
                                           AND INJUNCTIVE RELIEF
14  FRANÇOIS MARLAND,

15                        Defendant.

16

17                       **INTRODUCTION**

18        1.     Plaintiff Thelen Reid & Priest LLP ("Thelen") brings this action pursuant to the

19  Declaratory Judgment Act, 28 U.S.C. § 2201, to enforce an agreement between it and Defendant

20  François Marland ("Marland"), which they entered into in December 2002 ("the December 2002

21  Agreement").  *See* Ex. E.

22        2.     Thelen is a California limited liability partnership and a law firm with an office

23  in San Francisco, California.  Thelen was formed in July 1998 as the result of a merger between

24  Thelen, Marrin, Johnson & Bridges and Reid & Priest.

25        3.     Marland is a citizen of the Republic of France, a French attorney, and currently a

26  resident in Switzerland.

27        4.     Thelen previously had an attorney-client relationship with Marland.

28        5.     On February 13, 2006, Marland initiated an arbitration proceeding against Thelen

                                     1

1  in New York, asserting claims arising from Thelen's representation of him ("the New York

2  arbitration proceeding").  *See* Ex. F.

3        6.     In the December 2002 Agreement, Marland, (on behalf of himself and RoNo, *see*

4  *infra*, ¶ 20) released Thelen from any and all claims arising from their attorney-client

5  relationship, whether sounding in contract or tort, including the very claims asserted in the New

6  York arbitration proceeding.  In addition, the claims asserted in the New York arbitration

7  proceeding are barred by the statute of limitations.  Furthermore, the December 2002 Agreement

8  does not contain an arbitration clause.

9        7.     Thelen requests that the Court declare that the December 2002 Agreement is valid

10  and enforceable; declare that Marland released Thelen from all claims arising out of their

11  attorney-client relationship, including the claims asserted in the New York arbitration

12  proceeding; declare that the claims asserted in the New York arbitration proceeding are barred by

13  the statute of limitations; and enjoin Marland from pursuing the New York arbitration

14  proceeding against Thelen and from interfering with this action.

15                      **JURISDICTION**

16        8.     Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(2).  All of

17  Thelen's partners are citizens or legal permanent residents of the United States.  Marland is a

18  citizen of France.  The claims being asserted by Marland in the New York arbitration

19  proceeding, which are subject to releases and barred by the statute of limitations, are valued by

20  him at $35 million.  *See* Ex. F at 2.

21        9.     Personal jurisdiction over Marland in California is proper because Marland, in the

22  December 2002 Agreement, consented to jurisdiction in the State of California.  *See* Ex. E ¶ C.9.,

23  at 9.  Furthermore, Marland purposefully availed himself of professional relationships with

24  lawyers in California to pursue litigation in California.  The exercise of jurisdiction over Marland

25  comports with traditional notions of fair play and substantial justice.

26                        **VENUE**

27        10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a).  A substantial

28  part of the events giving rise to this claim occurred in San Francisco County.  Thelen has an

2

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    office in San Francisco.  The Thelen attorneys with whom Marland primarily interacted are from

2    Thelen's San Francisco office.  The December 2002 Agreement was negotiated, in part, in San

3    Francisco.  And, in February 1999, at Marland's direction, Thelen initiated litigation on his

4    behalf in San Francisco County Superior Court.

5                              **INTRADISTRICT ASSIGNMENT**

6           11.    For the reasons stated in, *supra*, ¶ 10, this action arises out of San Francisco

7    County.  Accordingly, this action is properly assigned to either the San Francisco Division or

8    Oakland Division.  *See* Civil L.R. 3-2(d).

9                               **GENERAL ALLEGATIONS**

10   **A.     Background**

11          12.    In 1991, Executive Life Insurance Company ("ELIC"), then one of California's

12   largest insurance companies, became insolvent and was seized by the California Department of

13   Insurance ("CDOI").  As part of ELIC's rehabilitation, CDOI conducted an auction of the junk

14   bond portfolio and insurance assets of ELIC.

