# EXHIBIT 6

1   KEKER & VAN NEST, LLP
    ROBERT A. VAN NEST - #84065
2   WENDY J. THURM - #163558
    BENEDICT Y. HUR - #224018
3   BENJAMIN BERKOWITZ - #244441
    710 Sansome Street
4   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
5   Facsimile:  (415) 397-7188

6   Attorneys for Plaintiff, Counter-Defendant, and
    Counter-Counter-Claimant
7   THELEN REID BROWN RAYSMAN & STEINER LLP
         fka THELEN REID & PRIEST LLP
8

9                  UNITED STATES DISTRICT COURT

10               NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  THELEN REID BROWN RAYSMAN &        Case No. C 06-2071 VRW
    STEINER LLP, fka THELEN REID &
14  PRIEST LLP,                        **NOTICE OF MOTION AND MOTION OF**
                                       **THELEN REID BROWN RAYSMAN &**
15          Plaintiff and Counter-Defendant,   **STEINER FOR PARTIAL SUMMARY**
                                       **JUDGMENT; MEMORANDUM OF**
16       v.                            **POINTS AND AUTHORITIES IN**
                                       **SUPPORT**
17  FRANÇOIS MARLAND,
                                       Date:      April 12, 2007
18          Defendant and Counter-Claimant.    Time:      2:00 p.m.
                                       Dept:      Courtroom 6
19  THELEN REID BROWN RAYSMAN &        Judge:     Hon. Chief Judge Walker
    STEINER LLP, fka THELEN REID &
20  PRIEST LLP,                        Date Comp. Filed:    March 20, 2006
21              Counter-Counter-Claimant,      Trial Date:          August 6, 2007
22       v.
23  FRANÇOIS MARLAND and SUSANNAH
24  MAAS,
25          Counter-Counter-Defendants.
26
27
28

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION...........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND FACTS .........................................................................................4

      A.      Marland approaches Thelen with information that a French bank illegally purchased the assets of a California insurance company.........................4

      B.      Marland hires Thelen to advise him on how to profit from his information........................................................................................................5

      C.      The Department retains Thelen and allows it to share fees with Marland..........................................................................................................6

      D.      The *qui tam* action is not dismissed because the California Attorney General intervenes. ....................................................................................7

      E.      Thelen seeks to restructure the parties' fee sharing agreement to better reflect Thelen's and Marland's relative contributions to the Department's case....................................................................................7

III.    FACTS MATERIAL TO THIS MOTION ...............................................................8

      A.      In 2004—more than six months before the cut-off date—Marland loses trust in Thelen and hires another lawyer..............................................8

      B.      In June 2004—almost eight months before the cut-off date—Marland receives a smaller payment than he believes he was entitled to receive from the settlement of the Department's case.............................................9

      C.      Thelen's representation of Marland ended in January 2005—before the February 13, 2005 cut-off date................................................................9

      D.      On February 9, 2005—four days before the cut-off date—Marland's new lawyer clearly identified Marland's potential claims against Thelen...........................................................................................................10

IV.     MARLAND'S COUNTERCLAIMS.......................................................................11

V.      SUMMARY JUDGMENT STANDARD................................................................12

VI.     ARGUMENT ..........................................................................................................12

      A.      Marland's first and fifth counterclaims are barred by the statute of limitations set forth in California Code Of Civil Procedure Section 340.6(a). ....................................................................................................12

i

391058.03

**TABLE OF CONTENTS**
(cont'd)

                                                                                    **Page**

        1.     Marland discovered facts giving rise to his counterclaims no later than February 9, 2005—four days before the cut-off date. ...............13

        2.     None of section 340.6's tolling provisions apply ......................................15

           a.     Marland suffered "actual injury" no later than June 2004.....................................................................................16

           b.     Thelen ceased representing Marland and RoNo no later than February 4, 2005—nine days before the cut-off date. ...............................................................................17

VII.    CONCLUSION...........................................................................................18

391058.03

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## FEDERAL CASES

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986)...........................................................................................12

*Celotex Corp v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................12

*TW Electric Serv. v. Pacific Electric Contractors Association*,
  809 F.2d 626 (9th Cir. 1987) ...........................................................................12

## STATE CASES

*Adams v. Paul*,
  11 Cal. 4th 583 (1995) ......................................................................................14

*Beck v. Wecht*,
  28 Cal. 4th 289 (2002) ......................................................................................13

*Gordon v. Law Offices of Aguirre & Meyer*,
  70 Cal. App. 4th 972 (1999) ............................................................................15

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1998) .....................................................................................14

*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison*,
  18 Cal. 4th 739 (1998) ...............................................................................14, 15, 16, 17

*Laird v. Blacker*,
  2 Cal. 4th 606 (1992) ........................................................................................13

*Mason v. Levy & Van Bourg*,
  77 Cal. App. 3d 60 (1977) ...............................................................................13

*McGee v. Weinberg*,
  97 Cal. App. 3d 798 (1979) .............................................................................14

*Miller v. Bechtel Corp.*,
  33 Cal. 3d 868 (1983) .......................................................................................15

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999) ......................................................................................14

*Pompilio v. Kosmo, Cho & Brown*,
  39 Cal. App. 4th 1324 (1995) ..........................................................................13

*Radovich v. Locke-Paddon*,
  35 Cal. App. 4th 946 (1995) ............................................................................13

*Samuels v. Mix*,
  22 Cal. 4th 1 (1999) ....................................................................................14, 15

391058.03

1

## TABLE OF AUTHORITIES
### (cont'd)

2
**Page(s)**

3

*Sanchez v. South Hoover Hospital,*
      18 Cal. 3d 93 (1976) .............................................................................................14

4

*Stoll v. Super. Ct.,*
      9 Cal. App. 4th 1362 (1992) ...............................................................................13

5

6

*Worton v. Worton,*
      234 Cal. App. 3d 1638 (1991) .............................................................................14

7

### FEDERAL STATUTES

8

Fed. R. Civ. P. 56...........................................................................................................1

9

### STATE STATUTES

10

Cal. Code Civ. Proc. § 340.6 ......................................................................1, 2, 12, 17

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

391058.03

## NOTICE OF MOTION

PLEASE TAKE NOTICE that at 2:00 p.m. on April 12, 2007, or at such other date and time ordered by this Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff, Counterclaim-Defendant, and Counter-Counterclaimant Thelen Reid Brown Raysman & Steiner LLP ("Thelen") will, and hereby does, move this Court for partial summary judgment of François Marland's First Counterclaim and Fifth Counterclaim.

