GUY D. CALLADINE [Bar No.: 99431]
EDWARD F. DONOHUE [Bar No.: 112730]
CARLSON, CALLADINE & PETERSON LLP
353 Sacramento Street, 16th Floor
San Francisco, California 94111
Telephone: (415) 391-3911
Facsimile: (415) 391-3898

Attorneys for Defendant/Cross-Complainant
FRANCOIS MARLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THELEN REID & PRIEST LLP,

Plaintiff,

vs.

FRANCOIS MARLAND,

Defendant.

CASE NO.: C-06-02071 VRW

**MARLAND'S OPPOSITION TO THELEN'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OTHER RE**

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

Preliminary Statement ..... 1

Statement of Facts and Procedural History ..... 3

A. Thelen Allows the Parties' Stipulation Staying the Arbitration to Expire. ..... 3

B. Thelen Receives Notice that Marland and RoNo Intend to Resume the Arbitration to Pursue Two Specific Claims. ..... 4

C. Thelen Participates in Proceedings Before the ICDR, Arguing that the ICDR Should Bar Marland from Re-Activating the Arbitration. ..... 4

D. Thelen Lets the ICDR's First "Deadline" Pass, and Claims the Right to Make Further Submissions to the ICDR Challenging Marland's Right to Arbitrate. ..... 5

E. After the ICDR Denies Thelen's Request, Thelen Disingenuously Seizes on the Second "Deadline" as a Basis to Re-Argue Arbitrability before this Court. ..... 6

F. Thelen's Inequitable Conduct in Seeking the TRO. ..... 6

G. The Two Arbitration Claims at Issue. ..... 7

Argument ..... 9

I. THELEN CANNOT SHOW ANY HARM, MUCH LESS IRREPARABLE HARM, FROM THE PASSING OF THE SECOND "DEADLINE" ..... 9

II. THELEN'S MONTH-LONG DELAY, CONTRADICTORY STATEMENTS TO THE ICDR AND THIS COURT, AND INEQUITABLE CONDUCT IN SEEKING THE TRO SUPPORT DENIAL OF THE RELIEF SOUGHT ..... 10

III. THELEN'S PARTICIPATION BEFORE THE ICDR WAIVED ITS RIGHT TO SEEK SUCH A RULING FROM THIS COURT ..... 11

IV. THELEN HAS LITTLE IF ANY LIKELIHOOD OF SUCCESS ON THE MERITS ..... 11

V. THELEN HAS LITTLE IF ANY LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE FIRST NEW ARBITRATION CLAIM WAS NOT PREVIOUSLY LITIGATED, AND THE SECOND ARISES FROM THELEN'S BREACH OF A DUTY THAT AROSE UNDER THE 1999 ATTORNEY-CLIENT AGREEMENT ..... 13

Conclusion ..... 14

# TABLE OF AUTHORITIES

## Cases

*International Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995) ............ 12

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3349, 3353 (1985) ............ 12

*Neal v. Hardee's, Inc.*, 918 F.2d 34, 37-38 (5th Cir. 1990) ............ 12

*Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d. 388, 393-94 (5th Cir. 2002) ............ 12

*PowerAgent Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1192 (9th Cir. 2004) ............ 2

*Ralph Andrews Prods., Inc. v. Writers Guild of Am., West*, 938 F.2d 128, 130 (9th Cir. 1991) ....... 2

*Thelen v. Marland I* ............ 1, 13, 14

*Tristar Pictures, Inc. v. Dir.'s Guild of Am.*, 160 F.3d 537, 540 (9th Cir. 1998) ............ 2

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

Preliminary Statement

This is a second action to enjoin an arbitration that was begun in 2005 and stayed by agreement of the parties. *After* this Court issued its August 1, 2007 decision (in Case No.C-06-02071 VRW, referred to herein as "*Thelen v. Marland I*"), Thelen (1) allowed the stay to expire, and (2) repudiated its representation to this Court that it would pay $612,500, plus interest, "promptly" after it prevailed on a particular claim. Petitioners Marland and RoNo LLC therefore sought to amend their to (a) include a claim for payment of those funds, and other damages, and (b) arbitrate a claim (for breach of Thelen's ethical duties arising under the 1999 attorney-client agreement) that Thelen had *not* moved to dismiss, and which was not addressed by the August 1, 2007 decision in *Thelen v. Marland I.*