15          13.    A consortium of European companies led by Altus Finance S.A. ("Altus"), a

16   subsidiary of Crédit Lyonnais, was the winning bidder at the auction.  Under the terms of the bid,

17   Altus agreed to purchase the junk bonds and a separate group led by La Société Mutuelle

18   d'Assurance Artisanale de France ("MAAF"), a French insurance company, purchased ELIC's

19   annuities and insurance policies using a California insurance company, Aurora National Life

20   Assurance Company ("Aurora"), that was created for this purpose.  At the time of the bidding,

21   Crédit Lyonnais and Altus were owned by the Government of France.

22          14.    In fact, through a series of undisclosed fronting agreements (called *contrats de*

23   *portage* in France), Altus and Crédit Lyonnais secretly owned and controlled Aurora and the

24   insurance assets acquired from the ELIC estate.  State and federal laws at the time prohibited

25   banks operating in the United States and foreign government-owned companies from owning or

26   controlling a California insurance company.  Since Crédit Lyonnais was a bank operating in the

27   United States and one that was majority-owned by the French government, the acquisition was

28   illegal.

15.    In 1997, before the illegality of Crédit Lyonnais's conduct had been exposed, Marland approached the New York law firm of Reid & Priest and informed the firm that he possessed information about a *contrat de portage*, which showed that Altus and Crédit Lyonnais secretly owned and controlled Aurora and the insurance assets acquired from the ELIC estate.

16.    In July 1998, as a result of the merger between Thelen, Marrin, Johnson & Bridges and Reid & Priest, Marland came to San Francisco and met with Thelen to discuss ways in which Marland might derive a financial benefit from his information and, at the same time, protect his identity.

17.    Thelen prepared a "white paper" which described details about the *contrat de portage* and explained why its nondisclosure to CDOI violated state and federal law. Marland and his French lawyer, Philippe Brunswick ("Brunswick"), reviewed and approved the "white paper."

18.    Thelen suggested presenting the "white paper" to CDOI to see if CDOI would be interested in pursuing claims against Crédit Lyonnais and to see if it would be willing to compensate Marland for his information. Marland and Brunswick authorized Thelen to present the "white paper" to CDOI.

19.    Between October 1998 and February 1999, Thelen met with representatives of CDOI and attempted to negotiate an agreement between CDOI and Marland. Thelen kept Marland and Brunswick fully informed of the status of these negotiations. Ultimately, CDOI failed to offer Marland compensation that was acceptable to him.

**B.    The February 1999 Agreement**

20.    In February 1999, Thelen recommended that Marland initiate his own *qui tam* lawsuit on behalf of the State of California and CDOI. Marland approved. With Marland's consent, Thelen established a Delaware limited liability corporation named RoNo, LLC ("RoNo"), of which Marland was the sole beneficial owner. RoNo would officially serve as the named plaintiff in Marland's *qui tam* lawsuit, in order to protect Marland's identity.

21.    On February 17, 1999, Thelen and Marland signed a formal attorney-client agreement ("the February 1999 Agreement"). *See* Ex. A.

22.     The February 1999 Agreement acknowledged that Thelen's "attorneys have been engaged in an effort to persuade [CDOI] to initiate legal proceedings against Crédit Lyonnais .... While [CDOI] has indicated a willingness to retain [Thelen] to conduct a further investigation and pursue potential claims against [Crédit Lyonnais], [CDOI] has been unwilling to date to pay [Marland] . . . for the information that he has provided, nor has it been willing to pay legal fees to [Thelen] that are adequate to allow [Thelen] to fully compensate [Marland] for the information and strategic assistance that he has provided . . . ." *See* Ex. A ¶ 2.

23.     Under the terms of the February 1999 Agreement, the parties agreed, among other things, that Thelen would file a *qui tam* complaint against Crédit Lyonnais in San Francisco County Superior Court and advise or assist CDOI and/or California's Attorney General in connection with the *qui tam* lawsuit. *See* Ex. A ¶¶ 6(a), 6(c).

24.     In exchange for Thelen's services, Marland agreed to pay Thelen a percentage of any recovery he received in the *qui tam* lawsuit. If the case settled before November 1, 1999, Marland agreed to pay Thelen 40% of any gross recovery. *See* Ex. A ¶ 7(a). Otherwise, Marland agreed to pay Thelen 50% of any gross recovery. *See* Ex. A ¶ 7(b).