This motion is brought pursuant to FED. R. CIV. P. 56 as there are no genuine issues of material fact that prevent prompt adjudication. The applicable statute of limitations—California Code of Civil Procedure § 340.6—bars Marland's First Counterclaim for Breach of Fiduciary Duty and Fifth Counterclaim for Professional Negligence.

This motion seeks entry of an Order granting Thelen's Motion for Partial Summary Judgment and is based upon the Memorandum of Points and Authorities, the declarations and supporting exhibits submitted herewith, the pleadings and papers on file, and such other oral argument and documentary evidence as may be presented at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

François Marland's first counterclaim for breach of fiduciary duty and fifth counterclaim for legal malpractice are time barred. Marland alleges that Thelen—who was his lawyer—harmed him by failing to maximize the amount of money he received as a result of his information about an illegal transaction.

Thelen and Marland entered into a written attorney-client agreement in 1999, after Marland approached Thelen with information about an illegal fronting arrangement that allowed a bank controlled by the French government and operating in the United States—Crédit Lyonnais—to acquire the junk bond portfolio and insurance assets of a California life insurance company. Because of the fronting agreement, the transaction was illegal under both state and federal law. Marland—a French lawyer living in Switzerland—said he had obtained a copy of an agreement demonstrating that Crédit Lyonnais secretly controlled the French insurance company (MAAF) that had acquired the California insurance assets. Marland asked Thelen to

1

advise him on how he might legally profit from his information and possession of evidence about the illegal transaction.

In May 1999—with Marland's consent—Thelen entered into a written attorney-client agreement with the California Department of Insurance to represent the Department in an action against Crédit Lyonnais and other French entities that had participated in the fraud. Marland consented to Thelen's representation of the Department on the condition that Thelen agree to share any attorneys' fees it obtained from successfully representing the Department. In 2004 and 2005, Thelen negotiated settlements for the Department totaling $705 million. Thelen eventually received over $54 million in attorneys' fees from the Department, of which it paid Marland $19 million.

Marland, however, asserts that he should have been paid more. He claims that Thelen breached its fiduciary duties and committed legal malpractice by failing to maximize the amount of money he received as a result of his information. According to Marland, Thelen harmed him by placing its own interests ahead of Marland's when negotiating the fee agreement with the Department. Marland also asserts that Thelen pressured him into lowering the percentage of attorneys' fees he was entitled to receive from Thelen's representation of the Department. As part of a December 2002 agreement, Marland agreed to accept 35% of any attorneys' fees received by Thelen, rather than 52.5% of Thelen's fees as set forth in an earlier fee-sharing agreement that was superseded by the December 2002 Agreement.

Although Marland's counterclaims are clearly contradicted by the terms of the December 2002 Agreement and are not supported by the record, that is irrelevant to the Court's determination of this motion. Under California Code of Civil Procedure §340.6, any claims brought by Marland against Thelen arising out of or related to Thelen's legal advice to Marland—other than those alleging actual fraud—had to be brought within one year of the date Marland suspected he might have a claim. It is undisputed that Marland filed an arbitration action alleging breach of fiduciary duty and legal malpractice claims against Thelen on February

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

391058.03

1   13, 2006.  Thus, if Marland suspected that he had claims against Thelen before February 13,

2   2005 (the "cut-off date"), those claims are barred by section 340.6.[1]

3          Indeed, although there is evidence that Marland suspected he had claims against Thelen

4   as early as 2004, it is indisputable that Marland had such suspicion no later than February 9,

5   2005.  In 2004, Marland hired Andrew Hayes to advise him about issues relating to Thelen.  That

6   same year, Hayes wrote memoranda analyzing Marland's possible claims.  Then, on February 9,

7   2005, Hayes sent Thelen an e-mail listing various grounds on which Marland might bring claims

8   against Thelen.  Because Marland failed to file an action making these allegations until February

9   13, 2006—more than one year after he knew or should have known he had them—Thelen is

10  entitled to summary judgment on Marland's breach of fiduciary duty and legal malpractice

11  counterclaims.