Thelen admits that it filed this action a month after it had notice of those claims. (*See* Complaint ¶ 18, Declaration of Andrew W. Hayes, submitted herewith, Ex. 2) Thelen claims to need emergency relief based on a phony "deadline" that Thelen affirmatively mischaracterizes, while concealing that this is actually the *second* such "deadline." In fact, Thelen let the first "deadline" pass because it made a choice six weeks ago to continue the arbitration, and actively participated in proceedings before the International Center for Dispute Resolution ("ICDR") seeking to bar petitioners from pursuing any new claims. Thelen waited until after the ICDR issued a decision *rejecting* Thelen's position before coming to this Court, seeking to reverse the ICDR's ruling via *ex parte* TRO.

It bears emphasis that the *first* claim Thelen seeks to enjoin arises from Thelen's post-August 1 repudiation of its representation to this Court on April 19, 2007 that "*if the Court grants Thelen's cross-motion for summary judgment, Thelen will promptly pay Marland the $612,500 it is holding in escrow.*" (Thelen's Opposition to Francois Marland's Motion for Summary Judgment, Docket Item No. 223 in *Thelen v. Marland I* at pp. 29:25-30:3, pertinent pages of which ate annexed to the Declaration of Andrew W Hayes as Ex. 1.) The allegation in Thelen's Complaint that this claim was "previously litigated to a final judgment" is thus flatly untrue, and Thelen knew that before it filed its Complaint.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

Thelen's demand to enjoin the arbitration is also frivolous because it fails to disclose (1) Thelen's post-August 1 participation in the arbitration process, including numerous written and oral submissions to the ICDR arguing Marland's right to pursue any amended claims (*see* Hayes Dec. Ex. 2, 3 and 4), and Thelen's statements to the ICDR that contradict its allegations here. On October 15, Thelen admitted to the ICDR that "Thelen cannot make any specific comments about the reactivation of the arbitration until it has had the opportunity to review the Amended Demand" (Hayes Dec. Ex. 5, but claimed the right to submit "comments" on the issue to the ICDR after receiving those amended claims. (Hayes Dec. Ex. 5.)

It is crystal clear that Thelen chose to have the ICDR decide the issue if the arbitrability of Marland's claims, and only decided to seek an injunction *after* the ICDR rejected Thelen's position and directed that the arbitration should resume. Thelen "cannot await the outcome and, after an unfavorable decision, challenge the authority of the [ICDR] to act on that very issue."[1] Thelen has therefore waived its right to seek any equitable relief regarding the arbitration.

Thelen's request for equitable relief is also fatally flawed because the purported "deadline" it invokes is nothing more than an opportunity for the parties to report that they have reached an agreement regarding selecting an arbitrator *other than* by the strike-and-rank process set forth in the ICDR's rules – a procedure Thelen had willingly participated in in 2005, before changing its mind and seeking to enjoin Marland. (Kerr Dec. Ex. 7, Hayes Dec. Ex. 6) This "deadline" does not affect any right Thelen has, nor any of Thelen's property, and in fact Thelen has shown zero interest in reaching any such agreement.

Moreover, the November 8 "deadline" was actually Thelen's *second chance* to pick an arbitrator other than by the ICDR's rules. On October 9, 2007, the ICDR gave the parties until October 15 to report on whether they had reached agreement on an alternate means of appointing an arbitrator. (Hayes Dec. Ex. Ex. 7) Thelen's failure to advise the Court that it let that first

[1] *PowerAgent Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187, 1192 (9th Cir. 2004) (*citing Tristar Pictures, Inc. v. Dir.'s Guild of Am.*, 160 F.3d 537, 540 (9th Cir. 1998); *Ralph Andrews Prods., Inc. v. Writers Guild of Am., West*, 938 F.2d 128, 130 (9th Cir. 1991)).

deadline pass without seeking any relief shows an unacceptable lack of candor from a party claiming to need emergency equitable relief.