25.     On February 18, 1999, Thelen filed a *qui tam* complaint against Crédit Lyonnais, MAAF, and others in San Francisco Superior Court (Case No. CGC-99-301344). The contents of the complaint and overall strategy were reviewed and approved by Marland and Brunswick prior to the complaint's filing. The complaint remained under seal for over two years, until June 19, 2001, when California's Attorney General elected to intervene in, and proceed with, the lawsuit.

26.     Also on February 18, 1999, CDOI independently filed a separate complaint in Los Angeles County Superior Court against many of the same defendants, using separate counsel.

27.     Subsequently, CDOI asked Thelen to represent CDOI in its lawsuit. In exchange for Thelen's services, CDOI offered to pay Thelen a percentage of any recovery it obtained. *See* Ex. B ¶ 5. CDOI refused to directly compensate Marland for his information, but CDOI did not object to Thelen sharing with Marland a portion of the legal fees it collected from CDOI. Thelen informed Marland and Brunswick of CDOI's overture, and they agreed on the terms and

1  conditions under which Thelen would represent CDOI.

2        28.    Marland and Brunswick authorized Thelen to represent CDOI in CDOI's lawsuit,

3  provided that they and Susannah Maas ("Maas") (another of Marland's European lawyers) be

4  allowed to share in Thelen's legal fees.

5        29.    In May 1999, Thelen and CDOI executed an attorney-client agreement by which

6  Thelen agreed to represent CDOI in its litigation. *See* Ex. B. Thelen obtained both Marland's

7  consent to represent CDOI and CDOI's consent to share fees with Marland, Brunswick, and

8  Maas.

9  **C.     The June 1999 Agreement to Associate Counsel**

10       30.    Thelen, Marland, Brunswick and Maas signed a fee-sharing agreement in June

11  1999 ("the June 1999 Agreement to Associate Counsel"). *See* Ex. C.

12       31.    Under the terms of the June 1999 Agreement to Associate Counsel, if CDOI's

13  case settled on or before December 31, 1999, Thelen agreed to pay Marland, Brunswick and

14  Maas a total of 65% of the legal fees paid to it by CDOI. *See* Ex. C ¶ 2(a). Otherwise, Thelen

15  agreed to pay 52.5% of the legal fees paid to it by CDOI. *See* Ex. C ¶ 2(b).

16       32.    In exchange, Marland, Brunswick and Maas agreed to assist Thelen's prosecution

17  of CDOI's lawsuit by, among other things, investigating facts, securing documents or testimony,

18  and accommodating all other reasonable requests by Thelen. *See* Ex. C ¶ 1.

19       33.    In an addendum to the June 1999 Agreement to Associate Counsel, Marland

20  agreed to substantially reduce his (and his European lawyers') share of Thelen's fees in the event

21  his testimony was reasonably required and he failed to testify. *See* Ex. D ¶ 3, at 2.

22  **D.     The December 2002 Agreement**

23       34.    Prior to July 2002, Thelen approached Marland in an attempt to restructure the

24  terms of their fee-sharing relationship based on a number of factors, including the changed

25  economics of the prolonged litigation. Negotiations ensued.

26       35.    On July 8, 2002, pursuant to the terms of the February 1999 Agreement (*see* Ex.

27  A ¶ 22(a)), Thelen gave Marland 30 days' written notice of its decision to withdraw from its

28  representation of him.

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

36.    In late July 2002, Marland informed Thelen that, contrary to his earlier representations, he in fact did not possess any copies of the *contrat de portage*.  (In a deposition subsequently conducted in December 2004, Marland testified that he had destroyed his copies of the *contrat de portage* in July 2001.)  Negotiations continued.

37.    During the negotiations, Marland raised a number of concerns and made a number of allegations regarding Thelen's representation of him.  Among other things, Marland claimed that Thelen had misled him about the *qui tam* lawsuit, acted in bad faith in agreeing to represent CDOI, and otherwise breached duties owed to him under their attorney-client relationship.

38.    By December 2002, Thelen and Marland worked out a resolution of their disagreements and mutual claims, and signed a new Agreement ("the December 2002 Agreement").  *See* Ex. E.

39.    Under the terms of the December 2002 Agreement, Thelen, Marland, Brunswick and Maas agreed that the December 2002 Agreement replaced the February 1999 Agreement, the June 1999 Agreement to Associate Counsel, "and any and all other agreements" between them.  Ex. E at 1.