12         Moreover, while section 340.6 has tolling provisions, none apply here.  First, a cause of

13  action can be tolled until a plaintiff has suffered "actual injury."  Here, it is undisputed that

14  Marland suffered actual injury more than one year before he filed for arbitration on February 13,

15  2006.  Assuming his claims are valid, Marland was injured in 2004 when he was paid the first of

16  several fee-sharing payments by Thelen.  On June 18, 2004, Marland was paid just over

17  $5 million by Thelen—35% of the amount that Thelen had received from the Department for

18  settlements obtained in 2004.  Because Marland asserts that he was and is entitled to receive

19  52.5%, he was "injured" when he received the lower payment.  Marland was also injured in 2004

20  when he hired Andrew Hayes to be his new lawyer.  Both Marland's receipt of less than 52.5%

21

22  [1]      Marland first raised these claims in a New York arbitration action against Thelen on
    February 13, 2006.  Because the agreement that governs the parties' relationship requires that
23  any dispute be resolved by a court in California, Thelen then filed a declaratory relief action in
    this Court on March 20, 2006.  *See* Docket Item No. 1.  The arbitration has been stayed by
24  stipulation and order, pending the court's final order on Thelen's motion for a preliminary
    injunction.  *See* Docket Item No. 13.  Marland has filed his breach of fiduciary duty and legal
25  malpractice claims as "counterclaims" to Thelen's declaratory relief action.  *See* Docket Item
    No. 14.  For purposes of this motion, Thelen treats Marland's counterclaims as if they had been
26  filed on February 13, 2006, when the New York arbitration was filed.  In seeking partial
    summary judgment of Marland's First and Fifth Counterclaims, Thelen has not and does not
27  waive its right to a preliminary and permanent injunction of the New York arbitration.  Thelen
    intends to seek that injunction through a motion for preliminary injunction and for summary
28  judgment to be heard on May 3, 2007, pursuant to the court's most recent scheduling order.  *See*
    Docket Item No. 127, at 4.

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

of Thelen's attorneys' fees and his hiring of Andrew Hayes to investigate Thelen's alleged

misconduct demonstrate "actual injury."

Second, under "continuous representation" tolling, a cause of action is tolled during the

time that the attorney continues to represent the plaintiff regarding the subject matter in which

the wrongful act or omission occurred.  Marland testified under oath that by January 2005, he no

longer considered Thelen to be his attorney.  Then, Andrew Hayes sent an e-mail on February 4,

2005 officially terminating Thelen's representation of Marland's wholly-owned corporation,

RoNo LLC.  Because this was more than one year before Marland filed his arbitration action

against Thelen, the "continuous representation" tolling provision does not save Marland's

counterclaims.

Because Marland knew of his breach of fiduciary duty and negligence claims more than

one year before filing his arbitration action on February 13, 2006—and because no tolling

provision applies—Marland's counterclaims for breach of fiduciary duty and legal malpractice

are time-barred as a matter of law.[2]

## II.    BACKGROUND FACTS[3]

### A.    Marland approaches Thelen with information that a French bank illegally purchased the assets of a California insurance company.

In 1991, Executive Life Insurance Company ("ELIC"), then one of California's largest

insurance companies, became insolvent and was seized by the California Department of

Insurance.  As part of ELIC's rehabilitation, the Department conducted an auction of the junk-

bond portfolio and insurance assets of ELIC.[4]  A consortium of European companies, led by

Altus Finance S.A, a subsidiary of Crédit Lyonnais, was the winning bidder at the Department's

auction.  Under the terms of the bid, Altus agreed to purchase ELIC's bonds, and a supposedly

---

[2]  Marland's second, third and fourth counterclaims also allege breaches of duty arising from his prior attorney-client relationship with Thelen.  By not including those other counts in this motion, Thelen does not waive its statute of limitations defense to those claims and specifically reserves the right to seek summary judgment on these counterclaims.

[3]  The following facts are undisputed but are not material to the Motion.

[4]  Thelen's First Amended Complaint ("FAC"), Docket Item No. 11, ¶12; Revised Amended Answer and Counterclaims, Docket No. 72 ("Answer") ¶12.

4

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

391058.03

separate and independent consortium of European companies, led by La Societe Mutual Assurance Artisinale de France ("MAAF"), a French insurance company, agreed to acquire and operate ELIC's insurance business.[5]

In fact, MAAF was a front acting solely for the benefit of Altus and Crédit Lyonnais. Through a series of secret agreements, Altus and Crédit Lyonnais controlled MAAF, which had acquired the insurance assets from the ELIC estate.[6]  Since Crédit Lyonnais was a federally-licensed bank operating in the United States and one that was majority-owned by the French government, the transaction by which Crédit Lyonnais obtained the junk bond portfolio and insurance assets was illegal.[7]

**B.     Marland hires Thelen to advise him on how to profit from his information.**

In 1998, before the illegality of Crédit Lyonnais' conduct had been exposed, Marland consulted with the New York law firm of Reid & Priest.[8]  Marland is a French attorney who lives in Switzerland.[9]  Marland claimed to possess information about a secret agreement—known as a *contrat de portage* in French—between Altus and MAAF used in connection with the ELIC purchase.[10]  Marland wanted to know if he could profit legally from his information.[11]

After Reid & Priest merged with Thelen, Marrin, Johnson & Bridges, the new firm ("Thelen") and Marland considered various options, one of which was to have Marland initiate his own *qui tam* lawsuit on behalf of the State of California and the Department against Crédit Lyonnais and other French defendants.  Marland approved of this strategy.  With Marland's consent, Thelen established a Delaware limited liability corporation named RoNo, LLC ("RoNo"), of which Marland was the sole beneficial owner.[12]  On February 17, 1999, Thelen and

---

[5]  FAC ¶13; Answer ¶ 13.

[6]  FAC ¶ 14; Answer ¶ 14.

[7]  FAC ¶ 14; Answer ¶ 14.

[8]  FAC ¶ 15; Answer ¶ 15.

[9]  FAC ¶ 3; Answer ¶ 3.

[10]  Marland's Revised Amended Counterclaims, Docket Item No. 72 ("Counterclaims"), ¶ 6.

[11]  FAC ¶ 16; Answer ¶ 16.

[12]  FAC ¶ 20; Answer ¶ 20.