In sum, the only equitable result here would be for Thelen to be ordered to honor its prior representation to this Court, and to pay a further sanction for forcing the Court and opposing counsel to deal with hundreds of pages of a frivolous filing in support of a false "emergency."

## Statement of Facts and Procedural History

### A. Thelen Allows the Parties' Stipulation Staying the Arbitration to Expire.

In early 2006, the parties agreed to stay the arbitration pending a final order dismissing Thelen's motion to enjoin the arbitration. (Hayes Dec. Ex. 8). This Court's August 1, 2007 Order denied Thelen's request for an injunction, noting that Marland was free to seek arbitration of other disputes not resolved by that decision. (Thelen v. Marland I, Docket Item No, 320, annexed to the Hayes Dec. as Ex. 9 at pp. 56:24-56:26).

Marland filed his notice of appeal and docketing statement from portions of that Order on August 23, 2007. (Thelen v. Marland I, Docket Item No, 330, annexed to the Hayes Dec. as Ex. 10). Thelen chose not to appeal the dismissal of its request for an injunction – not even as a conditional cross-appeal, as would have been proper if it wished to avoid finality and keep the stay in place. Thelen thus allowed the dismissal of its injunction request to become final, and the parties' agreement to stay the arbitration expired by its own terms.

Thelen's decision not to cross-appeal was particularly puzzling because Marland's appeal appears flagged the very issues now before the Court:

> "[T]he district court also held that Marland's claims relating to events after 2002 could not withstand summary judgment that the 2002 agreement was enforceable – *even though Thelen had conceded at oral argument that its motions, even if granted in full, would not dispose of all of Marland's claims*. However, the court noted that there might be events not in the pleadings that post-dated 2002 agreement – *an apparent reference to Thelen's withholding over $600,000 in fees owed to Marland, at least* – and denied Thelen's request for an injunction of Marland's arbitration." (Hayes Dec. Ex. 10 at section 2, final paragraph of the Rider to Docketing Statement (emphasis added))

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

Thelen had time after receiving that notice to seek clarification from this Court regarding the scope of this Court's judgment, or to cross-appeal. Thelen chose to do neither.

**B. Thelen Receives Notice that Marland and RoNo Intend to Resume the Arbitration to Pursue Two Specific Claims.**

In late September 2007, the ICDR advised counsel that if it did not receive a $300 abeyance fee by October 4, 2007, it would dismiss the arbitration. Thelen first refused to pay its share of that fee, but changed its mind and agreed to do so by message dated September 27, 2007. (Hayes Dec. Ex. 11at p. 1) Thelen's Complaint does not explain how its agreement to pay that fee is consistent with its position now that Marland is barred from arbitrating any claims.

On October 4, 2007 petitioners advised the ICDR that they intended to re-activate the arbitration, and specified the two claims they intended to assert: (1) payment of the $612,500 withheld by Thelen, plus interest, and (2) damages based on Thelen's post-2002 disloyalty, including opposing its former client in the same matter in which Thelen had represented that client. (Hayes Dec. Ex. 2 at p. 2) Thelen received Petitioner's email on October 5, and admits that it had notice on that date that petitioners intended to resume the arbitration (Complaint ¶ 18).

**C. Thelen Participates in Proceedings Before the ICDR, Arguing that the ICDR Should Bar Marland from Re-Activating the Arbitration.**

Thelen promptly responded to Marland's October 4 notice, claiming (incorrectly) that this Court had actually *barred* Marland from proceeding with *any* arbitration. (Hayes Dec. Ex. 3) The ICDR responded to Thelen's statement by setting up a conference call for October 9, 2007.

Thelen actively participated in the October 9 conference call, reiterated its position that Marland was barred from arbitrating any claims, and promised to seek sanctions from this Court if Marland persisted. (Hayes Dec. ¶ 6) Thelen was reminded that it was on notice of Marland's intentions, and should not wait to file any motion it thought was appropriate. (Hayes Dec. ¶ 6)

At no time during the October 9 call did Thelen object to the ICDR deciding whether Marland should be allowed to proceed with the arbitration. Quite the opposite: Thelen was granted the right to make a further, written submission supporting its request that the ICDR bar Marland from proceeding with the arbitration. (Hayes Dec. Ex. 7) By letter dated October 9, the