40.    Under the terms of the December 2002 Agreement, Thelen agreed to pay Marland, Brunswick and Mass a total of 35% of Thelen's "Net Recovered Fees" (i.e., 35% of the legal fees paid to Thelen by DOI after subtracting unreimbursed expenses).  *See* Ex. E ¶ B.2.(a), at 3.

41.    Under the terms of the December 2002 Agreement, Thelen and Marland (and Marland's European lawyers) mutually "release[d] and forever discharge[d] one another from any and all claims they might have against one another for any breach by the other of any prior agreement between them or professional obligation of one to the other or any other obligation whether sounding in tort or contract, including but not limited to . . . any claim that [Thelen] failed to perform any services, to adequately protect the interests of its clients (Marland/RoNo), to disclose any conflict, to obtain any required waiver or otherwise to discharge any obligations of any kind to Marland, RoNo, or [Marland's European lawyers]" (the "Released Claims").  Ex. E ¶ C.3., at 7-8.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

42. Furthermore, by "expressly acknowledg[ing] and waiv[ing]" the provisions of CAL. CIV. CODE § 1542, Marland also released Thelen from all claims of which he was not aware. Ex. E ¶ C.3., at 8.

43. Marland consulted independent counsel and accepted the mutual release. *See* Ex. E ¶ C.1., at 7 ("[Thelen], on the one hand, and [Marland and Marland's European lawyers], on the other, are each represented by and are relying exclusively on their own counsel and neither is relying on the other for legal advice regarding this Agreement"); Ex. E ¶ C.3., at 8 ("Both Parties have had the benefit of the advice of independent counsel in considering the significance of this Mutual Release").

44. The December 2002 Agreement does not contain an arbitration clause. *See* Ex. E.

45. To date, the CDOI has paid Thelen $54,371,000 in attorneys fees. Of that, Thelen has paid Marland (and Marland's European lawyers) $19,025,682 (35%), pursuant to the December 2002 Agreement. Marland has accepted these payments.

**E.    Marland Retains New Counsel to Replace Thelen**

46. In or about August 2004, Marland retained Andrew Hayes ("Hayes"), and the law firm of Boies, Schiller & Flexner LLP, to represent him in the *qui tam* lawsuit and other ELIC-related matters. Thelen ceased representing Marland for any purpose relating to the *qui tam* lawsuit, the ELIC-related matters, or any other matter whatsoever.

47. On February 13, 2006, Marland commenced an arbitration proceeding against Thelen in New York City with the American Arbitration Association by filing a Demand for Arbitration pursuant to Section 23 of the February 1999 Agreement. Ex. F. Purporting to act on behalf of himself and RoNo, Marland seeks to recover $35 million in damages for alleged acts of malpractice and breaches of fiduciary duty by Thelen.

48. Marland's claims, set forth in the "Description of Claims" of the Demand for Arbitration, allege that Thelen's advice to Marland was erroneous; that Thelen breached its duties to Marland by placing its interests ahead of his; that Thelen breached fiduciary duties to Marland by saying Thelen had a waiver of conflicts from Marland when Thelen allegedly did not; that the December 2002 Agreement is not fair and reasonable and is unenforceable; that the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

369161.02

1    release and waiver provisions of the December 2002 Agreement are void and against public

2    policy; and as a consequence Thelen should forfeit to Marland $35 million, or alternatively pay

3    Marland a greater share of attorneys fees.  Ex. F ¶ 22(a)-(g).

4    **CLAIMS FOR RELIEF**

5    **Claim One**
**(Declaratory Relief)**

6

7    Thelen incorporates by reference the allegations contained in Paragraphs 1 through 48, inclusive.

8        49.    The December 2002 Agreement is a valid and enforceable contract.  Thelen has

9    performed all terms and conditions of the December 2002 Agreement.  Marland has ratified the

10   December 2002 Agreement by, among other things, accepting payments made pursuant to the

11   December 2002 Agreement.

12       50.    Marland initiated an arbitration proceeding against Thelen in New York pursuant

13   to the February 1999 Agreement.  In his arbitration demand, Marland asserts claims that were

14   waived and released by the terms of the December 2002 Agreement.  Marland also asserts that

15   the December 2002 Agreement is invalid and unenforceable.