5

Marland (for himself and RoNo) signed an attorney-client agreement ("the February 1999 Agreement").[13]  RoNo was the named plaintiff in the *qui tam* lawsuit, in order to protect Marland's identity.[14]  The February 1999 Agreement contained a termination provision that allowed each either side to withdraw on 30 days' notice.[15]

**C.     The Department retains Thelen and allows it to share fees with Marland.**

On February 18, 1999, the Department filed an action in Los Angeles Superior Court alleging fraud against Crédit Lyonnais and other French defendants.[16]  In May, 1999, Thelen agreed to represent the Department in its lawsuit.[17]  Marland consented to the dual representation.[18]  The Department and Thelen executed a written attorney-client agreement in May 1999.[19]  In exchange for Thelen's services, the Department agreed to pay Thelen a sliding-scale percentage of any judgment or settlement that the Department recovered.[20]

On June 2, 1999, Thelen and Marland executed a written amendment to the February 1999 Agreement, under which Marland agreed that Thelen would take all reasonable steps to dismiss the *qui tam* action.[21]  The next day, Thelen, Marland, and Marland's European attorneys, Philippe Brunswick and Susannah Maas, entered into an agreement to associate counsel ("the June 1999 Agreement").[22]  Under the June 1999 Agreement, Thelen agreed to pay Marland, Brunswick, and Maas a total of 52.5% of the legal fees that it received from the Department after December 31, 1999.[23]

---

[13]  FAC ¶ 21; Answer ¶ 21.

[14]  FAC ¶ 20; Answer ¶ 20.

[15]  Declartion of Wendy J. Thurm, Ex. A, ¶ 22; Ex. B (Deposition of Stephen V. O'Neal), at 29:15-32:20.

[16]  FAC ¶ 26; Answer ¶ 26.

[17]  FAC ¶ 27; Answer ¶ 27.

[18]  FAC ¶ 27; Answer ¶ 27.

[19]  FAC ¶ 29; Answer ¶ 29.

[20]  Thurm Decl., Ex. C, ¶ 5; Ex. B (O'Neal Depo.), at 172:23-173:12.

[21]  Thurm Decl., Ex. D; Ex. E (Deposition of Gary L. Fontana), at 192:20-193:24.

[22]  FAC ¶ 30; Answer ¶ 30.

[23]  Counterclaims, ¶ 21.

6

391058.03

**D.     The *qui tam* action is not dismissed because the California Attorney General intervenes.**

In the summer of 2001, the Attorney General elected to intervene in the *qui tam* action.[24] The Attorney General objected to Thelen's concurrent representation of the Department in the action against the French defendants and of RoNo/Marland in the *qui tam* action.[25]  With Marland's consent, Thelen then withdrew as counsel of record for RoNo in the *qui tam* action.[26] In September 2001, the parties executed an amendment to the February 1999 Agreement, providing for the law firm of Beck DeCorso to substitute in as litigation counsel for RoNo in the *qui tam* action, and for Thelen to act as general counsel to RoNo and counsel to Marland.[27]

**E.     Thelen seeks to restructure the parties' fee sharing agreement to better reflect Thelen's and Marland's relative contributions to the Department's case.**

In late fall of 2001, Thelen approached Marland about re-negotiating the fee-sharing agreement due to the cost and duration of the Department's action.[28]  In December 2002, Thelen, Marland, Brunswick, and Maas entered into a new agreement (the "December 2002 Agreement").[29]  The December 2002 Agreement states that: (1) the February 1999 Agreement, as amended, was "terminated by TR&P [Thelen] pursuant to a July 8, 2002 letter"; and (2) the parties desire to replace "any and all other agreements" between Thelen, Marland, RoNo, and European Counsel [Brunswick and Maas] with this Agreement "as the sole Agreement between" the parties.[30]

At the request of Marland and Brunswick, Thelen agreed to resume (following the termination) its role as general counsel to RoNo, as provided for in the September 2001

---

[24]  Thurm Decl., Ex. F (Deposition of Karl D. Belgum), at 142:25-143:4.

[25]  Thurm Decl., Ex. F (Belgum Depo.), at 144:20-145:16.

[26]  Thurm Decl., Ex. F (Belgum Depo.), at 171:9-172:23.

[27]  Thurm Decl., Ex. G; Ex. B (O'Neal Depo.), at 246:11-18.

[28]  FAC ¶ 34; Answer ¶ 34.

[29]  Thurm Decl., Ex. H (December 2002 Agreement); Ex. I (Deposition of Wynne Carvill), at 104:12-25.

[30]  Thurm Decl., Ex. H, p. 1.

7

1   Amendment to the February 1999 Agreement.[31]  Under the terms of the December 2002

2   Agreement, Thelen agreed to pay Marland, Brunswick, and Maas a total of 35% of Thelen's

3   "Net Recovered Fees" (i.e., 35% of the legal fees paid Thelen, after subtracting unreimbursed

4   expenses).[32]

5          In 2003, Thelen negotiated with the Department over an amendment to their retainer

6   agreement.[33]  Thelen was seeking cash advances against the expected contingent fees to be paid

7   after the Department settled or won a judgment against the French defendants.[34]  At least one of

8   the Department's proposals would have required an amendment to the December 2002

9   Agreement among Thelen, Marland, Brunswick, and Maas.[35]

10              **III.    FACTS MATERIAL TO THIS MOTION**

11  **A.    In 2004—more than six months before the cut-off date—Marland loses trust in
         Thelen and hires another lawyer.**

12

13         Marland was angry that Thelen might seek to further reduce the percentage of fees he

14  would be paid from Thelen's contingent fee recovery.[36]  In late 2003, Marland asked former

15  Thelen attorney François Chateau to refer him to a lawyer to evaluate the propriety of Thelen's

16  actions.[37]  Thelen's "attitude and bad behavior" had "led to a break in trust and led [Marland] to

17  find a new lawyer."[38]

18         According to Marland's privilege log, Brunswick, Chateau, and Marland's current

19  counsel, Andrew Hayes, met in September and December 2003.[39]  As early as March, 2004,

20  Hayes prepared a "Memorandum re: Review and analysis re possible claims of RoNo" and sent

21

22  [31] Thurm Decl., Ex. H, at ¶ B.2.(g)(iv); Ex. I (Carvill Depo.), at 249:3-250:23.

23  [32] FAC ¶ 40; Answer ¶ 40.

    [33] Thurm Decl., Ex. I (Carvill Depo.), at 255:11-258:9.
24
    [34] *Id.*
25  [35] *Id.*

26  [36] Thurm Decl., Ex. J (Deposition of François Marland), at 220:20-221:7.

    [37] Thurm Decl., Ex. J (Marland Depo.), at 221:8-15.
27
    [38] Thurm Decl., Ex. J (Marland Depo.), at 302:6-21.
28  [39] Thurm Decl., Ex. K (Marland's Revised Privilege Log, dated March 6, 2007), Nos. 29, 48-49.

                                              8

391058.03

the memo to Chateau.[40]  In August, 2004, Hayes attended a court-sponsored mediation session in the Department's action, as counsel for Marland and RoNo.[41]  Hayes also defended Marland at his deposition in the Department's action in Geneva in December 2004.[42]

**B.    In June 2004—almost eight months before the cut-off date—Marland receives a smaller payment than he believes he was entitled to receive from the settlement of the Department's case.**

In May 2004, the Department received $110 million in partial settlement of its claims against the French defendants.  After the Department paid Thelen its contingent fee from this partial settlement, Thelen wired $5,000,832 to Maas on June 18, 2004, as payment of the 35% owed to Marland, Maas, and Brunswick under the December 2002 Agreement.[43]  In late 2005, the Department received more money as part of other settlements—and Marland continued to receive the percentage that Thelen owed him under the December 2002 Agreement.  In total, Thelen has paid Marland and his European Counsel more than $19 million.[44]

**C.    Thelen's representation of Marland ended in January 2005—before the February 13, 2005 cut-off date.**

Marland testified under oath that by January 2005, he no longer considered Thelen to be his attorney.[45]  On February 4, 2005, Andrew Hayes sent an e-mail to Gary Fontana at Thelen, officially terminating Thelen as general counsel for RoNo.[46]  In that same e-mail, Hayes stated, "I have not heard back from you in response to my proposal that we agree to postpone any disputes about the allocation of recoveries until after the trial is over.  That offer includes, of course, any disputes or potential disputes between Marland, RoNo, and Thelen Reid & Priest."[47]

---

[40]  Thurm Decl., Ex. K (Marland's Revised Privilege Log, dated March 6, 2007), No. 56.

[41]  Thurm Decl., Ex. F (Belgum Depo.), at 197:18-198:2.

[42]  Request for Judicial Notice, Ex. A.

[43]  Declaration of Roger J. Robles, Jr., Exs. A, B & C.

[44]  FAC ¶ 46; Answer ¶ 46.

[45]  Thurm Decl., Ex. J (Marland Depo.), at 50:5-17; 189:7-13.

[46]  Declaration of Robert M. Blum, Ex. A, at TRP 010635.

[47]  *Id.*

9

**D.      On February 9, 2005—four days before the cut-off date—Marland's new lawyer clearly identified Marland's potential claims against Thelen.**

Hayes followed up on February 9, 2005, detailing Marland's alleged claims against Thelen in an e-mail to Fontana.[48]  Hayes stated, "We still need to discuss the topic I mentioned in *several previous emails*—simply, the sequence of events that led Marland [to] his present situation, in which he is receiving a recovery substantially less than he would have received had he been a qui tam relator and cooperated actively with both the AG and the [Department]."[49]  Hayes then set forth a specific and detailed list of Marland's grievances:

> (1) Thelen's initial advice that Marland seek to be retained as a consultant, paid on a contingency fee, with Thelen as his counsel; (2) Thelen's negotiations to become counsel to the [Department] in 1998 and 1999; (3) the unsuccessful efforts to reach an agreement between the AG and the [Department] later in 1999; and (4) the First and Second European Counsel agreements, including representations made by Thelen in connection with each of them; and (5) the timing and extent of the conflict waivers Thelen obtained from Marland and the [Department].[50]

Hayes' list of Thelen's alleged errors is nearly identical to the key allegations pled in Marland's Arbitration Demand and his First and Fifth Counterclaims.  In those counterclaims, Marland asserts that: (1) he could have obtained a greater recovery if Thelen had not advised Marland to consent to Thelen's representation of the Department; (2) that Thelen engaged in self-dealing negotiations with the Department in 1998 and 1999; (3) Thelen failed to protect Marland's confidential information when negotiating with the Department, thereby reducing Marland's ability to leverage his information; (4) Thelen pressured Marland into lowering his portion of any attorneys' fees obtained by Thelen through representing the Department; and (5) that Thelen did not timely obtain a conflict waivers from Marland and the Department.[51]

After Fontana replied that he was unaware of the "several previous emails," Hayes responded on February 10, 2005, reminding Fontana that he had sent e-mails "dating back to last

---

[48]  Blum Decl., Ex. A, at TRP 010634.

[49]  *Id.* (emphasis added)

[50]  *Id.*

[51]  Counterclaims, ¶¶ 52 & 83-84.

391058.03

1   August [2004], in which I broached this subject and told you that we need to discuss it."[52]  A few

2   weeks later, Hayes sent another e-mail, this time to Bob Blum, Thelen's General Counsel, stating

3   in part, "I have been trying *for six months* to have a substantive conversation with your firm

4   about its treatment of Mr. Marland as a client."[53]

5          On February 13, 2006, Marland filed an arbitration action in New York asserting claims

6   against Thelen for breach of fiduciary duty and negligence.[54]  Marland's First Counterclaim (for

7   breach of fiduciary duty) and his Third Counterclaim (for negligence) mirror the claims he

8   asserted in his Arbitration Demand.[55]

9                        **IV.     MARLAND'S COUNTERCLAIMS**

10         Marland's counterclaims reflect his theory that—but for Thelen's errors and breaches—

11  he would have received a greater recovery from his information that Crédit Lyonnais had

12  improperly gained control of the Executive Life assets.  In his first counterclaim, Marland alleges

13  that Thelen breached its fiduciary duties to him by, among other things, pressuring Marland to

14  sign unethical agreements; pressuring Marland to sign the December 2002 Agreement, under

15  which Marland would be paid only 35% of Thelen's contingent attorney fees from the

16  Department; failing to protect Marland's confidentiality from the Department; engaging in self-

17  dealing negotiations with the Department and the California Attorney General in 1999; providing

18  incorrect advice about how Marland could best protect his anonymity; advising Marland to

19  refuse to cooperate with the AG's investigation of the *qui tam* action; and failing to report on the

20  status of settlement discussions.[56]  For these alleged breaches of fiduciary duty, Marland seeks

21  damages arising from, in part, actual lost revenue; lost opportunities for revenue; the time value

22  of money eventually obtained; and the cost of additional counsel hired to replace Thelen.[57]

23         In his fifth counterclaim, Marland claims that Thelen was negligent in failing to protect

24  _____

25  [52]  Blum Decl., Ex. A, at TRP 010632-33.

    [53]  Blum Decl., Ex. A, at TRP 010628-29 (emphasis added).

26  [54]  FAC ¶ 48; Answer ¶ 48 & Ex. A.

27  [55]  *Compare* Amended Counterclaims, ¶¶ 6-23, 26-36, 52, 83 *with* Answer, Ex. A.

    [56]  Counterclaims, ¶ 52.

28  [57]  Counterclaims, ¶ 54.

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

391058.03

1    Marland's confidentiality with the Department, prompting it to commence its own investigation,

2    which made Marland's information less valuable.[58]  Marland further alleges that Thelen provided

3    negligent advice to Marland regarding his rights as a whistleblower.[59]  In this counterclaim,

4    Marland seeks damages proximately caused by Thelen's alleged negligence.[60]

5                    ## V.    SUMMARY JUDGMENT STANDARD

6            In ruling on a motion for summary judgment, the Court must determine whether genuine

7    issues of material fact exist. "Only disputes over facts that might affect the outcome of the suit

8    under the governing law will properly preclude the entry of summary judgment." *Anderson v.*

9    *Liberty Lobby*, 477 U.S. 242, 248 (1986).  Further, the dispute over a material fact must be

10   "genuine," that is, the evidence must be such "that a reasonable jury could return a verdict for the

11   nonmoving party." *Id*.  The burden of establishing the absence of a genuine issue of material

12   fact lies with the moving party.  *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).  The

13   nonmoving party may not simply rely on the pleadings, but must produce significant probative

14   evidence, by affidavit or as otherwise provided in Rule 56, supporting its claim that a genuine

15   issue of material fact exists. *TW Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626,

16   630 (9th Cir. 1987).

17                         ## VI.    ARGUMENT

18   **A.    Marland's first and fifth counterclaims are barred by the statute of limitations set
         forth in California Code Of Civil Procedure Section 340.6(a).**

19

20           The statute of limitations applicable to Marland's first counterclaim for breach of

21   fiduciary duty and his fifth counterclaim for negligence is California Code of Civil Procedure

22   §340.6.  By its terms, section 340.6 sets forth the statute of limitations for a claim for attorney

23   malpractice.  Code of Civil Procedure § 340.6(a) provides:

24           An action against an attorney for a wrongful act or omission, other than for actual
             fraud, arising in the performance of professional services shall be commenced
25           within one year after the plaintiff discovers, or through the use of reasonable
             diligence should have discovered, the facts constituting the wrongful act or

26   _____

27   [58]  Counterclaims, ¶ 83.
     [59]  Counterclaims, ¶ 84.

28   [60]  Counterclaims, ¶ 86.

                                              12

391058.03

1    omission, or four years from the date of the wrongful act or omission, whichever
2    occurs first.

3    California courts have consistently held that that section 340.6 also applies to any claim for
4    breach of fiduciary duty arising out of an attorney-client relationship. *See Pompilio v. Kosmo,*
5    *Cho & Brown*, 39 Cal. App. 4th 1324 (1995); *Radovich v. Locke-Paddon*, 35 Cal. App. 4th 946
6    (1995); *Stoll v. Super. Ct.*, 9 Cal. App. 4th 1362, 1368 (1992).

7    Marland claims that Thelen owed him fiduciary duties as a client and as a "partner."[61]
8    The only "partnership" involving Thelen and Marland other than as attorney and client arose out
9    of the fee-sharing agreement between Thelen, on the one hand, and Marland, Brunswick, and
10   Maas on the other. But under California law, attorneys who share fees do not owe fiduciary
11   duties to each other. *See Mason v. Levy & Van Bourg*, 77 Cal. App. 3d 60, 63-64 (1977) (cited
12   with approval in *Beck v. Wecht*, 28 Cal. 4th 289, 295-96 (2002)). As a result, Marland's only
13   theoretically viable claim for breach of fiduciary duty arises out of his former attorney-client
14   relationship with Thelen, and that claim is governed by section 340.6.

15        1.     **Marland discovered facts giving rise to his counterclaims no later than**
16                    **February 9, 2005—four days before the cut-off date.**

17   Marland's fiduciary duty and legal malpractice counterclaims are barred by section 340.6
18   because he knew or suspected that he had claims against Thelen more than one year before he
19   filed his arbitration action on February 13, 2006. Under section 340.6, a plaintiff must
20   commence an action within one year of when he knew or should have known of the facts
21   constituting the allegedly wrongful conduct. This one-year limitations period is short, and
22   intentionally so. Like any statute of limitations, section 340.6(a) furthers the "legislative goal"
23   of "resolv[ing] cases while the evidence is fresh, witnesses are available, and memories have not
24   faded." *Laird v. Blacker*, 2 Cal. 4th 606, 618 (1992).

25   Indeed, "'statutes of repose are in fact favored in the law, 'designed to promote justice by
26   preventing surprises through the revival of claims that have been allowed to slumber until

27   _____
     [61]  Counterclaims, ¶¶ 50-51.
28

13

391058.03

1    evidence has been lost, memories have faded, and witnesses have disappeared.'" *Jordache*

2    *Enters., Inc. v. Brobeck, Phleger & Harrison*, 18 Cal. 4th 739, 756 (1998) (quoting *Adams v.*

3    *Paul*, 11 Cal. 4th 583, 592 (1995)). "'The theory is that even if one has a just claim it is unjust

4    not to put the adversary on notice to defend within the period of limitation and that the right to be

5    free of stale claims in time comes to prevail over the right to prosecute them.'" *Id.* at 756

6    (quoting *Adams*, 11 Cal. 4th at 592).

7        A plaintiff will be charged with knowledge of facts that *would have been* discovered by a

8    reasonable investigation. *Worton v. Worton*, 234 Cal. App. 3d 1638, 1649-50 (1991). In other

9    words, a plaintiff cannot simply sit on his rights and wait for the facts to find him; he must go

10   find them himself if he can, and file suit if he does. *Norgart v. Upjohn Co*., 21 Cal. 4th 383, 398

11   (1999). "The test is whether the plaintiff has information of circumstances sufficient to put a

12   reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to

13   his or her investigation." *McGee v. Weinberg*, 97 Cal. App. 3d 798, 803 (1979); *see also*

14   *Sanchez v. South Hoover Hospital*, 18 Cal. 3d 93, 101 (1976). When a plaintiff learns of

15   potential claims against an attorney, he should file suit and rely on pre-trial discovery to obtain

16   all the necessary facts. *Norgart*, 21 Cal. 4th. at 398; *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103,

17   1111 (1998).

18       Here, Marland knew or suspected that he may have claims against Thelen for

19   professional negligence and breach of fiduciary duty more than one year before he filed for

20   arbitration on February 13, 2006. Indeed, on February 4, 2005, Marland's new lawyer—Andrew

21   Hayes—sent an e-mail to Thelen partner Gary Fontana terminating Thelen as general counsel for

22   RoNo, and reminding Thelen that Marland had grievances that had to be discussed.[62] Hayes

23   followed up on February 9, 2005 in an e-mail to Fontana, detailing Marland's alleged claims

24   against Thelen.[63] This e-mail leaves no doubt that Hayes suspected that Marland had claims

25   against Thelen before the cut-off date. *Samuels v. Mix*, 22 Cal. 4th 1, 20 (1999) ("any

26   communication by the second lawyer [i.e. Hayes] with the defendant [i.e. Thelen] seeking, on

27   _____

28   [62]   Blum Decl., Ex. A, at TRP 010635.

     [63]   Blum Decl., Ex. A, at TRP 010634.

391058.03

1    behalf of the client, remedies for the alleged malpractice. . . . would, itself, constitute persuasive

2    evidence regarding the time of discovery").

3        On February 10, 2005, Hayes sent Fontana an e-mail stating that Hayes had been trying

4    to talk to Thelen about Marland's potential claims since August 2004—demonstrating that he

5    suspected that Marland may have claims against Thelen six months before his February 9, 2005

6    e-mail.[64]  Indeed, Hayes' March 2004 memoranda analyzing "possible claims by RoNo" strongly

7    suggests that Hayes suspected that Marland may have claims against Thelen nearly two years

8    before Marland filed his arbitration.[65]

9        Moreover, it is irrelevant whether or not Marland himself suspected he had claims against

10    Thelen—Hayes' knowledge is imputed to Marland for purposes of the "discovery" provision in

11    section 340.6.  *See Miller v. Bechtel Corp.* 33 Cal. 3d 868, 875 (1983); *see also Samuels*, 22 Cal.

12    4th at 20.  Through his own words, Hayes demonstrated that *no later than* February 9, 2005, he

13    was aware of sufficient facts to put a reasonably prudent person on notice of Marland's potential

14    claims against Thelen.  Hayes' knowledge commenced the statute of limitations on Marland's

15    claims against Thelen.

16        Because Marland's attorney had suspicion that Marland had claims against Thelen no

17    later than February 9, 2005—more than one year before Marland filed his arbitration action

18    against Thelen—these claims are barred by section 340.6.

19        **2.**      **None of section 340.6's tolling provisions apply**

20        "Section 340.6 is not subject to equitable tolling; rather, the Legislature intended the

21    statute's explicit tolling provisions to be exclusive."  *Gordon v. Law Offices of Aguirre & Meyer*,

22    70 Cal. App. 4th 972, 974 (1999).  Taken together, the statute's various components reflect "the

23    balance the Legislature struck between a plaintiff's interest in pursuing a meritorious claim and

24    the public policy interests in prompt assertion of known claims."  *Jordache,* 18 Cal. 4th at 756.

25    Under California law, "courts may not shift that balance by devising expedients that extend or

26    toll the limitations period.  The Legislature expressly disallowed tolling under any circumstances

27

28

---

[64]   Blum Decl., Ex. A, at TRP 010632-33.

[65]   Thurm Decl., Ex. K (Marland's Revised Privilege Log, dated March 6, 2007), at No. 56.

15

1    not stated in the statute." *Id.*

2              **a.    Marland suffered "actual injury" no later than June 2004.**

3              Actual injury tolling does not apply here because Marland was "injured" more than one

4    year before filing the New York arbitration against Thelen on February 13, 2006.  Under actual

5    injury tolling, "the period shall be tolled during the time that "the plaintiff has not sustained any

6    actual injury."  Cal. Code Civ. Proc. §340.6(a)(1).  "Until the client suffers appreciable harm as a

7    consequence of [the] attorney's negligence, the client cannot establish a cause of action for

8    malpractice." *Jordache,* 18 Cal. 4th at 750 (citing *Budd v. Nixen*, 6 Cal. 3d 195, 200, footnote

9    omitted).  "The cause of action arises, however, before the client sustains all, or even the greater

10   part, of the damages occasioned by [the] attorney's negligence. [Citations.] *Any appreciable and*

11   *actual harm flowing from the attorney's negligent conduct establishes a cause of action upon*

12   *which the client may sue*." *Jordache,* 18 Cal. 4th at 750 (emphasis in original) (quoting *Budd*, 6

13   Cal. 3d. at 201).

14             According to his Counterclaims, Marland suffered actual injury when—in June 2004—he

15   received only 35% of attorneys' fees paid by the Department to Thelen.  Indeed, Marland asserts

16   that Thelen breached its fiduciary duty to Marland when it "forced" Marland—as part of the

17   December 2002 Agreement—to reduce the percentage of the attorneys' fees he was entitled to

18   receive under Thelen's and Marland's prior agreements.[66]  Marland also alleges that Thelen's

19   alleged negligence compromised his rights as a whistleblower, causing him economic damage.[67]

20   Here, it is undisputed that Marland was injured on June 18, 2004, when Thelen wired to

21   European Counsel, c/o Susannah Maas, only 35% of the attorneys' fees that Thelen had received

22   from the Department—which amounted to $5,000,832.[68]  To the extent Marland was injured at

23   all by Thelen, Marland suffered that injury no later than June 18, 2004.

24

25

26   _____

27   [66]  Counterclaims, ¶¶ 37, 52(i).
     [67]  Counterclaims, ¶ 84.

28   [68]  Robles Decl., Exs. A, B & C.

391058.03

Marland also allegedly sustained actual injury in 2004 when he hired Andrew Hayes to analyze his relationship with Thelen.[69]  At that point, Marland was forced to "incur the cost of additional counsel hired to do the work of protecting RoNo's and Marland's interests."[70]  "[A]ttorney fees incurred as a direct result of another's tort are recoverable damages." *Jordache*, 18 Cal. 4th at 751 (citing *Brandt v. Super. Ct.*, 37 Cal. 3d 813, 817-18 (1985)).

Accordingly, because Marland allegedly suffered actual injury in 2004—almost eight months before the cut-off date—his first and fifth counterclaims are time-barred.

**b.    Thelen ceased representing Marland and RoNo no later than February 4, 2005—nine days before the cut-off date.**

The second of the tolling provisions—the continuous-representation provision set forth in subsection (a)(2) of the statute—tolls the statute's one-year limitations period "during the time that . . . the attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred." Cal. Code Civ. Proc. § 340.6(a)(2).

Here, it is undisputed that Thelen's representation of Marland and RoNo ended no later than February 4, 2005—nine days before the cut-off date.  In September 2001, Thelen withdrew as counsel of record to RoNo in the *qui tam* action.[71]  Thereafter, Thelen acted as general counsel to RoNo and counsel to Marland.[72]  Marland testified under oath in his deposition that by January 2005, he no longer considered Thelen to be his attorneys.[73]  Hayes then terminated Thelen as RoNo's general counsel on February 4, 2005.[74]  Because any continuous representation tolling ended before February 13, 2005—it cannot save Marland's claims.

Accordingly, because the tolling provisions of section 340.6 do not apply—and because they cannot be judicially expanded—Marland's First and Fifth counterclaims are time barred.

---

[69]  Thurm Decl., Ex. J (Marland Depo.), at 221:8-15, 302:6-21; *id.*, Ex. K (Marland's Revised Privilege Log, dated March 6, 2007), Nos. 29, 48-49, 56; *id.*, Ex. F (Belgum Depo.), at 197:18-198:2; Request for Judicial Notice, Ex. A.

[70]  Counterclaims, ¶ 54.

[71]  Thurm Decl., Ex. F (Belgum Depo.), at 144:20-145:16.

[72]  Thurm Decl., Ex. G; Ex. B (O'Neal Depo.), at 246:11-18.

[73]  Thurm Decl., Ex. J (Marland Depo.) at 50:5-17; 189:7-13.

[74]  Blum Decl., Ex. A, at TRP 010635.

17

1

## VII.    CONCLUSION

2        For the foregoing reasons, the Court should grant Thelen's motion for partial summary

3 judgment as to Marland's first counterclaim for breach of fiduciary duty and fifth counterclaim

4 for negligence.

5

6 Dated:  March 8, 2007                                        KEKER & VAN NEST, LLP

7

8

9                                                By:  /s/ Wendy J. Thurm
                                                      WENDY J. THURM
10                                                    Attorneys for Plaintiff, Counter-Defendant,
                                                      and Counter-Counter-Claimant
11                                                    THELEN REID BROWN RAYSMAN &
                                                      STEINER LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF THELEN REID BROWN RAYSMAN & STEINER FOR PARTIAL
SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C 06-2071 VRW

391058.03