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

ICDR set a deadline of October 15, 2007 for the parties to submit letters and supporting materials regarding whether the ICDR should allow the arbitration to proceed, and to advise whether the parties had reached any agreement regarding selection of the arbitrator by means other than the strike-and-rank process that they had begun in 2005. (*See* Hayes Dec. ¶ 7 & Ex. 7)

**D. Thelen Lets the ICDR's First "Deadline" Pass, and Claims the Right to Make Further Submissions to the ICDR Challenging Marland's Right to Arbitrate.**

Thelen complied with the ICDR's October 9 directive and submitted a letter to the ICDR on October 15 (Hayes Dec. Ex. 5) that asserted a continuing right to challenge Marland's amended arbitration claims before the ICDR after those claims were filed:

> Thelen cannot make any specific comments about the reactivation of the arbitration proceeding until it has had the opportunity to review the Amended Demand. Accordingly, Thelen will submit its comments per your October 9, 2007 request within 24 hours of receiving the Amended Demand.

Thelen's papers submitted here include a declaration from its arbitration counsel, John Kerr, attaching several documents sent to the ICDR, but *omitting* this letter, which is inconsistent with its representations to this Court and the relief it seeks here.

Marland and RoNo presented a detailed submission on October 15 urging the ICDR to rule that the arbitration should resume. (Hayes Dec. Ex. 12) Thelen's assertion of the right to make further submissions to the ICDR challenging Marland's right to arbitrate led to a further exchange of correspondence on October 16 and 17, which Thelen also omitted from its papers. (Hayes Dec. Ex. 4) Those exchanges made clear that Marland was seeking a definitive statement from the ICDR regarding his right to pursue the claims set forth in his October 4 notice.

Thelen made no effort before October 15 to reach an agreement on selecting an arbitrator by some means other than the strike-and-rank procedure it had participated in at the outset of the arbitration in 2005, and let the deadline pass without comment. (Hayes Dec. ¶ 8 & Ex. 4 at p. 3). The ICDR was thus free as of October 15 to follow its rules and appoint the highest-ranked arbitrator from the lists submitted by each party in early 2005 – *i.e.*, the exact same event that Thelen now claims will cause it irreparable injury.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

**E. After the ICDR Denies Thelen's Request, Thelen Disingenuously Seizes on the Second "Deadline" as a Basis to Re-Argue Arbitrability before this Court.**

By letter dated November 5, 2007, the ICDR advised the parties that it had considered and rejected Thelen's request to stop the arbitration. (Hayes Dec. Ex. 6). As a courtesy, the ICDR gave both sides a second chance to reach an alternative agreement regarding the appointment of the arbitrator. As the ICDR had noted, Thelen had already participated in the arbitrator selection process, in 2005, by striking and ranking proposed arbitrators in accordance with the ICDR's rules. This "deadline" was simply a *second chance* for the parties to tell the ICDR whether they had reached an agreement to proceed in a manner *other than* the strike-and-rank process. (The reason for the short "deadline" was because it was a courtesy second chance, despite Thelen's complete lack of interest in the initial, October 15 deadline.)

Thelen's seizing on this "deadline" as the basis for its TRO request is thus wrong on several levels: (1) the deadline was simply an option to report on an agreement between the parties, as opposed to Thelen exercising or waiving any right it actually has; (2) Thelen fails to mention that this was a second chance; and (2) Thelen does not mention the real reason for the timing of its request is because it wanted the ICDR to block the arbitration, and only sought relief in this Court after that request was denied.

**F. Thelen's Inequitable Conduct in Seeking the TRO.**

Thelen went out of its way to give as little notice as possible of its TRO request. At 10:07 am PST on November 7 Thelen gave notice that it intended to serve an *ex parte* TRO request and would serve Marland *after* its papers filed, pursuant to the local rules. (Hayes Dec. Ex. 13) Marland responded that petitioners were filing their amended arbitration claims later the same day, and pointed out that Thelen need not wait until after filing its papers to serve Marland. (Hayes Dec. Ex. 13)

Thelen did not wait for Marland's filing, but chose to withhold its own papers from Marland while demanding instantaneous action from the Court. Thelen called the court at 1 pm PST on November 7 to insist that it needed a TRO *that afternoon*. (Hayes Dec. ¶ 10) Asked

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

whether Thelen had served opposing counsel, Thelen claimed that it was waiting to receive a file-stamped copy of its papers before doing so, because (Thelen claimed) Civil Local Rule 65-1 required this procedure. (Hayes Dec. ¶ 10)

Thelen's excuse for its gamesmanship is not credible. The local rules do *not* bar service of a courtesy copy of papers in advance of a TRO filing, as Thelen's counsel must know. Common decency, even apart from the local rules, would tell anyone that they should give opposing counsel as much notice as reasonably possible of a request for an "emergency" request for a restraining order.

Yet absent an agreement by Marland to postpone the "deadline", Marland would have had little more than an hour – until 3 pm – to submit a response before the Court would rule on the TRO request; this gave Marland little choice but to give credence to the phony "deadline" by postponing it. (Hayes Dec. ¶ 11)

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

### G. The Two Arbitration Claims at Issue.

Marland and RoNo's Second Amended Description of Claims set forth the very same claimed described in his October 4 message to the ICDR and his subsequent submissions, following on from his August 22 Notice of Appeal. Since Thelen's Complaint ignores those claims, they are set forth below, along with petitioners' reasons for seeking to arbitrate them now:

(1) A claim for $612,500.00, plus interest, that was due and payable in 2006 pursuant to the very 2002 agreement which Thelen invoked before this Court. As the Court knows, the issue of these withheld funds was *not* raised in Marland's pleadings; when Marland raised the issue in his motion for summary judgment, Thelen responded by assuring the Court that "if the Court grants Thelen's cross-motion for summary judgment, Thelen will promptly pay Marland the $612,500 it is holding in escrow." (Hayes Dec. Ex. 14 at p. 1)

This claim is asserted now because Thelen has repudiated its representation to the Court to "promptly" pay those funds, plus interest, if its cross-motion was granted (which it was). Thelen's representation to the Court was not hedged by any reference to an appeal, or to Thelen's "counter-counterclaims" (which Thelen had previously invoked to justify its actions), those "counter-

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

counterclaims" were dismissed on August 1, and Thelen chose not to appeal that dismissal (again, not even conditionally). Thus Thelen's conduct is revealed for what it truly is: a simple act of spite – withholding a former client's money in retaliation for the client's temerity in suing his former counsel, regardless of whether Thelen has any legal basis to do so.

(2) A claim for forfeiture and damages from Thelen's post-2002 disloyalty to its former client, RoNo, including appearing in opposition to RoNo in the same action in which Thelen had previously represented RoNo. As noted in Marland's appeal papers, Marland (and Thelen) believed that this claim was raised in his pleadings, but the Court's decision dismissing Marland's counterclaims indicated otherwise.

Specifically, the allegations supporting this claim were set forth in paragraph 49 of Marland's Revised Amended Counterclaims, which incorporated by reference paragraphs 121(c), 123-128 and 131-135 of Marland's affirmative defenses, and paragraphs 52(l)-52(o) and 77 of Marland's Revised Amended Counterclaims. (Relevant pages are attached as Hayes Dec. Ex. 15 for the Court's convenience) Thelen never argued that this claim was covered by the release in the 2002 agreement (since the conduct at issue occurred three years later), nor that it was barred by the statute of limitations (since the conduct occurred just months before Marland filed for arbitration). Indeed, Thelen's summary judgment motions noted that it was *not* seeking summary judgment on this portion of Marland's counterclaims.

However, the court's Order dismissing Marland's counterclaims did not mention this claim, nor cite any of the paragraphs of Marland pleadings noted above. Instead, addressing Thelen's statute of limitations argument, the court cited *other* paragraphs of Marland's counterclaims (3(c), 16 and 41-46) regarding matters post-dating the 2002 agreement, and found that *those* allegations were covered by the release in the 2002 agreement. (Hayes Dec. Ex. 9 at pp. 54:22-55:9)

The Court's dismissal of Marland's claims in their entirety without any reference to this claim, despite the fact that Thelen had not sought to dismiss the claim, suggests that the Court did not believe that Marland had properly alleged the claim in his pleadings (and even if it did not, the circuit could always affirm on that basis). This presented a dilemma: if the claim had been

asserted and dismissed, that dismissal had to be appealed or it would be waived; if the circuit held that the claim had not been properly asserted, it might be too late to include it in a renewed arbitration. Thus Marland's appeal papers flagged this ambiguity, and noted the court's denial of Thelen's request for an injunction.

Petitioners' amended description of claims also includes Marland's previously-asserted claims, but makes it clear that those claims are included for the sole and express purpose of avoiding any waiver of those claims while Marland's appeal is pending before the Ninth Circuit. Thelen's September 27, 2007 agreement to pay its share of the abeyance fee to keep the arbitration pending during the appeal constitutes an admission that it is appropriate for Marland to at least keep those claims pending until the resolution of the appeal.

**Argument**

Thelen's failure to articulate any harm, much less irreparable harm, from the passing of the second "deadline" to reach an agreement on an alternate means of selecting an arbitrator to the procedure set forth in the ICDR rules should suffice, in and of itself, to deny Thelen the restraining order it seeks. To avoid any doubt, however, we present below several additional reasons to deny that request, including a preview of arguments regarding the merits of Thelen's claims that we will present in more detail in response to Thelen's motion for a preliminary and permanent injunction.

**I. THELEN CANNOT SHOW ANY HARM, MUCH LESS IRREPARABLE HARM, FROM THE PASSING OF THE SECOND "DEADLINE".**

As noted, Thelen represented to the Court on the afternoon of November 7 that it needed a temporary restraining that same day because of a November 8 "deadline" in the arbitration before the ICDR. Thelen's papers mention this "deadline" repeatedly, and in bold type, and falsely claim that this was a deadline for Thelen to "participate" in the arbitral selection process.

Thelen has deliberately mischaracterized this "deadline". Thelen had already exercised its right to participate in the arbitrator selection process, in 2005, by striking and ranking proposed arbitrators in accordance with the ICDR's rules. This "deadline" was simply a *second chance* for the parties to reach an agreement to proceed in a manner *other than* pursuant to the strike-and-rank process. Since Thelen ignored the opportunity to reach such an alternative agreement before the

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

*first* deadline – October 15 – it is not credible for Thelen to now claim that it risked any harm, much less irreparable harm, because the deadline had been renewed and was again about to pass.

The passing of this "deadline" does not deprive Thelen of any rights (procedural or substantive), nor any property. Thelen cites no case, and we are aware of none, that even remotely supports the assertion – necessary to Thelen's motion – that the passing of a voluntary "deadline" constitutes an irreparable injury to a party, justifying a restraining order. (In fact, all of the cases concerning injunctive relief cited on pages 8-11 of Thelen's application concern preliminary (or permanent) injunctions, not TROs.) Thus even if Thelen's complaint had merit, which it does not, it has failed to establish any basis for putting the Court or opposing party through the time, expense, and interruption of other work that a TRO application entails.

## II. THELEN'S MONTH-LONG DELAY, CONTRADICTORY STATEMENTS TO THE ICDR AND THIS COURT, AND INEQUITABLE CONDUCT IN SEEKING THE TRO SUPPORT DENIAL OF THE RELIEF SOUGHT.

Thelen admits that it had notice on October 5 that Marland intended to revive the arbitration (Complaint ¶ 18), including a description of the specific claims. (Hayes Dec. Ex. 2) Thelen's conduct over the past six weeks show that the real reason Thelen waited until a month to file its motion because it was waiting for the ICDR to decide whether to block the arbitration. In other words, Thelen wanted to finish its first bite at the apple before taking another bite.

If Thelen had a principled objection to any further arbitration proceedings, it could and should have sought an injunction then (a regularly motion filed the following week could have been calendared for the week of November 12). Instead of doing that, Thelen chose to participate in the arbitration process and submit the question of whether Marland should be allowed to proceed to the ICDR – including telling the ICDR on October 15 that it could not take any position on the arbitrability of Marland's claims until after petitioners filed their amended description of claims, while claiming the right to make further submissions to the ICDR on this issue after that filing.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

As noted, Thelen omitted that letter from its submission to this Court, and engaged in other conduct inconsistent with the equitable relief it seeks. Thelen did not wait for petitioners' filing before bringing this action – even after being told on November 7 that petitioners were filing their amended claims later that day. And Thelen's Complaint made no effort to describe Marland's amended claims, even though Thelen was told on October 5 what they would be, and told again on October 9 and 15 in more detail precisely what those claims would involve.

Thelen compounded its inequitable conduct by withholding its papers from Marland until urged by the court's clerk to serve a courtesy copy right away. Thelen's renowned counsel know better than that, but they will do the same thing next time unless the Court gives then an incentive not to – *i.e.*, unless it takes such inequitable conduct into account in denying the motion.

## III. THELEN'S PARTICIPATION BEFORE THE ICDR WAIVED ITS RIGHT TO SEEK SUCH A RULING FROM THIS COURT.

Over the past six weeks Thelen agreed to pay its share of a fee to avoid the dismissal of the arbitration, and then made numerous written and oral submissions asking the ICDR not to re-activate the arbitration. Thelen even asserted the right to raise this issue again before the ICDR, after petitioners filed their amended description of claims. Thelen thus made a deliberate choice to submit the issue of the arbitrator's jurisdiction to the ICDR for decision, rather than this Court. Only after the ICDR issued an order rejecting Thelen's position did Thelen decide to come to this Court and try to reverse that ruling.

Under settled law, Thelen's agreement to submit the issue of arbitrability to the ICDR precludes Thelen from seeking an order staying the arbitration after the ICDR issued a ruling that Thelen did not like. *See, e.g., PowerAgent Inc.*, 358 F.3d at 1192 (citations omitted).

## IV. THELEN HAS LITTLE IF ANY LIKELIHOOD OF SUCCESS ON THE MERITS

Thelen's allegation that there is no valid arbitration agreement between the parties is not only wrong; it is barred by estoppel. True, Thelen made this same allegation when it first sought to enjoin Marland from arbitrating, in *Thelen I.* Thelen later change its position, however, and



CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

ended up admitting that – as this Court found – the 2002 agreement was a "re-negotiated attorney-client agreement" (*see* Hayes Dec. Ex. 9 at p. 31:3-31.5) which provided for Thelen to resume representing RoNo pursuant to the September 18, 2001 Amendment to the February 1999 Attorney-Client Agreement. (*see* Hayes Dec. Ex. 9 at pp. 11:17-11:21, 44:4-44:6).

Until and unless that finding is vacated, Thelen is estopped to deny that the 2002 agreement incorporated the 1999 attorney-client agreement, as amended in 2001. That agreement contains an arbitration clause. Thus Thelen's reliance on a *recital* in the 2002 agreement regarding an intention to replace all prior agreements is misplaced at best, and does not answer the question of whether there is still a valid arbitration agreement (Thelen's reliance on that recital is actually frivolous, since Thelen's own witness admitted that he drafted the recital months before he agreed to incorporate the 1999 attorney-client agreement into the 2002 agreement).

Moreover, the "federal policy favoring arbitration"[2] requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, *or a like defense to arbitrability*."[3] Courts have also applied an arbitration clause in one of several agreements between the parties to disputes arising out of other agreements, so long as the agreements containing the arbitration clause was essential to the overall transaction, or the first in an ongoing series of related transactions.[4]

These and many similar cases explain why Thelen chose to first contest arbitrability before the ICDR, and why it was right to do so. The problem is that Thelen is then not permitted to go to court to reverse or enjoin an unfavorable ruling from the ICDR, which is obviously what Thelen is here seeking to do. Thelen does not cite any cases supporting the injunction of an action that the

---

[2] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3349, 3353 (1985).

[3] Id. at 3353-54 (emphasis added).

[4] *See Personal Security & Safety Systems, Inc. v. Motorola, Inc.*, 297 F.3d. 388, 393-94 (5th Cir. 2002); *Neal v. Hardee's, Inc.*, 918 F.2d 34, 37-38 (5th Cir. 1990); cf. *International Ambassador Programs, Inc. v. Archexpo*, 68 F.3d 337, 340 (9th Cir. 1995) (test for applying arbitration clause in first agreement to later agreement is whether later agreement is part of ongoing series of related transactions), *cert denied*, 517 U.S. 1167, 116 S.Ct. 1567 (1996).



CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

party had already participated in, voluntarily making arguments regarding arbitrability to the arbitral authority.

## V. THELEN HAS LITTLE IF ANY LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE THE FIRST NEW ARBITRATION CLAIM WAS NOT PREVIOUSLY LITIGATED, AND THE SECOND ARISES FROM THELEN'S BREACH OF A DUTY THAT AROSE UNDER THE 1999 ATTORNEY-CLIENT AGREEMENT.

Thelen's Complaint seeks to bar petitioners from arbitrating "claims not subject to arbitration and which were previously litigated *in this court* to a final judgment on their merits." Complaint ¶ 1 (emphasis in original). Thelen omits any description of petitioners' actual arbitration claims – which Thelen had notice of weeks before filing its Complaint – because those claims do not meet Thelen's own criteria for the injunctive relief it seeks.

Marland's first claim, for breach of Thelen's representation to the Court that it would pay $612,500 plus interest "promptly" after the Court granted its cross-motion, obviously was not litigated "*in this court*": Thelen only reneged after the August 1, 2007 decision in *Thelen v. Marland I.* Thelen may have some theory as to how this Court's denial of Marland's motion to compel payment is relevant to that claim (*other* than that the court relied on Thelen's written representation that it would pay over the money), but that is different argument from the allegation in Thelen's Complaint.

Marland's second claim, for breach of Thelen's duty of loyalty to a former client, arises out of the attorney-client relationship created by the 1999 Attorney-Client Agreement. Thelen cannot seriously dispute this point (and up to now, it has not). Nor has Thelen ever claimed that the 2002 agreement actually rescinded or novated the arbitration agreement in the 1999 Attorney-Client Agreement, such that it would not apply to disputes over ongoing duties of loyalty that were created by the agreement.

Since the Court has found (correctly) that the 2002 Agreement incorporated the 2001 Amendment to the 1999 Attorney-Client Agreement, it follows that Thelen is stopped from disputing that RoNo is entitled to arbitrate claims against Thelen for breaches of professional duties arising from the attorney-client relationship provided for in the 2002 Agreement.



CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

Thelen's reply will likely argue that the first new arbitration claim does not arise directly out of the parties' attorney-client agreement, while the second was presented in Marland's pleadings and dismissed along with the balance of Marland's claims—in other words, Thelen will argue that its characterizations of Marland's claims are each half-correct. Marland's response to Thelen's preliminary injunction motion (if necessary) will address this in more detail, but the following is a synopsis of why Thelen is still wrong: (1) the Attorney-Client Agreement was the first and most important of the parties' agreements; it contemplated that Thelen would seek to represent the California Department of Insurance; and the series of agreements in 1999, as well as the related 2001 amendments, make clear that the agreements were all inter-related; (2) Thelen has yet to point out where in the August 1, 2007 decision in *Thelen v. Marland I* the court addressed any of Marland's post-2002 disloyalty claims noted above; that raises at least a question regarding whether the Court believed they had been properly asserted and required Marland to assert this claim in the re-activated arbitration or risk a later claim of waiver.

Finally, Marland's response to Thelen's Preliminary injunction motion will explain why At best, Thelen's Complaint is, at best, an argument is that the dismissal of Marland's counterclaims is collateral estoppel regarding Marland's second new claim – and even if Thelen were correct, the issue of collateral estoppel, the existence and validity of the arbitration agreement, are matters for the arbitrator to decide in the first instance.

**Conclusion**

The present situation is the result of Thelen's deliberate choices since August 1 – reneging on its representation to this Court, choosing not to cross-appeal the denial of its injunction requests, and agreeing to argue the issues of Arbitrability before the ICDR. Thelen cannot hide these facts, nor change them. Thelen's application is completely meritless, and should be summarily denied.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

DATED: November 9, 2007

CARLSON, CALLADINE & PETERSON LLP

By [signature]
EDWARD F. DONOHUE
Attorneys for Defendant/Cross-Complainant,
FRANCOIS MARLAND

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111