16       51.    An actual, immediate, justiciable controversy has arisen between Thelen and

17   Marland regarding whether the December 2002 Agreement is valid and enforceable.

18       52.    Thelen seeks a declaratory judgment from the Court that the December 2002

19   Agreement is valid and enforceable.

20   **Claim Two**
**(Declaratory Relief)**

21

22       53.    Thelen incorporates by reference the allegations contained in Paragraphs 1

23   through 53, inclusive.

24       54.    Marland has initiated an arbitration proceeding against Thelen in New York,

25   asserting claims that arise from Thelen's representation of him.  *See* Ex. F.

26       55.    In the December 2002 Agreement, Marland released Thelen from the Released

27   Claims, which include the claims asserted in the New York arbitration proceeding.

28       56.    An actual, immediate, justiciable controversy has arisen between Thelen and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

369161.02

1  Marland regarding whether Marland has released Thelen from the Released Claims, which

2  include the claims asserted in the New York arbitration proceeding.

3      57.    Thelen seeks a declaratory judgment from the Court that Marland has released

4  Thelen from the Released Claims, which include the claims asserted in the New York arbitration

5  proceeding.

6                                   **Claim Three**
                                 **(Declaratory Relief)**
7

8      58.    Thelen incorporates by reference the allegations contained in Paragraphs 1

9  through 58, inclusive.

10     59.    To the extent that Marland or RoNo actually was injured by any allegedly

11 wrongful acts or omissions by Thelen, such actual injury was sustained more than one year prior

12 to February 13, 2006, the date of the initiation of the New York arbitration proceeding.

13     60.    Thelen ceased representing Marland and RoNo in the *qui tam* lawsuit, in any

14 matters relating to ELIC, and in any matters whatsoever more than one year prior to February 13,

15 2006, the date of the initiation of the New York arbitration proceeding.

16     61.    Marland discovered, or, through the use of reasonable diligence, should have

17 discovered, the facts constituting the allegedly wrongful acts or omissions set forth in the

18 arbitration demand more than one year prior to February 13, 2006, the date of the initiation of the

19 New York arbitration proceeding.

20     62.    Thelen seeks a declaratory judgment from the Court that any and all claims by

21 Marland, on behalf of himself and RoNo, against Thelen for any wrongful act or omission in the

22 course of Thelen's performance of professional services for Marland or RoNo are barred by the

23 statute of limitations embodied in CAL. CIV. PROC. CODE § 340.6.

24                                   **Claim Four**
                                  **(Injunctive Relief)**
25

26     63.    Thelen incorporates by reference the allegations contained in Paragraphs 1

27 through 63, inclusive.

28     64.    Marland has initiated an arbitration proceeding against Thelen in New York,

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  asserting claims that arise from Thelen's representation of him and RoNo.

2       65.    In the December 2002 Agreement, Marland released Thelen from the Released

3  Claims, which include the claims Marland asserted in the New York arbitration proceeding.

4       66.    Thelen seeks a preliminary and permanent injunction, prohibiting Marland,

5  himself or through his agents, including RoNo, from asserting any claims against Thelen which

6  are released by the December 2002 Agreement, including the claims asserted in the New York

7  proceeding, from pursuing the New York arbitration proceeding and from interfering with this

8  action.

## PRAYER FOR RELIEF

10      WHEREFORE, Thelen prays for the following relief:

11       67.    A judgment against Marland according to the declaratory relief sought;

12       68.    A preliminary and permanent injunction, prohibiting Marland, himself or through

13  his agents, including RoNo, from asserting any claims against Thelen which are released by the

14  December 2002 Agreement, including the claims asserted in the New York proceeding, from

15  pursuing the New York arbitration proceeding and from interfering with this action;

16       69.    Its costs and fees in this action;

17       70.    Such other and further relief as the Court may determine is just and proper.

18

19

20  Dated: March 20, 2006                  KEKER & VAN NEST, LLP

21

22

23                    By: _____

                       ROBERT A. VAN NEST

24                         Attorneys for Plaintiff

                       THELEN REID & PRIEST LLP

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF