1  DONALD W. CARLSON [Bar No.: 79258] dcarlson@ccplaw.com
   GUY D. CALLADINE [Bar No.: 99431] gcalladine@ccplaw.com
2  CARLSON, CALLADINE & PETERSON LLP
   353 Sacramento Street, 16th Floor
3  San Francisco, California 94111
   Telephone:    (415) 391-3911
4  Facsimile:    (415) 391-3898

5  ANDREW W. HAYES (*pro hac vice pending*)
   HAYES & MALONEY LLP
6  1 Rockefeller Plaza, Suite 1005
   New York, New York 10020
7  Telephone:    (212) 554-3120
   Facsimile:    (212) 554-3121

8
   Attorneys for Defendant
9  FRANÇOIS MARLAND

10

11                              UNITED STATES DISTRICT COURT

12                           NORTHERN DISTRICT OF CALIFORNIA

13

14  THELEN REID BROWN RAYSMAN &          )   Case No.:        C-07-5663 SI
    STEINER LLP,                          )
15                                        )   **DECLARATION OF ANDREW W.**
                                          )   **HAYES IN OPPOSITION TO THELEN'S**
16                         Plaintiff,     )   **EX PARTE APPLICATION FOR**
                                          )   **TEMPORARY RESTRAINING ORDER**
17        v.                              )   **AND OTHER RELIEF**
                                          )
18  FRANÇOIS MARLAND,                     )
                                          )
19                         Defendant.     )
                                          )
20  _____ )

21

22        I, Andrew W. Hayes, declare and state as follows:

23        1.       I am a member of the Bar of the State of New York, counsel to Defendant Francois

24  Marland in the arbitration pending before the International Center for Dispute Resolution

25  ("ICDR"), Case No. 50 180 T 00082 09, *Francois Marland and RoNo LLC v. Thelen, Reid &*

26  *Priest LLP*, and admitted pro hac vice before this Court in the previous litigation between the

27  parties (Case No. C-06-02071 VRW, referred to by Plaintiff Thelen Reid Brown Raysman &

28  Steiner LLP as "*Thelen v. Marland I*").  I make this declaration to present the Court with

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

1    information and documents referred to in Defendant Marland's Opposition to Thelen's Ex Parte

2    Application for Temporary Restraining Order and Other Relief based on my personal knowledge,

3    and if called to testify as a witness in this proceeding could and would testify competently as

4    follows.

5         2.      The above-referenced arbitration was filed in February 2005.  Thelen appeared

6    through its counsel John Kerr of Simpson Thatcher & Bartlett LLP, and participated in the

7    arbitrator selection process through the strike-and-rank process provided for by the ICDR's rules.

8    In fact, the parties received *two* sets of proposed arbitrators, because the first set failed to yield a

9    match after Mr. Kerr struck *all* of the non-California arbitrators from his first list.

10         3.      After the parties had struck and ranked the arbitrators on the *second* list, the

11    arbitrator selection process was stayed by the parties' stipulation in *Thelen v. Marland I*, a copy of

12    which is attached below.

13         4.      The stipulated stay expired by its own terms in September 2007, when Thelen

14    chose not to cross-appeal the dismissal of its request to enjoin the arbitration.  In early October

15    2007, I advised the ICDR that Marland wished to re-activate the arbitration to pursue two specific

16    claims that either had not, or did not appear to have been, resolved by the August 1, 2007 decision

17    in *Thelen v. Marland I*.

18         5.      Mr. Kerr appeared again for Thelen in response to that request, and proceeded to

19    argue, in writing and in conference calls with the ICDR, that the ICDR should not allow Marland

20    to proceed with the arbitration of *any* claims.

21         6.      In addition to these written messages, I recall a conference call with the ICDR on

22    October 9, 2007, in which Mr. Kerr not only insisted that the ICDR should not allow Marland to

23    re-activate the arbitration, but that if I did so Thelen would seek sanctions against me from this

24    Court.  I responded by telling Mr. Kerr that he had already received written notice of the specific

25    claims that Marland intended to arbitrate, and if he thought Thelen was entitled to seek sanctions

26    or other relief from this Court based on those claims, he should proceed to seek that relief

27    forthwith.

28

7.      During the October 9 call, the ICDR noted that the parties' strike-and-rank process from 2005 had resulted in a match – i.e., a proposed arbitrator acceptable to both sides.  The ICDR suggested that under its rules, it would proceed to designate that person as the arbitrator; however, it also offered the parties the opportunity to agree on some other arbitrator, or some other means of selecting an arbitrator (including by reviewing the lists previously provided), and advise the ICDR of any agreement on that alternative method.  The ICDR's follow-up letter after the conference call (attached hereto as Exhibit 7) repeated that suggestion, and directed to parties to report any such agreement by October 15.

8.      I never heard from Mr. Kerr (or anyone else representing Thelen) regarding the ICDR's suggestion, and the October 15 deadline passed without event.  I called Mr. Kerr before October 15 to discuss the ICDR's suggestion but he was traveling on business and did not call me back or authorize any of his colleagues at Simpson Thatcher to discuss the topic with me.

9.      At no time during our communications with the ICDR since August 2007 did Mr. Kerr ever state that Thelen objected to having the ICDR decide the question of whether Marland (and RoNo) should be allowed to assert new claims, or re-activate the arbitration.  On the contrary, the tenor of Mr. Kerr's arguments was that the ICDR, acting under its own authority and rules, should recognize and apply this Court's August 1, 2007 decision in *Thelen v. Marland I*, and on that basis bar petitioners from proceeding.

10.      Thelen as little notice as possible of its TRO request on November 7, 2007. Thelen did not wait for Marland's filing, but chose to withhold its own papers from Marland while demanding instantaneous action from the Court.  Thelen called the court at 1 pm PST on November 7 to insist that it needed a TRO that afternoon.  Moreover, Thelen claimed that it was waiting to serve opposing counsel until it received a file-stamped copy of its papers.  Thelen claimed this procedure was required under Civil Local Rule 65-1.

11.      Due to Thelen's gamesmanship, Marland had little more than an hour – until 3 pm – to submit a response before the Court would rule on the TRO request.  As such, Marland had little choice but to give credence to the phony "deadline" by postponing it. In fact, this "deadline"

MARLAND'S OPPOSITION TO THELEN'S EX PARTE APPLICATION

CASE NO.: C-07-5663 SI

1  was simply a *second chance* for the parties to reach an agreement to proceed in a manner *other*

2  *than* pursuant to the strike-and-rank process.

3       12.    Following are the relevant documents (including excerpts of certain documents)

4  and communications referred to in Marland's Opposition and above, including my

5  communications with Thelen's counsel regarding the re-activation of the arbitration:

6            (a)  attached hereto as Exhibit 1 is a true and correct copy of relevant pages from

7  Thelen's Opposition to Francois Marland's Motion for Summary Judgment, Docket Item No. 223

8  in *Thelen v. Marland I;*

9            (b)  attached hereto as Exhibit 2 is a true and correct copy of an e-mail chain

10  between Andrew W. Hayes, Christian Alberti (the ICDR case manager for the above-referenced

11  arbitration) and John Kerr, dated October 3, 2007;

12            (c)  attached hereto as Exhibit 3 is a true and correct copy of an e-mail chain

13  between Andrew W. Hayes, Christian Alberti and John Kerr, dated October 3-4, 2007;

14            (d)  attached hereto as Exhibit 4 is a true and correct copy of an e-mail chain

15  between Andrew W. Hayes, Christian Alberti and John Kerr, dated October 15-17, 2007;

16            (e)  attached hereto as Exhibit 5 is a true and correct copy of a letter from John Kerr

17  to Christian Alberti, dated October 15, 2007;

18            (f)  attached hereto as Exhibit 6 is a true and correct copy of a letter from Christian

19  Alberti to John Kerr and Andrew W. Hayes dated November 5, 2007;

20            (g)  attached hereto as Exhibit 7 is a true and correct copy of an e-mail from

21  Christian Alberti to Andrew W. Hayes and John Kerr, dated October 9, 2007;

22            (h)  attached hereto as Exhibit 8 is a true and correct copy of a stipulation and order

23  in *Thelen v. Marland I* staying the above-referenced arbitration action, executed by Chief Judge

24  Vaughn R. Walker on May 22, 2006;

25            (i)  attached hereto as Exhibit 9 is a true and correct copy of relevant pages from

26  the August 1, 2007 decision in *Thelen v. Marland I*, Docket Item No. 320 therein;

27

28

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

4

1       (j)  attached hereto as Exhibit 10 is a true and correct copy of relevant pages from

2   Marland's Notice of Appeal and Civil Docketing Statement in *Thelen v. Marland I*, Docket Item

3   No. 330 therein, dated August 23, 2007;

4       (k)  attached hereto as Exhibit 11 is a true and correct copy of an e-mail chain

5   between Andrew W. Hayes, Christian Alberti and Wendy J. Thurm, dated June 26, September 19,

6   and September 27, 2007;

7       (l)  attached hereto as Exhibit 12 is a true and correct copy of a letter from Andrew

8   W. Hayes to Christian Alberti, dated October 15, 2007;

9       (m)  attached hereto as Exhibit 13 is a true and correct copy of an e-mail from

10  Wendy J. Thurm to Andrew W. Hayes, Matthew G. Friedman, Guy Calladine and  Edward

11  Donohue, dated November 7, 2007; and

12      (n)  attached hereto as Exhibit 14 is a true and correct copy of Marland's Second

13  Amended Description of Claims, filed November 7, 2007 in the above-referenced arbitration

14  action.

15      I declare the foregoing is true and correct under penalty of perjury of the laws of the State

16  of California.

17      Executed this 9th Day of November, 2007, in New York, New York.

18

19                       _____

20                        Andrew W. Hayes

21

22

23

24

25

26

27

28

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

5

# EXHIBIT

# 1

KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
WENDY J. THURM - #163558
BENEDICT Y. HUR - #224018
BENJAMIN BERKOWITZ - #244441
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff, Counter-Defendant, and
Counter-Counter-Claimant
THELEN REID BROWN RAYSMAN & STEINER LLP
       fka THELEN REID & PRIEST LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THELEN REID BROWN RAYSMAN & STEINER LLP, fka THELEN REID & PRIEST LLP, | Case No. C 06-2071 VRW |
| Plaintiff and Counter-Defendant, | **THELEN REID BROWN RAYSMAN & STEINER LLP'S OPPOSITION TO FRANCOIS MARLAND'S MOTION FOR SUMMARY JUDGMENT** |
| v. | Date: May 10, 2007<br>Time: 2:00 p.m.<br>Dept: Courtroom 6<br>Judge: Hon. Vaughn R. Walker |
| FRANÇOIS MARLAND, | |
| Defendant and Counter-Claimant. | |
| THELEN REID BROWN RAYSMAN & STEINER LLP, fka THELEN REID & PRIEST LLP, | |
| Counter-Counter-Claimant, | |
| v. | |
| FRANÇOIS MARLAND, SUSANNAH MAAS and PHILIPPE BRUNSWICK, | |
| Counter-Counter-Defendants. | |

THELEN'S OPPOSITION TO MARLAND'S MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-2071 VRW

1   invalidates the December 2002 Agreement.  Marland's motion for summary judgment on

2   Thelen's first counter-counterclaim should be denied.

3           **3.      Thelen's states a valid claim for money had and received.**

4           Marland argues that Thelen cannot state a valid claim for money had and received.  Under

5   California law, a party states a claim for "money had and received" when another party has in his

6   possession "money which belongs to another, and which in equity and good conscience he ought

7   to pay over to the latter."  *Weiss v. Marcus,* 51 Cal. App. 3d 590, 599 (1975).  Marland suggests

8   that "equity and good conscience" would not be satisfied if Thelen prevailed on its claim.  But

9   Thelen paid $19 million to Marland under what Marland now claims is an invalid agreement.

10  "Equity and good conscience" therefore requires a judicial determination of the parties' rights to

11  that sum, if the Court finds that the December 2002 Agreement should not be enforced.  The

12  Court previously ruled in Thelen's favor on this very issue:

13          Marland's own authority states that a count for money had and received is
            available "[w]here the plaintiff has paid money pursuant to a contract that is *void*."
14          4 Witkin, Cal. Procedure, Pleading, § 552 at 612 (4th ed 1997).  Thelen conditions
            its counter-counterclaim on the court finding that the December 2002 agreement is
15          invalid.  If the court makes this finding, Thelen will have paid money under a void
            agreement.  Accordingly, Thelen asserts a set of facts that entitle it to the return of
16          money paid under that agreement. . . . . Marland incorrectly frames this relief as
            forcing him to return all payments received from Thelen, leaving him with
17          nothing.  Doc #84 at 7.  Thelen's counter-counterclaim, if it succeeds, does not
            force such a result.  Rather, in the event that the court invalidates the 2002
18          agreement, any money ordered returned would be offset by any money owed to
            Marland under the court's determination of the parties' rights.[189]
19
            Marland has presented no basis for the Court to re-visit its prior ruling.  Marland's motion
20
    for summary judgment on Thelen's second counter-counterclaim should be denied.
21
    **D.      If the December 2002 Agreement is invalid, Thelen is not required to make further
22          payments under that Agreement.**

23          Marland claims that Thelen should be required to pay all sums owed under the December

24  2002 Agreement now because Thelen does not dispute that the money is owed if the Agreement

25  is valid.[190]  His argument misses the point.  Thelen readily admits that if the Court determines that

26  the December 2002 Agreement is valid, it will pay Marland all sums owed under that agreement.

27  [188]  February 5, 2007 Order, Docket No. 121, at 7-8.
28  [189]  February 5, 2007 Order at 9.
    [190]  Marland's Mot. at 36:14-37:13.

                                                  29

393466.03

1   Indeed, if the Court grants Thelen's cross-motion for summary judgment, Thelen will promptly

2   pay Marland the $612,500 it is holding in escrow, from fees it received from the Department in

3   2006, after this action was commenced.  And if the December 2002 Agreement is upheld, Thelen

4   will continue to pay Marland 35% of any additional fees Thelen receives from the Department

5   based on judgments or settlements with the remaining parties.[191]  On the other hand, if the Court

6   determines that the December 2002 Agreement is invalid, the trier of fact must determine who is

7   entitled to the sums that would otherwise have been owed under that agreement.

## V.    CONCLUSION

9        For the foregoing reasons, Thelen respectfully requests that the Court deny Marland's

10  motion for summary judgment, and enter summary judgment for Thelen on Marland's first, third,

11  sixth, seventh, eighth and ninth affirmative defenses.

12  Dated:  April 19, 2007                        KEKER & VAN NEST, LLP

13                                By:  /s/ Wendy J. Thurm

14                                WENDY J. THURM
                              Attorneys for Plaintiff, Counter-Defendant

15                                and Counter-Counter-Claimant
                              THELEN REID BROWN RAYSMAN &

16                                STEINER LLP fka THELEN REID &
                              PRIEST LLP

17

18

19

20

21

---

22  [191]  Currently, there are two appeals pending before the Ninth Circuit arising from the trial of the

23  Executive Life case in 2005.  Artemis appealed the trial court's restitution award for the
Commissioner the amount of $241,092,020.  The Commissioner appealed the court's order
vacating the jury's award of $700 million in punitive damages.  Both appeals have been fully

24  briefed, but no date has been set for oral argument.  If the restitution award is upheld, or the jury's
punitive damage award is reinstated, or both, the Commissioner will receive additional funds, and

25  then pay Thelen additional legal fees.

26

27

28

393466.03

# EXHIBIT

# 2

## Andrew W. Hayes

| | |
|---|---|
| **From:** | Christian Alberti [Albertic@adr.org] |
| **Sent:** | Wednesday, October 03, 2007 4:15 PM |
| **To:** | Andrew W. Hayes; jkerr@stblaw.com |
| **Subject:** | RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06) |

**Importance:**    High

Dear Counsel,

The ICDR confirms receipt of Claimants' e-mail dated October 2, 2007.

As a courtesy, the ICDR will waive the ICDR abeyance fee for both parties subject to an official request by Claimants to reactivate this matter including sufficient proof that the court has lifted the stay or that this arbitration proceeding may proceed. The attachment to Claimants' October 3 e-mail below seems to be an invoice rather than the court decision dated August 1, 2007. We have, therefore, decided to not share this attachment with Respondent as it may be of confidential nature. We also will not make it part of the file unless advised otherwise by Claimants and shared with Respondent.

As per the additional claims may I refer you to Article 4 of the ICDR Rules which states:

"*During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate*."

As no Tribunal has yet been appointed, Claimants may submit their Amended Demand for Arbitration along with their motion to lift the stay to my attention. Respondent will then be invited to submit comments within 30 days from the date the ICDR has conformed receipt of the amended demand. The Tribunal will then make any further decisions once appointed.

I would also propose that we schedule a short conference call with both counsel in order to discuss the further steps regarding the arbitrator selection process.

Please do not hesitate to contact me via phone or e-mail should you have any questions or concerns.

Sincerely,

Christian P. Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Fl., New York, NY 10019
Phone: +01 212.484.4037
Fax: +01 212.246.7274
e-Mail: AlbertiC@adr.org
http://www.icdr.org

**Register Now:**
**The ICDR International Reporting Program**
Focus Areas: International ADR Roundtable, Latin America, European Union,
ICDR's Technology for ADR Services

**New York, NY**
**Friday, October 12, 2007**
To register visit: http://www.adr.org/OnlineRegistrations.asp
or contact Noelia Martinez at +01 212.716.3977 or by e-mail at AAAUniversity@adr.org.

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Andrew W. Hayes [mailto:ahayes@hayes-maloney.com]
**Sent:** Wednesday, October 03, 2007 3:23 PM
**To:** Christian Alberti
**Subject:** RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)

Dear Mr. Alberti,

Respondent Thelen's counsel has advised me that they have changed their position and will pay their share of the abeyance fee. Could you please advise whether that payment has been received, so that I can know what to remit tomorrow on behalf of the Claimants?

I also have two questions regarding the arbitration itself:

First, by decision dated August 1, 2007, the federal court also expressly denied Thelen's request to enjoin the arbitration, and the arbitration should therefore be returned to active status. (I assume this does not change the fact that the abeyance fee is still due.)

Second, after Claimants filed their amended notice of claim last year, Thelen withheld the Claimant's share of funds that were recently received by Thelen, and which are due and payable to the Claimants. I have been instructed to amend the statement of claim to seek payment of these funds through the arbitration, and to seek to arbitrate certain other claims that the federal court declined to adjudicate, which Thelen had previously acknowledged were outside the scope of the motions before the Court. Please let me know if you see a problem in proceeding in that manner.

I have attached a copy of the court's order for your reference.

Sincerely,

Andrew Hayes


Andrew W. Hayes
Hayes & Maloney LLP
1 Rockefeller Plaza, Suite 1005

New York, N.Y. 10020-2003
Tel 212-554-3125
Fax 212-554-3121
Cell 917-770-0180

---

This message is intended only for the person or entity to whom it is addressed and may contain confidential or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited and may violate applicable ethical rules. If you received this transmission in error, please contact the sender by reply e-mail or by telephone (212-554-3125) and delete and destroy all copies of the material, including all copies stored in the recipient's computer, printed or saved to disk.

Hayes & Maloney LLP is not providing any advice with respect to any tax issue in connection with this matter.

# EXHIBIT

# 3

**Andrew W. Hayes**

| | |
|---|---|
| **From:** | Kerr , John J [jkerr@stblaw.com] |
| **Sent:** | Thursday, October 04, 2007 10:34 AM |
| **To:** | Christian Alberti; Andrew W. Hayes |
| **Subject:** | RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06) |

Dear Mr. Alberti,

Thank you for your email.  I am not available for a conference call this afternoon, but I am available Tuesday next week, October 9 for a call.  I propose 3 pm.

Mr. Hayes did not copy me on his email to you of October 3.  Given the judgment of the U.S. District Court in San Francisco, we think Mr. Marland is barred from pursuing this arbitration or any variation of it that he may attempt with an amended demand for arbitration.

Sincerely yours,

John Kerr

_____

John J. Kerr, Jr.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017

Tel: (212) 455-3805
Fax: (212) 455-2502
jkerr@stblaw.com

_____

**From:** Christian Alberti [mailto:Albertic@adr.org]
**Sent:** Thursday, October 04, 2007 9:43 AM
**To:** Andrew Hayes
**Cc:** Kerr , John J
**Subject:** RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)

Dear Mr. Hayes,

Thank you for the quick turnaround.

Dear Mr. Kerr, we can either hold a short conference call **today at 3 PM Eastern Time** or **anytime early next week but Monday** (Columbus Day) whichever date is more convenient for you.

Sincerely,

Christian P. Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association

1

1633 Broadway, 10th Fl., New York, NY 10019
Phone: +01 212.484.4037
Fax: +01 212.246.7274
e-Mail: AlbertiC@adr.org
http://www.icdr.org

**Register Now:**
**The ICDR International Reporting Program**
Focus Areas: International ADR Roundtable, Latin America, European Union,
ICDR's Technology for ADR Services
***New York, NY***
**Friday, October 12, 2007**
To register visit: http://www.adr.org/OnlineRegistrations.asp
or contact Noelia Martinez at +01 212.716.3977 or by e-mail at AAAUniversity@adr.org.

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Andrew Hayes [mailto:ahayes@hayes-maloney.com]
**Sent:** Thursday, October 04, 2007 8:38 AM
**To:** Christian Alberti
**Cc:** <jkerr@stblaw.com>
**Subject:** Re: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)

Mr. Alberti,

Thank younger your response. I am available for a conference call tomorrow afternoon or next week.

Andrew Hayes

Sent from my iPhone

On Oct 3, 2007, at 4:14 PM, "Christian Alberti" <Albertic@adr.org> wrote:

Dear Counsel,

The ICDR confirms receipt of Claimants' e-mail dated October 2, 2007.

As a courtesy, the ICDR will waive the ICDR abeyance fee for both parties subject to an official request by Claimants to reactivate this matter including sufficient proof that the court has lifted the stay or that this arbitration proceeding may proceed. The attachment to Claimants' October 3 e-mail below seems to be an invoice rather than the court decision dated August 1, 2007. We have, therefore, decided to not share this attachment with Respondent as it may be of confidential nature. We also will not make it part of the file unless advised otherwise by Claimants and shared with Respondent.

As per the additional claims may I refer you to Article 4 of the ICDR Rules which states:

"*During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate.*"

2

As no Tribunal has yet been appointed, Claimants may submit their Amended Demand for Arbitration along with their motion to lift the stay to my attention. Respondent will then be invited to submit comments within 30 days from the date the ICDR has conformed receipt of the amended demand. The Tribunal will then make any further decisions once appointed.


I would also propose that we schedule a short conference call with both counsel in order to discuss the further steps regarding the arbitrator selection process.

Please do not hesitate to contact me via phone or e-mail should you have any questions or concerns.


Sincerely,

Christian P. Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Fl., New York, NY 10019
Phone: +01 212.484.4037
Fax: +01 212.246.7274
e-Mail: AlbertiC@adr.org
http://www.icdr.org

**Register Now:**
**The ICDR International Reporting Program**
Focus Areas: International ADR Roundtable, Latin America, European Union,
ICDR's Technology for ADR Services
*New York, NY*
**Friday, October 12, 2007**
To register visit: http://www.adr.org/OnlineRegistrations.asp
or contact Noelia Martinez at +01 212.716.3977 or by e-mail at AAAUniversity@adr.org.

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.



-----Original Message-----
**From:** Andrew W. Hayes [mailto:ahayes@hayes-maloney.com]
**Sent:** Wednesday, October 03, 2007 3:23 PM
**To:** Christian Alberti
**Subject:** RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)

Dear Mr. Alberti,



Respondent Thelen's counsel has advised me that they have changed their position and will pay their share of the abeyance fee. Could you please advise whether that

payment has been received, so that I can know what to remit tomorrow on behalf of the Claimants?

I also have two questions regarding the arbitration itself:

First, by decision dated August 1, 2007, the federal court also expressly denied Thelen's request to enjoin the arbitration, and the arbitration should therefore be returned to active status. (I assume this does not change the fact that the abeyance fee is still due.)

Second, after Claimants filed their amended notice of claim last year, Thelen withheld the Claimant's share of funds that were recently received by Thelen, and which are due and payable to the Claimants. I have been instructed to amend the statement of claim to seek payment of these funds through the arbitration, and to seek to arbitrate certain other claims that the federal court declined to adjudicate, which Thelen had previously acknowledged were outside the scope of the motions before the Court. Please let me know if you see a problem in proceeding in that manner.

I have attached a copy of the court's order for your reference.

Sincerely,

Andrew Hayes

Andrew W. Hayes

Hayes & Maloney LLP

1 Rockefeller Plaza, Suite 1005

New York, N.Y.  10020-2003

Tel  212-554-3125

Fax 212-554-3121

Cell 917-770-0180

---

This message is intended only for the person or entity to whom it is addressed and may contain confidential or privileged material.  Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited and may violate applicable ethical rules.  If you received this transmission in error, please contact the sender by reply e-mail or by telephone (212-554-3125) and delete and destroy all copies of the material, including all copies stored in the recipient's computer, printed or saved to disk.

Hayes & Maloney LLP is not providing any advice with respect to any tax issue in connection with this matter.

# EXHIBIT

# 4

**Andrew W. Hayes**

| | |
|---|---|
| **From:** | Andrew W. Hayes |
| **Sent:** | Wednesday, October 17, 2007 5:57 PM |
| **To:** | 'Abravanel, Karen'; albertic@adr.org |
| **Cc:** | Kerr , John J; Matthew G. Friedman |
| **Subject:** | RE: Marland v. Thelen Reid -- ICDR Case No. 50 180 T 00082 06 |

Dear Mr. Alberti,

Mr. Kerr's belated submission in response to your message of last week does not dispute the authenticity of the stipulation to stay the arbitration that was attached to my previous message. Mr. Kerr also does not dispute that Thelen's request for an injunction of the arbitration was denied. And Mr. Kerr does not dispute that Thelen's time to appeal the denial of its request for an injunction has passed.

Given these undisputed facts, Mr. Kerr is obviously wrong in claiming that Marland is "barred from proceeding with the arbitration." Mr. Kerr knows the difference between a party being "barred from proceeding with the arbitration" and the question of whether a specific *claim* is precluded by the defense of collateral estoppel, and he should therefore stop trying to confuse the two – or threatening to seek sanctions against Marland and his counsel when he knows there is no basis to do so. (Mr. Kerr is also demonstrably wrong in asserting that the San Francisco court "found" that the 2002 agreement "does not provide for arbitration". There is no such finding.)

In any event, it is crystal clear that the ICDR should proceed to administer this case as it would any other active matter, and leave to the arbitration the task of determining which claims are subject to collateral estoppel and which are not.

Since there is no provision in the ICDR's rules for counsel to make serial demands (either by telephone or in writing) on the ICDR's staff to "bar" Marland from proceeding, or to otherwise stay the arbitration, petitioners respectfully submit that Mr. Kerr – having had the opportunity he insisted on to explain why the arbitration should be stopped, and having failed to present any legal basis to terminate the arbitration – be advised to save his further comments for a submission to the arbitrator, in accordance with the ICDR's rules.

If you intend to entertain further diversionary submissions from Mr. Kerr, please let me know, as my clients are disturbed at the prospect of Mr. Kerr continuing to make up his own rules as he sees fit, and impose on your time and mine by doing so.

Sincerely,

Andrew W. Hayes

Andrew W. Hayes
Hayes & Maloney LLP
1 Rockefeller Plaza, Suite 1005
New York, N.Y. 10020-2075
Tel 212-554-3125
Fax 212-554-3121
Cell 917-770-0180

---

This message is intended only for the person or entity to whom it is addressed and may contain confidential or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited and may violate applicable ethical rules. If you received this transmission in error, please contact the sender by reply e-mail or by telephone (212-554-3125) and delete and destroy all copies of the material, including all copies stored in the recipient's computer, printed or saved to disk.

Hayes & Maloney LLP is not providing any advice with respect to any tax issue in connection with this matter.

---

**From:** Abravanel, Karen [mailto:KAbravanel@stblaw.com]
**Sent:** Tuesday, October 16, 2007 12:41 PM
**To:** albertic@adr.org
**Cc:** Kerr , John J; Matthew G. Friedman; Andrew W. Hayes
**Subject:** RE: Marland v. Thelen Reid -- ICDR Case No. 50 180 T 00082 06

SENT ON BEHALF OF JOHN J. KERR, JR.

Dear Mr. Alberti,

I do not intend to respond to the numerous misstatements in Mr. Hayes's email. Thelen's position has not changed. Marland is barred from proceeding with the arbitration because: (1) the U.S. District Court's August 1, 2007 Order fully adjudicated all of the issues raised in Marland's prior Demand for Arbitration; and (2) the District Court held that the February 1999 Agreement on which Marland relies in the arbitration proceeding was superseded and replaced by a December 2002 Agreement that does not provide for arbitration.

During the parties' conference call with you on October 9, I made clear that unless and until Marland files an Amended Demand for Arbitration, which purports to state claims that have not already been adjudicated, there is nothing procedurally before the ICDR and it would be premature to address the issues of arbitrability or the selection of an arbitrator. In response, Mr. Hayes represented that Marland would file an Amended Demand by Monday, October 15. He did not do so, apparently because his laptop computer crashed. In his October 15 submission to the ICDR, Mr. Hayes now states that Marland will file the Amended Demand "later this week." If and when Marland files an Amended Demand purporting to state claims that have not already been adjudicated, Thelen will address the arbitrability of the amended claims, as well as the process of selecting an arbitrator.

Sincerely yours,

John Kerr

---

John J. Kerr, Jr.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York 10017

Tel. (212) 455-3806

2

Fax: (212) 455-2502
jkerr@stblaw.com

---

**From:** Monica Hayes [mailto:mhayes@civicexchange.net]
**Sent:** Monday, October 15, 2007 10:53 PM
**To:** albertic@adr.org
**Cc:** Kerr , John J; Abravanel, Karen; Matthew G. Friedman
**Subject:** Re: Marland v. Thelen Reid -- ICDR Case No. 50 180 T 00082 06

Mr. Alberti,

I have just read Mr. Kerr's letter, and since he is in Asia on business I thought it appropriate to respond now, so that he can reply during his business day tomorrow if he chooses.

First, I should note that at no time from the end of our call until sending this letter did Mr. Kerr or his associate suggest that they needed to review Marland's amended demand before they could opine regarding the resumption of the arbitration.
As you will recall, it was Mr. Kerr's objection to the resumption of the arbitration in any way, shape or form -- including the filing of an amended demand -- that led you to take the unusual step of requesting letter submissions on the subject *before* Marland filed his amended demand.  If Mr. Kerr had a good-faith change of mind before this evening about the proper way to proceed, he should have had the courtesy to inform opposing counsel of that change of mind, sparing us the several hours' time it took to draft petitioners' letter to you.

Despite that discourtesy, the only reasonable conclusion is that Mr. Kerr has abandoned the sweeping positions he made during our call last week -- including his clear and pointed threat of seeking sanctions from the California court if Marland dared to resume the arbitration now -- and that the ICDR should confirm that the arbitration is reactivated.

Even Mr. Kerr's belated disclaimer that he "cannot make any specific comments about the reactivation of the arbitration proceeding until it has had the opportunity to review the Amended Demand" is disingenuous.  As you will recall, I discussed the claims that will be presented in the amended demand during our call of last week; I even advised Mr. Kerr to check with his co-counsel regarding Marland's recent demand for payment of the $612,500 owing from Thelen.  Again, one can only conclude that Mr. Kerr -- after our call of last week -- conferred with his co-counsel and realized that his position was untenable, and is now looking for a diplomatic way to avoid admitting as much directly.

The fact is that Mr. Kerr demanded and received the extraordinary opportunity to argue to you why the arbitration should not be re-activated, and he has now waived that opportunity.  His threats of last week to seek sanctions have been shown to be unfounded bluster.  It is simply disrespectful to both the ICDR and my client for Mr. Kerr (again, without even having the courtesy to ask or advise opposing counsel in advance) to *sua sponte* extend his time to submit support for a demand that should not have been indulged in the first place.  Petitioners therefore respectfully ask that you confirm that the arbitration has been re-activated, and remind Mr. Kerr that in future he should raise any issues he has in the time and manner set forth in the ICDR's rules.

Sincerely,

Andrew W. Hayes


On Oct 15, 2007, at 9:37 PM, Andrew Hayes wrote:



Sent from my iPhone

3

Begin forwarded message:

> **From:** "Abravanel, Karen" <KAbravanel@stblaw.com>
> **Date:** October 15, 2007 9:15:23 PM EDT
> **To:** <albertic@adr.org>
> **Cc:** <ahayes@hayes-maloney.com>, <mfriedman@hayes-maloney.com>, "Kerr , John J" <jkerr@stblaw.com>
> **Subject: Marland v. Thelen Reid -- ICDR Case No. 50 180 T 00082 06**
>
> Dear Mr. Alberti:
>
> Attached please find a letter with regard to the above-referenced arbitration.
>
> Regards,
>
> Karen Abravanel
>
> <<Oct. 15 letter.pdf>>
>
> ─────────────────────────
> Karen Abravanel
> Simpson Thacher & Bartlett LLP
> 425 Lexington Avenue
> New York, New York 10017
>
> Tel. (212) 455-7985
> Fax. (212) 455-2502
> kabravanel@stblaw.com
> ─────────────────────────

<Oct. 15 letter.pdf>

# EXHIBIT

# 5

SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

———

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER
212-455-3805

E-MAIL ADDRESS
jkerr@stblaw.com

October 15, 2007

Re:    Marland v. Thelen Reid & Priest, LLP
       No. 50 180 T 00082 06

Christian Alberti, Esq.
International Centre for Dispute Resolution
1633 Broadway, 10th Floor
New York, NY 10019

Dear Mr. Alberti:

We write pursuant to your October 9, 2007 request for comments regarding the attempt by Claimant François Marland ("Marland") to reactivate the above-referenced arbitration proceeding against Respondent Thelen Reid Brown Raysman & Steiner LLP, formerly known as Thelen Reid & Priest LLP ("Thelen"). Marland's counsel informed us this afternoon that he intends to file an Amended Demand for Arbitration (the "Amended Demand"), but will not be able to do so today because of technical difficulties. Thelen cannot make any specific comments about the reactivation of the arbitration proceeding until it has had the opportunity to review the Amended Demand. Accordingly, Thelen will submit its comments per your October 9, 2007 request within 24 hours of receiving the Amended Demand.

Please contact me if you have any questions.

Very truly yours,

/s/ John J. Kerr, Jr.

John J. Kerr, Jr.

cc:    Andrew W. Hayes, Esq.

# EXHIBIT

# 6



International Centre
for Dispute Resolution

Thomas Ventrone
Vice President

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
internet: http://www.adr.org/ICDR

November 5, 2007

Andrew W. Hayes, Esq
Hayes & Maloney LLP
1 Rockefeller Plaza, Suite 1005
New York, NY  10020-2003

John J. Kerr, Esq.
425 Lexington Avenue
New York, NY  10017-0000

Re: 50 180 T 00082 06
    Francois Marland and RoNo LLC
    vs
    Thelen Reid & Priest LLP

Dear Counsel,

After careful consideration of the parties' submissions received to date, the ICDR has decided that this matter will be reactivated and that the arbitration process will proceed with the appointment of a single arbitrator to hear this matter.

As indicated during our last conference call, we will appoint the highest ranked arbitrator regarding the lists we have received from the parties on May 4, 2006, unless the parties mutually agree to a different approach or wish to reconsider their selections.  If so, please discuss with opposing Counsel and advise the ICDR accordingly by no later than **12 PM Eastern Time on November 8, 2007**.

Please also note that, Mr. Guillaume Lemenez, ICDR Case Manager, will administer this matter and will be your primary contact at the ICDR.  His Supervisor is Mr. Michael Namias.  Please find their contact details below.  Mr. Lemenez will provide Counsel with further instructions shortly.

It has been a pleasure to work with you and I will remain available to you in my position as the ICDR's Solutions Manager should the parties wish to have additional services beyond case management.

Sincerely,

*Christian Paul Alberti*

Christian Paul Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
212 484 4037
AlbertiC@adr.org

*A Division of the American Arbitration Association*

Guillaume Lemenez, LL.M.
ICDR Case Manager
212 484 3262
LemenezG@adr.org

Michael Namias
ICDR Supervisor
212 484 4170
NamiasM@adr.org

# EXHIBIT

# 7

**Andrew W. Hayes**

| | |
|---|---|
| **From:** | Christian Alberti [Albertic@adr.org] |
| **Sent:** | Tuesday, October 09, 2007 3:50 PM |
| **To:** | Andrew W. Hayes |
| **Cc:** | Kerr , John J |
| **Subject:** | RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06) |

**Importance:**        High

Gentlemen,

Again, thank you very much for having made yourselves available for today's conference call.

I note that both Counsel have agreed to submit comments by Monday, October 15, 2007 with regard to the following issues:

1. Should this matter be reactivated or kept in abeyance?
2. In the event that this matter may proceed, do the parties agree to review the selection list(s) for arbitrator, and if so, do you agree to a specific strike and rank method.

The comments should not exceed three (3) pages.

I encourage Counsel to meet and confer later this week in order to discuss issue no. 2 and see if you can come to an agreement.


Sincerely,

Christian P. Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Fl., New York, NY 10019
Phone: +01 212.484.4037
Fax: +01 212.246.7274
e-Mail: AlbertiC@adr.org
http://www.icdr.org

**Register Now:**
**The ICDR International Reporting Program**
Focus Areas: International ADR Roundtable, Latin America, European Union,
ICDR's Technology for ADR Services
***New York, NY***
**Friday, October 12, 2007**
To register visit: http://www.adr.org/OnlineRegistrations.asp
or contact Noelia Martinez at +01 212.716.3977 or by e-mail at AAAUniversity@adr.org.

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

# EXHIBIT

# 8

1  KEKER & VAN NEST, LLP
   ROBERT A. VAN NEST - #84065 (rvannest@kvn.com)
2  WENDY J. THURM - #163558 (wthurm@kvn.com)
   STEVEN K. YODA - #237739 (syoda@kvn.com)
3  710 Sansome Street
   San Francisco, CA  94111-1704
4  Telephone:  (415) 391-5400
   Facsimile:  (415) 397-7188
5
   Attorneys for Plaintiff
6  THELEN REID & PRIEST LLP

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  THELEN REID & PRIEST LLP,              Case No. C 06-2071 VRW

12                       Plaintiff,
                                          **STIPULATION AND [PROPOSED]**
13        v.                              **ORDER**

14  FRANÇOIS MARLAND,

15                       Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

372735.01
                        STIPULATION AND [PROPOSED] ORDER

1    WHEREAS Defendant François Marland ("Marland") initiated an arbitration proceeding

2  against Plaintiff Thelen Reid & Priest LLP ("Thelen") in New York ("the New York Arbitration

3  Proceeding") on February 13, 2006;

4    WHEREAS Thelen filed a Complaint for Declaratory and Injunctive Relief against

5  Marland on March 21, 2006;

6    WHEREAS Thelen filed a Motion for Preliminary Injunction on March 24, 2006,

7  seeking, in part, an order from this Court prohibiting Marland from proceeding with the New

8  York Arbitration Proceeding;

9    WHEREAS the hearing on Thelen's Motion for Preliminary Injunction is currently

10  scheduled for June 8, 2008;

11    WHEREAS the deadline for Marland to file an opposition to Thelen's Motion for

12  Preliminary Injunction is May 11, 2006;

13    WHEREAS Marland filed a Motion to Dismiss on May 1, 2006;

14    WHEREAS  Thelen filed a First Amended Complaint on May 3, 2006;

15    WHEREAS Thelen and Marland desire to conduct discovery prior to this Court's

16  resolution of Thelen's Motion for Preliminary Injunction;

17

18    NOW, THEREFORE, Thelen and Marland stipulate and agree as follows:

19

20    1.    The New York Arbitration Proceeding shall be stayed, until such time as this

21  Court enters a final order on Thelen's Motion for Preliminary Injunction;

22    2.    Thelen's Motion for Preliminary Injunction shall be taken off-calendar;

23    3.    Marland shall Answer or move to dismiss Thelen's First Amended Complaint on

24  May 23, 2006;

25    4.    After Marland files his Answer, the parties shall meet and confer regarding (a)

26  the scope of discovery to be completed prior to the date on which Marland shall file his

27  opposition to Thelen's Motion for Preliminary Injunction; and (b) a briefing schedule and new

28  hearing date for Thelen's Motion for Preliminary Injunction.

1

1     5.     This Stipulation and every part hereof is entered into in the interests of the

2  reaching an orderly and just resolution of the parties' disputes, without prejudice to any party's

3  position regarding the claims and defenses asserted in this action or in the New York Arbitration

4  Proceeding.  Nothing in this Stipulation shall be deemed to constitute a waiver of any substantive

5  or procedural right, claim, or defense of any party, except for such matters as are expressly set

6  forth herein.

7

8  Dated:  May 10, 2006                    KEKER & VAN NEST, LLP

9

10                                         By:  ___/s/ Wendy J. Thurm___

11                                         WENDY J. THURM
                                           Attorneys for Plaintiff
12                                         THELEN REID & PRIEST LLP

13

14  Dated:  May 10, 2006                   CARLSON, CALLADINE & PETERSON
                                           LLP
15

16                                         By:  ___/s/ Guy D. Calladine_____

17                                         GUY D. CALLADINE
                                           Attorneys for Defendant
18                                         FRANÇOIS MARLAND

19

20          **IT IS SO ORDERED.**

21

22  Dated:__ May 22, 2006 _____

23

24

25

26

27

28

# EXHIBIT

# 9

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THELEN REID BROWN RAYSMAN &
STEINER LLP, fka THELEN REID &
PRIEST LLP,

        Plaintiff and
        Counterdefendant,

        v

FRANÇOIS MARLAND,

        Defendant and
        Counterclaimant.
_____/

THELEN REID BROWN RAYSMAN &
STEINER LLP, fka THELEN REID &
PRIEST LLP,

        Counter-
        Counterclaimant,

        v

FRANÇOIS MARLAND, SUSANNAH MAAS &
PHILIPPE BRUNSWICK

        Counter-
        Counterdefendants.
_____/

No C 06-2071 VRW


ORDER

**United States District Court**
For the Northern District of California

1  ask CDOI for a non-recourse advance to the firm.  Id.  The June

2  1999 agreement required Thelen to pay to Marland, Brunswick and

3  Maas a percentage of any fees received from CDOI.  Thelen

4  approached Marland to negotiate a restructuring of their fee

5  sharing relationship.  Id at ¶¶28-29.

6         In June 2002, Thelen requested that Marland produce the

7  July 1991 *portage*.  Doc #177, Ex 1.  Thelen states that it needed

8  the document because Thelen partner Karl Belgum was preparing to

9  depose the key defense witnesses in the ELIC litigation.  Doc #175,

10  Ex M at 105:24-107:7.  According to Thelen, Marland refused to

11  produce the document and said for the first time that he had

12  destroyed it.  Doc #164 at ¶30.  Again, Marland does not contest

13  this.

14         Sometime prior to July 2002, Thelen approached Marland in

15  an attempt to restructure the terms of their fee-sharing agreement.

16  Doc #11 (FAC) at ¶34; Doc #72 (Answer) at ¶34.  Negotiations

17  ensued.  Id.  Thelen's general counsel, Wynne Carvill, met with

18  Brunswick at Brunswick's office in Paris in June 2002.  Doc #175,

19  Ex R at 75:7-25.

20

21         On July 8, 2002, pursuant to the terms of the February

22  1999 agreement, Thelen gave Marland 30 days' written notice of its

23  decision to withdraw from representing him.  Doc #175, Ex S.  The

24  notice stated:

25         Dear Mr Marland:

26         As you know, we are working with Philippe Brunswick to
        negotiate a new, definitive agreement governing our
27         relationship.  We had hoped to have this in place by now,
        but the process is taking more time than we had
28         anticipated.

United States District Court
For the Northern District of California

1
2
3
4

> Nevertheless, as we should clearly be able to conclude a new agreement during the month of July, we believe the time has come to send you thirty day (30) notice of termination of, and withdrawal from, the February 17, 1999 Attorney-Client Agreement pursuant to clause 22 of that document.  Please accept this letter as such notice.
>
> We would very much like to come to a new agreement within the next thirty days, but this notice is not contingent upon us doing so.

5
6
7

Id.  Thelen extended the notice period once, to August 30, 2002.

8

Doc #220, Ex 15.

9

In the six months following the June 2002 meeting in

10

Paris, Carvill and Brunswick exchanged ten drafts of a "New

11

Agreement to Associate Counsel."  Doc #176, Exs 3-36.

12

On December 19, 2002, Thelen, Marland, Brunswick and Maas

13

entered a new agreement which replaced "any and all other

14

agreements among them," effective July 1, 2002.  Doc #175, Ex T.

15

Under the terms of the December 2002 agreement, the percentage of

16

Marland and European Counsel's recovery was reduced from 52.5% to

17

35% of the fees paid to Thelen by CDOI.  Id at ¶B.2(a).  Thelen

18

also agreed to resume its role as general counsel to RoNo and

19

agreed to represent Marland, at no charge for up to $100,000 in

20

fees, in the event that any ELIC defendant tried to block payments

21

to him.  Id at ¶B.2(g)(iv)-(v).

22

The December 2002 agreement includes a "Mutual Release"

23

provision that states:

24
25
26
27
28

> For the mutual consideration reflected herein, the parties hereby release and forever discharge one another from any and all claims they might have against one another for any breach by the other of any prior agreement between them or professional obligation of one to the other or any other obligation whether sounding in tort or contract, including, but not limited to, any claim that Marland or EC [European Counsel] failed to

11

1    perform any services, to deliver any documents or
     otherwise to fulfill any obligations of any kind to TR&P,
2    or any claim that TR&P failed to perform any services, to
     adequately protect the interests of its clients
3    (Marland/RoNo), to disclose any conflict, to obtain any
     required waiver or otherwise to discharge any obligations
4    of any kind to Marland, RoNo or EC.

5
     The parties expressly acknowledge and waive the
6    provisions of California Civil Code section 1542 * * *

7
     Both Parties have had the benefit of the advice of
8    independent counsel in considering the significance of
     this Mutual Release and neither is relying on the advice
9    of the other in deciding to enter it.

10   Id at ¶C.3.

11        The December 2002 agreement further required the parties

12   to obtain consent from CDOI:

13   Disclosure and consent: The Parties expressly acknowledge
     that the fee splitting terms of this Agreement shall be
14   disclosed to the Commissioner, that the circumstances
     leading to this change shall be disclosed to the
15   Commissioner and that his consent to this Agreement shall
     be sought as part of an effort to obtain his agreement to
16   pay Advances as provided in paragraph N above.  The
     effectiveness of this entire Agreement is conditioned on
17   the Commissioner providing his consent.

18
     Id at ¶C.2(a) (emphasis in original).
19
20        On August 2, 2004, CDOI provided its consent.  Doc #175,

21   Ex U.  The signed consent states:

22   The California Department of Insurance ("CDOI") has
     reviewed the New Agreement to Associate Counsel entered
23   into December 8, 2002 between Thelen Reid & Priest and
     certain other parties referred to collectively therein as
24   European Counsel (the "Agreement"), a copy of which is
     attached hereto.
25
26   CDOI hereby gives its consent, pursuant to Rule 2-200 of
     the Rules of Professional Conduct of the State Bar of
27   California, to the fee sharing agreement contained in the
     Agreement.
28   Id.

                              12

United States District Court

For the Northern District of California

§ 16004.  The state court made two findings that are relevant here. First, the court found that Sturdevent had met the duty imposed by Probate Code § 16004 by producing evidence that "the transaction was conducted at arms-length with an intelligent, experienced, and sophisticated client."  Id at 916.  The court noted that "[Sturdevent] was entitled to withdraw from the case, and thus was entitled to negotiate the terms under which he would continue. Ramirez's interest in continuing with Sturdevent may have caused her to agree to terms she otherwise would have refused, but that fact does not by itself translate into duress or a breach of fiduciary duty."  Id at 918.

Second, the court held that § 16004 did not apply to the supplemental agreement in any event, pointing to the last sentence in the section: "This subdivision does not apply to the provisions of an agreement between a trustee and a beneficiary relating to the hiring or compensation of the trustee."  The court noted that this exemption had been "held to apply 'even where there is a pre-existing attorney-client relationship.'"  Id at 917 (quoting Walton v Broglio, 52 Cal App 3d 400, 404 (1975)).

Here, after Thelen notified Marland of its intent to withdraw pursuant to the attorney-client agreement with Marland and RoNo, the parties negotiated extensively over many months to reach the December 2002 agreement.  Doc #220, Ex 21-38.  As discussed below, the court finds that Marland, himself an experienced and sophisticated attorney, had the benefit of independent representation and advice from two other experienced and sophisticated attorneys, Chateau and Brunswick.  See infra, section

30

**United States District Court**
For the Northern District of California

IIA6.  Accordingly, under the ruling in <u>Sturdevent</u>, Marland does not and cannot show that the December 2002 agreement was the product of undue influence.  Moreover, as discussed below, the court finds that the December 2002 agreement was a re-negotiated attorney-client agreement, placing it within the exemption to § 16004(c).

Marland cites <u>Severson & Werson v Bollinger</u>, 235 Cal App 3d 1569, 1572 (1991), for the proposition that an attorney cannot seek a rate increase after the fee for engagement has already been established, unless he reserves the right to do so.  Doc #184 at 32.  This misstates the holding in <u>Severson</u> and is otherwise contrary to California law.  <u>Severson</u> provides only that a law firm cannot change its rates unilaterally and without notice.  Id at 1570-72.  Under <u>Sturdevent</u>, Thelen was entitled to re-negotiate its fee agreement with Marland.  See also <u>Vella v Hudgins</u>, 151 Cal App 3d 515, 519 (1984) ("A contingency fee contract may be modified by the parties at any time during the subject litigation.")

Marland last argues that the December 2002 agreement lacked sufficient consideration.

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise.

Cal Civ Code § 1605.  "A written instrument is presumptive evidence of a consideration."  Cal Civ Code § 1614.

Marland claims that Thelen's agreement to release Marland from any claims Thelen might assert against Marland for Marland's

31

United States District Court

For the Northern District of California

destruction of the *contrat de portage* was inadequate consideration because, according to Marland, Thelen knew from June 1999 onward that Marland was not going to produce the document.  Doc #184 at 27. Specifically, Marland faxed a letter to his French and American counsel on May 19, 1999 stating:

> I do not detain – and have not detained – documents other than those which have already been handed over to you, and which might be of interest in the frame of the American proceedings related to the above captioned matter.  Any other interpretations will be wrongful and will call for an action which I will ask you to proceed with.

Doc #186, volume 2, Ex 14.

Again, Marland misses the focus of his burden to show a dispute of material fact.  At most Marland shows a dispute over whether his failure to produce the *contrat de portage* placed him in breach of any agreement with Thelen.  The issue here, however, is whether Thelen released Marland from liability for any such breach as consideration for the December 2002 agreement.  Granted, such consideration would have no value if Marland is correct that Thelen never actually believed that Marland had a duty to maintain the document.  Thelen does not, however, have to show that the destruction of the document constituted a breach.  Rather, Thelen has to show that it honestly believed that the destruction *could* constitute a breach, exposing Marland to potential liability under the prior agreements, which Thelen could later waive to effect consideration for a new agreement.

> The compromise or release of a doubtful or disputed claim, which is not wholly void, is good consideration for a unilateral contract * * * and it is likewise sufficient for a bilateral contract. * * * The compromise or release of a claim wholly invalid, or valid but worthless, is not sufficient consideration. * * *

United States District Court
For the Northern District of California

this line truly made me want to throw up, these are the people who brought you the Vichy Gvt)." Doc #186, Ex 77. While a tasteless remark about its own client, the court does not see how Thelen's slur evidences a contract for a business transaction, and Marland affords no explanation. Marland next points to a February 2002 memo, wherein Fontana wrote that Marland "complained bitterly that we were treating him as a 'business partner' rather than as a client of the firm." Doc #186, Ex 80, n3. Marland's statement, however, is not evidence and fails to show that Thelen actually *was* treating him as a "business partner" let alone to show that the agreement was one for a business transaction. FRE 801. Finally, Marland points to Fontana's deposition testimony in this action. Doc #184 at 19. As stated above, the court will not consider after-the-fact testimony on the parties' intent where California law requires evidence of intent *manifested at the time of contracting*. In any event, Marland misrepresents the cited testimony. Doc #224 at 19.

In sum, Marland's "extrinsic evidence" fails to establish an ambiguity. Marland points to no language in the contract "reasonably susceptible" to his business transaction interpretation, and the court finds none on its own.

The court finds, based on the clear language of the agreement, that it is not a contract for a business transaction but rather a re-negotiated retention agreement and a settlement agreement. Regarding the first interpretation, the contract states:

> Whereas TR&P also desires to re-negotiate the fee splitting terms under the Original Agreement [referring to the February 1999 Attorney Client Agreement], for

43

> various reasons that were discussed among the parties during the preceding months.  Doc # 175, Ex T at 1.
>
> TR&P and Marland agree that their previously terminated Attorney Client Agreement shall be deemed to be re-instated and immediately superseded by this Agreement except that TR&P shall resume its role as general counsel to RoNo as provided in the September 18, 2001 Amendment to the Attorney Client Agreement.  Doc # 175, Ex T at B.2(g)(iv).

"Rule 3-300 is not intended to apply to the agreement by which the member is retained by the client, unless the agreement confers on the member an ownership, possessory, security, or other pecuniary interest adverse to the client.  Such an agreement is governed, in part, by rule 4-200."  Cal R Prof Conduct 3-300, Discussion.  The court finds nothing in the agreement that confers on Thelen a pecuniary interest adverse to Marland.  Rather, the agreement establishes a 35/65 split of legal fees paid by CDOI to Thelen.  Marland can point the court to no terms in the agreement establishing a business relationship or suggesting an adverse interest, and the court can find none on its own.

In addition to being a retention contract, the court also interprets the December 2002 agreement as a settlement agreement based on the mutual release language copied above [see section I].  As such, Thelen correctly points out that the contract is governed by Cal R Prof Conduct 3-400:

> A member shall not:
>
> (A) Contract with a client prospectively limiting the member's liability to the client for the member's professional malpractice; or
>
> (B) Settle a claim or potential claim for the member's liability to the client for the member's professional malpractice, unless the client is informed in writing

United States District Court
For the Northern District of California

1

2

> that the client may seek the advice of an independent
> lawyer of the client's choice regarding the settlement
> and is given a reasonable opportunity to seek that
> advice.

3

Cal R Prof Conduct 3-400.

4

5      Marland cites no authorities, and the court knows of

6 none, in which Rule 3-300 was applied to a contingency agreement, a

7 fee-splitting agreement or a settlement agreement.  Accordingly,

8 the court agrees with Thelen and finds that Rule 3-300 does not

9 apply.

10                                4

11      Finally, Marland argues that the December 2002 agreement

12 was induced by fraud.  Doc #226 at 9-11.  Marland's evidence is

13 again problematic.

14      To show that he has a triable fraud claim, Marland must

15 point to facts that show that (1) Thelen made a material

16 misrepresentation of fact, (2) with knowledge or belief of its

17 falsity, (3) with the intent to defraud, and (4) Marland actually

18 and justifiably relied on the misrepresentation.  <u>Engalla v</u>

19 <u>Permanente Medical Group</u>, Inc, 15 Cal 4th 951, 974 (1997); <u>Mirkin v</u>

20 <u>Wasserman</u>, 5 Cal 4th 1082 (1993).  Marland identifies four

21 purported "misrepresentations" that he claims were the "main

22 arguments Thelen made in support of its demand for a better deal."

23 Doc #226 at 9:

24      First, according to Marland's opposition brief, "Thelen's

25 main accusation was that the DOI had retained Thelen and agreed to

26 compensate Marland based on their [Thelen and Marland's]

27 representation that Marland had a copy of the portage that DOI did

28 not have and that Marland would produce the document if needed or

United States District Court

For the Northern District of California

consult with independent counsel and did so.  Brunswick and Chateau provided Marland with legal advice over a six-month period.  See evidence cited in Doc #223 at footnotes 111-118.  California courts have upheld as valid settlement agreements between attorneys and clients where the client waived and released all known and unknown claims.  <u>Winet v Price</u>, 4 Cal App 4th 1159 (1992).

Finally, as detailed above, charges and counter-charges of bad faith were made by both sides, and terms were drafted, edited and re-written.  In the end, Thelen and Marland compromised their positions and resolved their claims through the December 2002 agreement.  Marland does not dispute that this is a "lawful object."  See Restatement of Contracts (Second) § 74; <u>Winet v Price</u>, 4 Cal App 4th 1159 (1992).

* * *

For all the above reasons, Thelen's motion for summary judgment on its first claim for declaratory relief that the December 2002 agreement is valid is GRANTED.

B

The court next addresses the parties' respective motions on the counterclaims and counter-counterclaims.

1

*Marland's Second & Third Counterclaims*

In his second counterclaim, Marland seeks damages for Thelen's alleged breach of the June 1999 fee-sharing agreement. Doc #72 at 45-47.  In his third counterclaim, Marland seeks damages for Thelen's alleged "bad faith denial" of the existence of the

53

February 1999 and June 1999 agreements.  Id at 47-48.  As discussed above, the December 2002 agreement replaced "any and all other agreements" between the parties, and the court has found that the December 2002 agreement is valid and enforceable as a matter of law.  Moreover, California does not recognize the tort of bad faith denial of contract.  Freeman & Mills, Inc v Belcher Oil Co, 11 Cal 4th 85 (1995).  Accordingly, Thelen's motion for summary judgment on Marland's second and third counterclaims is GRANTED.  Marland's motion for summary judgment on his second counterclaim is DENIED.

**2**

### *Marland's First, Fourth & Fifth Counterclaims*

In his first, fourth and fifth counterclaims, Marland seeks damages for breach of fiduciary duty, fraud and legal malpractice, respectively.  Doc #72 at 41-51.  Thelen argues that Marland's first and fifth counterclaims are barred by the applicable one-year statute of limitations under Cal CCP § 340.6.  Doc #144.

The court need not reach Thelen's statute of limitations argument.  To the extent Marland's first, fourth and fifth counterclaims allege conduct occurring prior to the execution of the December 2002 agreement, they are barred by the mutual release provision of that agreement.  At the summary judgment hearing, counsel for Thelen pointed out that Thelen's statute of limitations motion was brought in part because these counterclaims include allegations of conduct post-dating the December 2002 agreement.But these allegations do not suffice to withstand summary judgment once the December 2002 agreement has been held valid.  Marland's first, fourth and fifth counterclaims rest on 48 numbered allegations,

54

**United States District Court**
For the Northern District of California

beginning at page 29 of his revised amended answer and
counterclaims.  Doc #72.  Of these, only paragraphs 3(c), 16 and
41-46 allege conduct post-dating December 2002.  Paragraph 3(c) and
paragraphs 41-46 deal with Thelen's alleged failure to obtain
CDOI's consent to the "entire agreement" discussed at length in
IIA1a.  Paragraph 16 fails to allege a misrepresentation
independent of the December 2002 agreement.  Having found that
agreement valid, Marland's first, fourth and fifth counterclaims
fail.

Accordingly, Thelen's motion for summary judgment on
Marland's first, fourth and fifth counterclaims is GRANTED.

3

*Thelen's Counter-Counterclaims*

Thelen's counter-counterclaims are contingent on the
court finding that the December 2002 is not valid and enforceable.
Doc #164-1 at ¶¶45, 52.  Accordingly, Marland's motion for summary
judgment on Thelen's counter-counterclaims is MOOT and DENIED.
Finally, and for the same reasons, Susannah Maas's motion to
dismiss Thelen's counter-counterclaims, Doc #171, is MOOT and
DENIED.  Philippe Brunswick and Susannah Maas are no longer parties
to this action.


III

The court next addresses Thelen's motion for preliminary
or permanent injunction of the New York arbitration.  Equitable
remedies, including permanent injunction and specific performance,
are "designed to enforce substantive law rights."  <u>Sullivan By and
Through Sullivan v Vallejo City Unified School Dist</u>, 731 F Supp

947, 956 (ED Cal 1990) (citation omitted ).  "[A]s a general rule, when forum state law defines the underlying substantive right, state law also governs the availability of such equitable remedies as a permanent injunction, specific performance * * *" Charles Alan Wright, et al, 19 Federal Practice and Procedure § 4513 at 447 (1996).  Accordingly, California law determines Thelen's right to permanent injunctive relief.

"A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a defendant and that equitable relief is appropriate." Syngenta Crop Protection, Inc v Helliker, 138 Cal App 4th 1135, 1166-67 (2006).  Cal Civil Code § 3422 states that a court may grant a permanent injunction "to prevent the breach of an obligation existing in favor of the applicant: (1) Where pecuniary compensation would not afford adequate relief; (2) Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; (3) Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or (4) Where the obligation arises from a trust."

It is clear from the above discussion that the parties have litigated their claims here to final resolution.  Indeed, this order eliminates those claims.  This resolution binds the parties on the litigated claims and moots the necessity of injunctive relief.  To the extent there remain other claims not here litigated, those claims may be arbitrated or litigated elsewhere. Injunctive relief is not required here.  Accordingly, Thelen's motion for a permanent injunction barring Marland from proceeding with the New York arbitration is DENIED AS MOOT.

United States District Court

For the Northern District of California

1

IV

2        For the reasons given above, Thelen's motion for summary

3    judgment on its first claim for declaratory relief that the

4    December 2002 agreement is valid is GRANTED.  Thelen's motion for

5    summary judgment on Marland's second and third counterclaims is

6    GRANTED.  Thelen's motion for summary judgment on Marland's first,

7    fourth, and fifth counterclaims is GRANTED.  Thelen's motion for

8    summary judgment on Marland's fifth affirmative defense is GRANTED.

9    Thelen's motion for permanent injunction of the New York

10   arbitration is DENIED AS MOOT.  Marland's motion for summary

11   judgment on Marland's affirmative defenses is DENIED.  Marland's

12   motion for summary judgment on Marland's second counterclaim is

13   DENIED.  Marland's motion for summary judgment on Thelen's

14   affirmative defenses to count two of Marland's counterclaim is

15   DENIED AS MOOT.  Marland's motion for summary judgment on Thelen's

16   counter-counterclaims is DENIED AS MOOT.  Susannah Maas's motion to

17   dismiss Thelen's counter-counterclaims is DENIED AS MOOT.

18       The trial, currently scheduled to commence on August 6,

19   2007, is VACATED.  The clerk is DIRECTED to close the file and

20   terminate all motions.

21

22       SO ORDERED.

23

24

25   _____

26   VAUGHN R WALKER

27   United States District Chief Judge

28

# EXHIBIT

# 10

1  DONALD W. CARLSON [Bar No.: 79258] dcarlson@ccplaw.com
   GUY D. CALLADINE [Bar No.: 99431] gcalladine@ccplaw.com
2  CARLSON, CALLADINE & PETERSON LLP
   353 Sacramento Street, 16th Floor
3  San Francisco, California 94111
   Telephone:    (415) 391-3911
4  Facsimile:    (415) 391-3898

5  ANDREW W. HAYES (pro hac vice)
   HAYES & HARDY LLP
6  1 Rockefeller Plaza, Suite 1005
   New York, New York  10020
7  Telephone:    (212) 554-3120
   Facsimile:    (212) 554-3121

8
   Attorneys for Defendant,
9  Counterclaim-Plaintiff and
   Counter-Counter Defendant
10 FRANÇOIS MARLAND

ORIGINAL
FILED

AUG 2 3 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

11

12                    UNITED STATES DISTRICT COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 THELEN REID BROWN RAYSMAN &            )  CASE NO.:    C-06-02071 VRW
   STEINER LLP, fka THELEN REID &         )
16 PRIEST LLP,                            )  **NOTICE OF APPEAL**
                                          )
17      Plaintiff and Counterclaim-Defendant,  )  **Judge:  Vaughn R. Walker**
                                          )
18      vs.                               )
                                          )
19 FRANÇOIS MARLAND,                      )
                                          )
20      Defendant and Counterclaim-Plaintiff  )
                                          )
21 _____      )
                                          )
22 THELEN REID BROWN RAYSMAN &            )
   STEINER LLP, fka THELEN REID &         )
23 PRIEST LLP,                            )
                                          )
24      Counter-Counterclaimant,          )
                                          )
25      vs.                               )
                                          )
26 FRANÇOIS MARLAND, PHILIPPE             )
   BRUNSWICK and SUSANNAH MAAS,           )
27                                        )
        Counter-Counter Defendants.       )
28                                        )

---

**NOTICE OF APPEAL**

**CASE NO.: C-06-02071 VRW**

1

2      Notice is hereby given that François Marland, defendant, counterclaimant and counter-

3   counterdefendant in the above named case ("Marland"), hereby appeals to the United States Court

4   of Appeals for the Ninth Circuit from the District Court's Order dated August 1, 2007, and the

5   Judgment dated August 3, 2007, in so far as that Order and Judgment (1) granted plaintiff,

6   counterdefendant and counter-counterclaimant Thelen Reid Brown Raysman & Steiner LLP's

7   ("Thelen") motion for summary judgment as to Thelen's first claim for declaratory relief; (2)

8   granted Thelen's motion for summary judgment as to Marland's first, second, fourth and fifth

9   counterclaims; (3) granted Thelen's motion for summary judgment as to Marland's fifth

10  affirmative defense; (4) denied Marland's motion for summary judgment as to Marland's second

11  counterclaim; denied Marland's motion for summary judgment as to Marland's first, third and six

12  through ninth affirmative defenses; (5) denied Marland's motion to dismiss Thelen's counter-

13  counterclaims as untimely and improperly pled, rather than as moot; (6) denied Marland's motion

14  to compel Thelen to pay over $612,500 Thelen admitted it owed to Marland since the summer of

15  2006; and (7) dismissed Marland's other claims, including claims for against which Thelen had

16  not moved for relief.

17      True and correct copies of the Order and Judgment appealed from are attached hereto at

18  Exhibit A and B, respectively.

19      A service list containing names and addresses of all counsel to be served is attached hereto

20  as Exhibit C.

21  Dated: August 21, 2007

22                                          CARLSON, CALLADINE & PETERSON
                                            LLP and
23                                          HAYES & HARDY LLP

24
                                            By: *Andrew W. Hayes*
25                                          ANDREW W. HAYES

26                                          Attorneys for Defendant, Counterclaim-
                                            Plaintiff and counter-counterdefendant
27                                          FRANÇOIS MARLAND

28

CARLSON CALLADINE & PETERSON LLP
355 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

2



**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**
**CIVIL APPEALS DOCKETING STATEMENT**

USCA DOCKET # (IF KNOWN)

PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY.

| TITLE IN FULL:<br>**SEE RIDER ATTACHED HERETO** | DISTRICT: N. Dist. of CA   JUDGE: Hon. Vaughn R. Walker |
|---|---|
| | DISTRICT COURT NUMBER: C-06-02071 VRW |
| | DATE NOTICE OF APPEAL FILED: ~~Filed simultaneously Herewith~~   IS THIS A CROSS-APPEAL? ☐ YES |
| | IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY): |

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:**
 **SEE RIDER ATTACHED HERETO**

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**
 **SEE RIDER ATTACHED HERETO**

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POSTJUDGMENT MOTIONS):**
 **SEE RIDER ATTACHED HERETO**

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ Possibility of settlement

☐ Likelihood that intervening precedent will control outcome of appeal

☒ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters (Specify) <u>district Court denied request to enjoin pending arbitration</u>

☐ Any other information relevant to the inclusion of this case in the Mediation Program _____

_____

                                                                          ☐

Possibility parties would stipulate to binding award by Appellate Commissioner in lieu of submission to judges

**LOWER COURT INFORMATION**

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |

**JURISDICTION**

**FEDERAL**

☐ FEDERAL QUESTION

☒ DIVERSITY

☐ OTHER (SPECIFY):

**APPELLATE**

☒ FINAL DECISION OF DISTRICT COURT

☐ INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT

☐ INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY):

☐ OTHER (SPECIFY):

**DISTRICT COURT DISPOSITION**

**TYPE OF JUDGMENT/ORDER APPEALED**

☐ DEFAULT JUDGMENT

☐ DISMISSAL/JURISDICTION

☐ DISMISSAL/MERITS

☒ SUMMARY JUDGMENT

☐ JUDGMENT/COURT DECISION

☐ JUDGMENT/JURY VERDICT

☐ DECLARATORY JUDGMENT

☐ JUDGMENT AS A MATTER OF LAW

☐ OTHER (SPECIFY):

**RELIEF**

☒ DAMAGES:

SOUGHT $ _____
AWARDED $ **SEE RIDER**

☒ INJUNCTIONS: **ATTACHED**

☐ PRELIMINARY

☒ PERMANENT **HERETO**

☐ GRANTED

☒ DENIED

☐ ATTORNEY FEES:

SOUGHT $ _____
AWARDED $ _____

☐ PENDING

☐ COSTS: $ _____

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. COPIES OF ORDER/JUDGMENT APPEALED FROM ARE ATTACHED.

2. A CURRENT SERVICE LIST OR REPRESENTATION STATEMENT WITH TELEPHONE AND FAX NUMBERS IS ATTACHED (SEE 9TH CIR. RULE 3-2).

3. A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SERVED IN COMPLIANCE WITH FRAP 25.

4. I UNDERSTAND THAT FAILURE TO COMPLY WITH THESE FILING REQUIREMENTS MAY RESULT IN SANCTIONS. INCLUDING DISMISSAL OF THIS APPEAL.

_Andrew W. Hayes_
Signature

August 21, 2007
Date

## COUNSEL WHO COMPLETED THIS FORM

NAME: Andrew W. Hayes

FIRM: Hayes & Hardy LLP

ADDRESS: 1 Rockefeller Plaza, Suite 1005
New York, New York 10020

E-MAIL: ahayes@hayes-hardy.com

TELEPHONE: (212) 554-3120

FAX: (212) 554-3121

**✱THIS DOCUMENT SHOULD BE FILED IN THE DISTRICT COURT WITH THE NOTICE OF APPEAL✱**
**✱IF FILED LATE, IT SHOULD BE FILED DIRECTLY WITH THE U.S. COURT OF APPEALS✱**

# RIDER TO UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT CIVIL APPEALS DOCKETING STATEMENT

## 1. TITLE IN FULL:

THELEN REID BROWN RAYSMAN &
STEINER LLP, fka THELEN REID &
PRIEST LLP,

      Plaintiff and Counterclaim-Defendant,

      vs.

FRANÇOIS MARLAND,

      Defendant and Counterclaim-Plaintiff

THELEN REID BROWN RAYSMAN &
STEINER LLP, fka THELEN REID &
PRIEST LLP,

      Counter-Counterclaimant,

      vs.

FRANÇOIS MARLAND, PHILIPPE
BRUNSWICK and SUSANNAH MAAS,

      Counter-Counter Defendants.

## 2. BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:

Thelen brought this action in March 2006 to enjoin an arbitration filed by its former client, Marland, in February 2006. Marland's arbitration demand sought (1) enforcement of a June 1999 fee-sharing agreement, entered into when Thelen persuaded Marland to abandon the *qui tam* action Thelen had filed on his behalf (arising out of the acquisition of Executive Life Insurance Co. by Credit Lyonnais and others in the early 1990s), which provided for Thelen to pay Marland 52.5% of any fee Thelen received from the California Department of Insurance (the "DOI", which had retained Thelen to pursue the same claims); and (2) forfeiture of the balance of Thelen's fee, based on Thelen's ethical breaches, including its appearance in late 2005 to Marland's request for reimbursement of fees and expenses in connection with the settlement of the *qui tam* action, on the theory that Thelen knowingly violated a fundamental rule of professional conduct to curry favor with its new client, the DOI.

Thelen sought a declaratory judgment that the June 1999 fee-sharing agreement was superceded by a December 2002 amendment, which (a) reduced Marland's share of Thelen's fees from 52.5% to 35%, and (b) contained a release of all claims, known or unknown, Marland had against his then-counsel Thelen.

Marland asserted the claims in his notice of arbitration as counterclaims in the district court.  Thelen moved to dismiss.  In September 2006, the district court denied Thelen's motion to dismiss.  Noting Marland's statement that he was prepared to litigate his claims in whichever forum (arbitration or court) offered a prompt resolution, and finding that Marland's counterclaims included matters occurring *after* the 2002 amendment and release, the court held that "dismissal would bring hardship to Marland by denying an opportunity to litigate his counterclaims in the forum of his choice."  Order denying Thelen's motion to dismiss, September 12, 2006, Docket Item No. 34 at 7:17-7:20.

In late September 2006, Thelen asserted conditional "counter-counterclaims", seeking to recover what it had paid to Marland pursuant to the amended fee-sharing agreement if Marland prevailed on his counterclaims (i.e., if the 2002 amendment was unenforceable because it was unethical or the product of fraud, Thelen would seek to recover what it had already paid to Marland).  Thelen also withheld over $600,000 in fees that it owed to Marland under even the reduced sharing ratio of the 2002 amendment.

In January 2007, the court set trial for June 2007, which was adjourned at Thelen's request to August 6, 2007.

In March 2007 Thelen moved for partial summary judgment based on the statute of limitations, seeking dismissal of claims predating Thelen's late-2005 opposition to Marland in the same matter in which it had represented him, and later moved for partial summary judgment to enforce the 2002 amendment and release.  Thelen did not seek to dismiss Marland's claims relating to its late-2005 appearance in opposition to Marland.  Those motions, and Marland's motion for partial summary judgment that the 2002 amendment was void and unenforceable, were argued on May 10, 2007.

On August 1, 2007, the district court entered an order disposing of all pending motions, denying Thelen's request for an injunction and awarding no damages, vacating the August 6 trial date, and closing the case.  The district court held as a matter of law that Rule 3-300 of the California Rules of Professional Conduct and Section 16004 of the California Probate Code did *not* apply to Thelen's conduct in withdrawing from its initial attorney-client agreement with Marland for the purpose of negotiating a new, more favorable agreement.  The district court also held that Thelen had complied with Rule 3-400 of the Rules of Professional Conduct in negotiating the 2002 release, notwithstanding that Thelen knew the two others lawyers on whom Marland was relying in 2002 each had an interest in Thelen's fee – one as a former Thelen partner who had a specific agreement to share in the fee, and the other as "associated counsel" with Thelen.

Although Thelen had not pled that the amended agreement was fair (a point raised in Marland's summary judgment motion), the district court also held that Thelen had met its burden of proving that the new agreement was not the product of undue influence.

The district court held that there was sufficient new consideration for the 2002 amendment because Thelen reasonably believed that it *might* have a basis to claim that Marland had failed to provide the cooperation required under the June 1999 agreement by not producing certain documents he had in Europe, notwithstanding Marland's evidence that Thelen partners had told him, in writing in May 1999, that he would not have to produce any documents he did not want to produce.

The district court also found that Marland's evidence that the 2002 amendment was induced by fraud was insufficient to warrant a trail.  In particular, the court held that

one key alleged fraudulent statement, made by the Thelen partner who was negotiating the 2002 agreement, was not actionable because that partner believed that what he was saying was true, even though Thelen had admitted in an interrogatory response that it never believed what the partner said was true.  The district court dismissed the balance of Marland's evidence of fraud by noting that Marland had not read the 2002 agreement (Marland is not fluent in English) and had relied on his French counsel (who was associated with Thelen) to negotiate it – although the evidence was undisputed that Marland relied on his French counsel to negotiate the agreement, and the allegedly fraudulent statements were made to that counsel.

Finally, the district court also held that Marland's claims relating to events after 2002 could not withstand summary judgment that the 2002 agreement was enforceable – even though Thelen had conceded at oral argument that its motions, even if granted in full, would not dispose of all of Marland's claims.  However, the court noted that there might be events not in the pleadings that post-dated 2002 agreement – an apparent reference to Thelen's withholding over $600,000 in fees owed to Marland, at least – and denied Thelen's request for an injunction of Marland's arbitration.

## 3. PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:

1. The district court erred as a matter of law in holding that Rule 3-300 of the Rules of Professional Conduct, and Section 16004 of the California Probate Code, did not apply to Thelen's conduct in withdrawing from its initial attorney-client agreement with Marland for the purpose of negotiating a new, more favorable agreement.  Had the court correctly applied Rule 3-300 and Section 16004, Marland would be entitled to summary judgment in his favor, inasmuch as Thelen did not plead or offer proof that its conduct complied with California ethical and fiduciary rules regarding renegotiated fee agreements.

2. The district court erred as a matter of law in holding that Thelen complied with Rule 3-400 of the Rules of Professional Conduct in negotiating the 2002 release.  Had the court correctly applied Rule 3-400, Marland would be entitled to summary judgment in his favor based on the undisputed facts in the record.

3. The district court erred as a matter of law in (a) dismissing Marland's affirmative defenses to enforcement of the 2002 amendment, including his defense that the amendment was procured by fraud, (b) first, second, fourth, and fifth counterclaims, each of which were supported by ample evidence that at least raised genuine issues of material fact regarding those affirmative claims and defenses, and (c) denying Marland's motion for summary judgment on his second counterclaim, for breach of contract, which was also proven from the undisputed facts in the record.

4. The district court erred as a mater of law, and ignored the law of the case, in dismissing Marland's claims seeking forfeiture of Thelen's fees for ongoing and material breaches of fiduciary duty, culminating in (but not limited to) Thelen's late-2005

appearance in opposition to his request for reimbursement of fees and expenses in the *qui tam* action, which was a matter of record.

     5.  The district court erred as a matter of law in denying Marland's motion to dismiss Thelen's counter-counterclaims as moot, instead of dismissing them as untimely and improperly pled, and that portion of his motion seeking an order that Thelen to pay the over $600,000 in fees that Thelen owed Marland under even the reduced fee-sharing ratio of the 2002 amendment, plus the fees and costs Marland incurred in litigating that claim.

**4. PLEASE IDENTIFY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POSTJUDGMENT MOTIONS):**

     <u>François Marland and RoNo LLC vs. Thelen Reid and Priest LLP</u>, 50 180T 00082 06 (International Center for Dispute Resolution – arbitration)

**5. DISTRICT COURT DISPOSITION**
**RELIEF**
**DAMAGES:**
     None awarded.
     A.     Money retained during action by plaintiff, counterdefendant and counter-counterclaimant Thelen Reid Brown Raysman & Steiner LLP ("Thelen") which is agreed to be due and owing to François Marland, defendant, counterclaimant and counter-counterdefendant ("Marland").
     **SOUGHT:**    **$ 612,500**
     **AWARDED: $ 0**
     B.     The difference between the fees payable to Marland under the "June 1999 Agreement" and the fees payable under the "December 2002 Agreement".
     **SOUGHT:**    **over $10,000,000, with the precise amount to be determined at trial and pending resolution of litigation from which Thelen is entitled to recover fees.**
     **AWARDED: $ 0**
     C.     Marland's claims for damages and for forfeiture of Thelen's fees beyond the amounts due to Thelen under the "June 1999 Agreement".
     **SOUGHT:**    **over $25,000,000, with the precise amount to be determined at trial and pending resolution of litigation from which Thelen is entitled to recover fees.**
     **AWARDED: $ 0**

**INJUNCTION:**
     Plaintiffs Thelen sought to enjoin a pending arbitration in New York, filed by Marland in February 2006.  This request was denied.

# EXHIBIT

# 11

## Andrew W. Hayes

| | |
|---|---|
| **From:** | Wendy Thurm [WThurm@KVN.com] |
| **Sent:** | Thursday, September 27, 2007 7:02 PM |
| **To:** | Andrew W. Hayes |
| **Subject:** | RE: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06) |

Andrew,

Thelen will pay the $150 abeyance fee to maintain the matter on ICDR's suspense calendar, pending resolution of Marland's appeal to the Ninth Circuit.

Wendy

---

**From:** Andrew W. Hayes [mailto:ahayes@hayes-maloney.com]
**Sent:** Thursday, September 27, 2007 10:40 AM
**To:** Wendy Thurm
**Subject:** FW: Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)
**Importance:** High

Wendy,

I assume Mr. Alberti's message below correctly sets forth Thelen's position regarding the arbitration. If I am mistaken, please let me know promptly.

Best,

Andrew

Andrew W. Hayes
Hayes & Maloney LLP
1 Rockefeller Plaza, Suite 1005
New York, N.Y. 10020-2003
Tel 212-554-3125
Fax 212-554-3121
Cell 917-770-0180

---

This message is intended only for the person or entity to whom it is addressed and may contain confidential or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited and may violate applicable ethical rules. If you received this transmission in error, please contact the sender by reply e-mail or by telephone (212-554-3125) and delete and destroy all copies of the material, including all copies stored in the recipient's computer, printed or saved to disk.

Hayes & Maloney LLP is not providing any advice with respect to any tax issue in connection with this matter.

**From:** Christian Alberti [mailto:Albertic@adr.org]
**Sent:** Wednesday, September 19, 2007 7:24 PM
**To:** Andrew W. Hayes; Andrew W. Hayes
**Subject:** Francois Marland and RoNo LLC vs Thelen Reid & Priest (ICDR Case 50 180 T 00082 06)
**Importance:** High

Dear Mr. Hayes,

As discussed with a colleague in your office yesterday, we have been informed by Respondent that Respondent is not willing to pay its share of the abeyance fee in the amount of $150.00. We, therefore, have billed opposing party's share to Claimant and have attached the most current and up-to-date invoice/statement. Please be so kind to process said invoice and remit payment of **$300.00** by no later than **October 4, 2007** if you wish to keep this matter further in abeyance.

### If payment is not received by October 4, 2007, the ICDR will mark this matter as withdrawn and close its file.

Please do not hesitate to contact me via phone or e-mail should you have any questions or concerns.

Sincerely,

Christian P. Alberti, LL.M.
Attorney-at-Law, Germany

ICDR Solutions Manager
International Centre for Dispute Resolution®
A Division of the American Arbitration Association
1633 Broadway, 10th Fl., New York, NY 10019
Phone: +01 212.484.4037
Fax: +01 212.246.7274
e-Mail: AlbertiC@adr.org
http://www.icdr.org

**Remember to Register for:**
**The ICDR's North American Dispute Resolution Series**
**ADR after NAFTA**
Focus Areas: Technology, Dispute Resolution Boards, Mediation
***Toronto, Canada***
**Friday, September 28, 2007**
To register visit: http://www.adr.org/OnlineRegistrations.asp
or contact Noelia Martinez at +01 212.716.3977 or by e-mail at AAAUniversity@adr.org.

This e-mail transmission is intended only for the use of the person or persons to whom it is addressed. It may contain information that is confidential, privileged or otherwise exempt from disclosure. If you are not the intended recipient you are hereby notified that any dissemination of this e-mail is prohibited. If you have received this e-mail in error please notify the sender by return e-mail and then delete it immediately.

-----Original Message-----
**From:** Christian Alberti
**Sent:** Tuesday, June 26, 2007 9:59 AM
**To:** 'ahayes@andrewhayes.net'
**Subject:** Document for Case: 50 180 T 00082 06

http://www.adr.org

1633 Broadway, 10th Floor, New York, NY 10019
telephone: 212-484-4181 facsimile: 212-246-7274
http://www.adr.org

| | |
|---|---|
| DATE | 06/26/2007 9:59:18 AM |
| TO | Andrew W. Hayes |
| COMPANY | Hayes & Hardy LLP |
| EMAIL | ahayes@andrewhayes.net |
| FROM | Christian Alberti |
| NUMBER OF ATTACHMENTS | 1 |
| RE | Case number: 50 180 T 00082 06<br>Please see the attached documents in connection with the above referenced case. |
| RECIPIENTS | Andrew W. Hayes |

NOTES:

THIS EMAIL TRANSMISSION IS INTENDED ONLY FOR THE USE OF THE PERSON TO WHOM IT IS ADDRESSED. IT MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL, PRIVILEGED OR OTHERWISE EXEMPT FROM DISCLOSURE. IF YOU ARE NOT THE INTENDED RECIPIENT OR THE PERSON AUTHORIZED TO DELIVER THIS EMAIL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OF THIS EMAIL IS PROHIBITED. IF YOU HAVE RECEIVED THIS EMAIL IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY REPLYING TO THIS MESSAGE AND DELETING ITS CONTENTS FROM YOUR INBOX

# EXHIBIT

# 12

# HAYES & MALONEY LLP

1 ROCKEFELLER PLAZA, SUITE 1005
NEW YORK, NEW YORK 10020
VOICE: (212) 554-3120
FAX: (212) 554-3121

October 15, 2007

**Via E-Mail**
Christian Paul Alberti, Esq.
International Case Manager
International Centre for Dispute Resolution
1633 Broadway, 10th Fl., New York, NY 10019

### Francois Marland and RoNo LLC vs Thelen Reid & Priest
### ICDR Case No. 50 180 T 00082 06

Dear Mr. Alberti,

Pursuant to your request of October 9, the following points summarize Petitioners' position regarding their right to resume arbitral proceedings in this matter.

1. As you noted during our call last week, absent an actual order enjoining the arbitration, it must proceed. At the outset of our call Thelen claimed that the San Francisco court had actually barred Marland from proceeding with the arbitration (without mentioning that RoNo is also a party petitioner), but by the end of the call appeared to concede that there was no such injunction, and instead promised to seek such an injunction at some point in the future. (*See* p. 56, lines 26-28 of the San Francisco court's August 1, 2007 order (hereinafter, the "Order."), a copy of which was previously submitted to your attention.) At present, however, Thelen seems to agree that there is no order enjoining the arbitration.

2. In early 2006, the parties agreed to stay this arbitration pending a final order dismissing Thelen's motion to enjoin the arbitration (a copy of that stipulation is submitted herewith). Since Thelen chose not to appeal the dismissal of its request for an injunction (even as a conditional cross-appeal, as would have been proper if it wished to avoid finality and respond to Marland's appeal), that dismissal is now final. Thus, by the terms of the parties' own stipulation, the arbitration should resume.

3. Thelen cannot now invoke the federal court's jurisdiction to enjoin the arbitration. As you will recall from when this action began, Thelen claimed that the arbitration clause petitioners invoked, in the parties' 1999 attorney-client agreement, had been rescinded and superseded by a 2002 fee-sharing agreement that contained no arbitration clause. Thelen repeated that claim in its pleadings in the San Francisco action. Later, however, Thelen changed its position, insisting that the 2002 agreement was actually a reinstated attorney-client agreement that provided for Thelen to resume representing RoNo and Marland pursuant to a September 2001 amendment to the 1999 attorney-client agreement (the reason for this change was Thelen's belated claim that the 2002 agreement was exempt from the ethical restrictions of Rule 3-300 of the California

Christian Paul Alberti, Esq.
October 15, 2004
Page 2

Rules of Professional Conduct because it was an amended attorney-client agreement). The San Francisco court relied on and adopted Thelen's revised position in its decision (*see* Order, p 31, l. 3). Thelen thus cannot now dispute that the arbitration agreement in the 1999 attorney-client agreement, as amended in September 2001, was revived and incorporated by reference in the 2002 agreement on which Thelen relies, and requires Thelen to present its defenses to an arbitrator, not the court.

4. Even if Thelen were to change its position a second time and claim that there is no valid arbitration agreement, it is hornbook law that the existence and validity of the arbitration agreement is a matter for the arbitrator in the first instance, not a court.

5. Thelen's claim that there are no issues left to arbitrate is not true, and Thelen knows that it is not true. There are two actual, pending disputes to be adjudicated: payment of funds Thelen owes to Marland and his European Counsel, which were not included in the parties' pleadings in San Francisco, and claims relating to Thelen's breach of its fiduciary duties to RoNo in late 2005, which were raised in Marland's pleadings but not addressed in Thelen's summary judgment motion, or in the court's Order.

(A) Thelen owes Marland and his European Counsel $612,500.00, plus interest, that was due and payable last summer, pursuant to the very 2002 agreement on which Thelen purported to rely in the San Francisco proceeding. Thelen chose to violate the 2002 agreement and unilaterally withhold those funds, claiming that it intended to assert (and months later, did assert) "conditional counter-counterclaims" against Marland in the San Francisco litigation. The issue of these funds was *not*, however, raised in Marland's pleadings in San Francisco. When Marland raised the issue later, in his motion for summary judgment, Thelen responded by assuring the Court that it would promptly pay over the disputed funds if and when Thelen's "counter-counterclaims" were dismissed.

The court dismissed Thelen's counter-counterclaims, and Thelen chose not to appeal that dismissal (again, not even conditionally, in response to Marland's appeal of the dismissal of his counterclaims). Contrary to Thelen's representations to the court, however, and contrary to its clear contractual obligations to Marland, Thelen has still not paid any of the $612,500.00, nor any interest.

Petitioners are therefore entitled to compel payment of those funds in this arbitration – in fact, they are included within the amounts previously sought in Petitioners' Description of Claims, and the Amended Description of Claims that petitioners will file later this week will make this clear.

(B) Thelen's summary judgment motions to the San Francisco court acknowledged that it was *not* entitled to, and was not seeking, summary judgment on those portions of Marland's counter-claims arising from Thelen's post-2002 conduct, including its late-2005 appearance in opposition to its former client in the underlying litigation (*i.e.* the same action in which Thelen had previously represented Marland).

Christian Paul Alberti, Esq.
October 15, 2004
Page 3

The court's Order dismissing Marland's counterclaims did not mention those portions of Marland counterclaims, which were reflected in paragraphs 121(c), 123-128 and 131-135 of Marland's affirmative defenses (incorporated by reference into paragraph 49 of Marland's counterclaims) and in paragraphs 52(l)-52(o) and 77 of Marland's counterclaims. Instead, in addressing Thelen's statute of limitations argument, the court cited *other* paragraphs of Marland's counterclaims (3(c), 16 and 41-46) regarding matters after the 2002 agreement, and found that *those* allegations were covered by the release contained in the 2002 agreement. The court simply never addressed Marland's affirmative claims for Thelen's post-2002 conduct; instead it stated that claims not disposed of by the August 1, 2007 order "may be arbitrated or litigated elsewhere."

We have no doubt that Thelen will argue that the dismissal of Marland's counterclaims is collateral estoppel regarding his (and RoNo's) post-2002 claims – even though those claims were not actually decided, and Thelen itself admitted to the court that those claims were not covered by the 2002 release. Petitioners disagree (more precisely, petitioners agree with Thelen's position prior to the court's Order).

In any event, however, petitioners are unquestionably entitled to avoid a Catch-22 situation in which the Ninth Circuit may rule at some point in the future that Marland's claims related to Thelen's post-2002 conduct were *not* included in the San Francisco litigation, and thus must be arbitrated, only to have Thelen then argue that those claims were waived by their omission from petitioners' Amended Description of Claims. In short, since petitioners are entitled to a ruling on the merits of these claims from *some* adjudicatory authority, and did not receive such a ruling from the district court, they will include these claims in their Amended Description of Claims.

Finally, regarding the appointment of the arbitrator, we understand Thelen's position to be that either (a) nothing should be done or (b) if anything is to be done, the entire process should start over. Having received no communication from Thelen's counsel since our call last week, the undersigned called Thelen's counsel Mr. Kerr today to try to clarify Thelen's position and see if some compromise was possible, but Mr. Kerr was out of the country and left no instructions with his associate regarding this matter. Since Mr. Kerr has disregarded your urgings to reach out on this issue, and the only consistency to Thelen's position is that there should be indefinite further delay, petitioners have little choice but to urge the ICDR to proceed according to its rules, and appoint an arbitrator from the match on the previously-submitted lists.

Thank you for your attention to this matter. Please do not hesitate to contact me if you require any further information or assistance.

Sincerely,

Andrew W. Hayes

Andrew W. Hayes

Copy with enclosure via e-mail to:
James J. Kerr, Esq.
Karen Abravanel, Esq.

1   KEKER & VAN NEST, LLP
    ROBERT A. VAN NEST - #84065 (rvannest@kvn.com)
2   WENDY J. THURM - #163558 (wthurm@kvn.com)
    STEVEN K. YODA - #237739 (syoda@kvn.com)
3   710 Sansome Street
    San Francisco, CA  94111-1704
4   Telephone:  (415) 391-5400
    Facsimile:  (415) 397-7188
5
    Attorneys for Plaintiff
6   THELEN REID & PRIEST LLP

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  THELEN REID & PRIEST LLP,          Case No. C 06-2071 VRW

12                       Plaintiff,
                                       **STIPULATION AND [~~PROPOSED~~]**
13         v.                          **ORDER**

14  FRANÇOIS MARLAND,

15                       Defendant.

16

17

18

19

20

21

22

23

24

25

26

27

28

372735.01
                          STIPULATION AND [PROPOSED] ORDER

1        WHEREAS Defendant François Marland ("Marland") initiated an arbitration proceeding

2   against Plaintiff Thelen Reid & Priest LLP ("Thelen") in New York ("the New York Arbitration

3   Proceeding") on February 13, 2006;

4        WHEREAS Thelen filed a Complaint for Declaratory and Injunctive Relief against

5   Marland on March 21, 2006;

6        WHEREAS Thelen filed a Motion for Preliminary Injunction on March 24, 2006,

7   seeking, in part, an order from this Court prohibiting Marland from proceeding with the New

8   York Arbitration Proceeding;

9        WHEREAS the hearing on Thelen's Motion for Preliminary Injunction is currently

10  scheduled for June 8, 2008;

11       WHEREAS the deadline for Marland to file an opposition to Thelen's Motion for

12  Preliminary Injunction is May 11, 2006;

13       WHEREAS Marland filed a Motion to Dismiss on May 1, 2006;

14       WHEREAS  Thelen filed a First Amended Complaint on May 3, 2006;

15       WHEREAS Thelen and Marland desire to conduct discovery prior to this Court's

16  resolution of Thelen's Motion for Preliminary Injunction;

17

18       NOW, THEREFORE, Thelen and Marland stipulate and agree as follows:

19

20       1.     The New York Arbitration Proceeding shall be stayed, until such time as this

21  Court enters a final order on Thelen's Motion for Preliminary Injunction;

22       2.     Thelen's Motion for Preliminary Injunction shall be taken off-calendar;

23       3.     Marland shall Answer or move to dismiss Thelen's First Amended Complaint on

24  May 23, 2006;

25       4.     After Marland files his Answer, the parties shall meet and confer regarding (a)

26  the scope of discovery to be completed prior to the date on which Marland shall file his

27  opposition to Thelen's Motion for Preliminary Injunction; and (b) a briefing schedule and new

28  hearing date for Thelen's Motion for Preliminary Injunction.

5.      This Stipulation and every part hereof is entered into in the interests of the reaching an orderly and just resolution of the parties' disputes, without prejudice to any party's position regarding the claims and defenses asserted in this action or in the New York Arbitration Proceeding.  Nothing in this Stipulation shall be deemed to constitute a waiver of any substantive or procedural right, claim, or defense of any party, except for such matters as are expressly set forth herein.

Dated:  May 10, 2006                          KEKER & VAN NEST, LLP


By:  ___/s/ Wendy J. Thurm___
WENDY J. THURM
Attorneys for Plaintiff
THELEN REID & PRIEST LLP


Dated:  May 10, 2006                          CARLSON, CALLADINE & PETERSON LLP


By:  ___/s/ Guy D. Calladine_____
GUY D. CALLADINE
Attorneys for Defendant
FRANÇOIS MARLAND

**IT IS SO ORDERED.**


Dated:__ May 22, 2006 _____            HO_____

IT IS SO ORDERED
Judge Vaughn R Walker

# EXHIBIT

# 13

**Matthew G. Friedman**

| | |
|---|---|
| **From:** | Wendy Thurm [WThurm@KVN.com] |
| **Sent:** | Wednesday, November 07, 2007 1:09 PM |
| **To:** | Andrew W. Hayes; Matthew G. Friedman; Guy Calladine; edonohue@ccplaw.com |
| **Subject:** | Thelen v. Marland -- Notice of Intent to Seek Temporary Restraining Order |

Gentlemen,

Pursuant to Fed. R. Civ. P. 65 and Northern District of California Civil Local Rule 65, I write to inform you that Thelen Reid Brown Raysman & Steiner LLP ("Thelen") intends to seek a Temporary Restraining Order and Preliminary Injunction against your client Francois Marland.  Thelen intends to seek an order enjoining Mr. Marland (through himself and his agents) from pursuing the arbitration he initiated against Thelen with the American Arbitration Association in New York (Arb. No. 50 180 T 00082 06).

Later this morning, Thelen will file a complaint and an *Ex Parte* Application for a TRO and Preliminary Injunction in the Northern District of California.  I will inform the Court that Thelen is available for a hearing at the Court's convenience, and will also provide the Court with your contact information.  Thelen will also serve you electronically with a copy of the TRO/PI and the complaint after they have been filed.

Please let me know if you are authorized to accept service of the complaint on behalf of Mr. Marland.

Please let me know by close of business today whether you will stipulate to a Notice of Related Case, relating this new action to the action entitled *Thelen Reid Brown Raysman & Steiner LLP v. Francois Marland et al*, Case No. C 06-2071 VRW.

Thank you.

Wendy J. Thurm

KEKER & VAN NEST LLP

710 Sansome Street
San Francisco, CA  94111-1704
tel: (415) 391-5400
fax: (415) 397-7188
www.kvn.com

# EXHIBIT

# 14

### SECOND AMENDED DESCRIPTION OF PETITIONERS' CLAIMS

### <u>Preliminary Statement:  Scope of the Arbitration</u>

1.        Petitioners François Marland and RoNo LLC herein seek to enforce their rights

under the February 17, 1999 Attorney-Client Agreement with his former counsel, Thelen Reid &

Priest LLP ("TRP") and to recover damages for TRP's malpractice and breaches of fiduciary

duty towards their clients Marland and his wholly-owned LLC, RoNo, to the extent those rights

and claims were not adjudicated by the United States District Court for the Northern District of

California (referred to herein as the "California Action").  Specifically, Marland and RoNo now

seek to arbitrate the following two claims:

        a.        A claim for $612,500, representing Marland's share of a fee paid to Thelen in

           mid-2006.  This claim was not presented in the parties' pleadings in the California

           Action, nor was it adjudicated by the decision in the California Action.  When

           Marland raised this issue in a motion in the California Action, Thelen responded

           by representing to the Court that it would pay over the funds if and when its

           purported "counter-counterclaims" in the California Action were dismissed.

           Thelen's counter-counterclaims have been dismissed, and that dismissal is now

           final, and yet Thelen still refuses to pay over those funds.

        b.        A claim for forfeiture and disgorgement of the balance of Thelen's fees based

           on Thelen's ethical breach in late 2005, when Thelen appeared in opposition to its

           former client RoNo's interests in the same matter in which Thelen had

           represented RoNo.  Thelen admitted in the California Action that this claim could

           *not* be dismissed before trial, and when the California court dismissed the entire

           action it did not address this claim, except to implicitly find that the claim had not

actually been asserted in Marland's pleadings and thus could be pursued in arbitration.

2.    Thelen has claimed that Marland (and, apparently, RoNo) is somehow barred from proceeding with this arbitration.  Thelen's position is frivolous.  Thelen's request for an injunction of this arbitration was denied by the California Court.  Absent an actual order enjoining the arbitration, it must proceed.  Indeed, Thelen itself recently acknowledged this, writing to the ICDR that it was unable to take a position on whether the arbitration should proceed until after Marland filed this Second Amended Description of Claims.  However, to avoid any uncertainty on the issue, we note the following procedural background.

3.    In early 2006, the parties agreed to stay this arbitration pending a final order dismissing Thelen's motion to enjoin the arbitration (a copy of that stipulation is submitted herewith).  Since Thelen chose not to appeal the dismissal of its request for an injunction (even as a conditional cross-appeal, as would have been proper if it wished to avoid finality and respond to Marland's appeal), that dismissal is now final.  Thus, by the terms of the parties' own stipulation, the arbitration should resume.

4.    Thelen also cannot now invoke the federal court's jurisdiction to enjoin the arbitration, and positions it has taken in the California Action flatly contradict its initial statements on that issue.  When this action began, Thelen claimed that the arbitration clause petitioners invoked, in the parties' 1999 attorney-client agreement, had been rescinded and superseded by a 2002 fee-sharing agreement that contained no arbitration clause.  Thelen repeated that claim in its pleadings in the San Francisco action.  Later, however, Thelen changed its position, insisting that the 2002 agreement was actually a reinstated attorney-client agreement that provided for Thelen to resume representing RoNo and Marland pursuant to a September

2001 amendment to the 1999 attorney-client agreement (the reason for this change was Thelen's belated claim that the 2002 agreement was exempt from the ethical restrictions of Rule 3-300 of the California Rules of Professional Conduct because it was an amended attorney-client agreement). The San Francisco court relied on and adopted Thelen's revised position in its decision. Thelen thus cannot now dispute that the arbitration agreement in the 1999 attorney-client agreement, as amended in September 2001, was revived and incorporated by reference in the 2002 agreement on which Thelen relies, and requires Thelen to present its defenses to an arbitrator, not the court.

5.      Even if Thelen were to change its position a second time and claim that there is no valid arbitration agreement, it is hornbook law that the existence and validity of the arbitration agreement is a matter for the arbitrator in the first instance, not a court.

6.      Thus, as noted above, there are two actual, pending disputes to be adjudicated: payment of funds Thelen owes to Marland and his European Counsel, which were not included in the parties' pleadings in San Francisco, and claims relating to Thelen's breach of its fiduciary duties to RoNo in late 2005, which were raised in Marland's pleadings but not addressed in Thelen's summary judgment motion, or in the court's Order.

7.      Thelen owes Marland and his European Counsel $612,500.00, plus interest, that was due and payable last summer, pursuant to the very 2002 agreement on which Thelen purported to rely in the San Francisco proceeding. Thelen chose to violate the 2002 agreement and unilaterally withhold those funds, claiming that it intended to assert (and months later, did assert) "conditional counter-counterclaims" against Marland in the San Francisco litigation. The issue of these funds was *not*, however, raised in Marland's pleadings in San Francisco. When Marland raised the issue later, in his motion for summary judgment, Thelen responded by

assuring the Court that it would promptly pay over the disputed funds if and when Thelen's "counter-counterclaims" were dismissed.

8.     The court dismissed Thelen's counter-counterclaims, and Thelen chose not to appeal that dismissal (again, not even conditionally, in response to Marland's appeal of the dismissal of his counterclaims).  Contrary to Thelen's representations to the court, however, and contrary to its clear contractual obligations to Marland, Thelen has still not paid any of the $612,500.00, nor any interest.

9.     Petitioners are therefore entitled to compel payment of those funds in this arbitration – in fact, they are included within the amounts previously sought in Petitioners' Description of Claims, and the Amended Description of Claims that petitioners will file later this week will make this clear.  Petitioners are also entitled to their costs and fees in obtaining payment of these funds, including attorneys' fees, and other and further damages, including punitive damages, for Thelen's bad faith conduct and its false representations to the California court.

10.     Thelen's summary judgment motions to the San Francisco court acknowledged that it was *not* entitled to, and was not seeking, summary judgment on those portions of Marland's counter-claims arising from Thelen's post-2002 conduct, including its late-2005 appearance in opposition to its former client in the underlying litigation (*i.e.* the same action in which Thelen had previously represented Marland).

11.     The court's Order dismissing Marland's counterclaims did not mention those portions of Marland counterclaims, which were reflected in paragraphs 121(c), 123-128 and 131-135 of Marland's affirmative defenses (incorporated by reference into paragraph 49 of Marland's counterclaims) and in paragraphs 52(l)-52(o) and 77 of Marland's counterclaims.  Instead, in

addressing Thelen's statute of limitations argument, the court cited *other* paragraphs of Marland's counterclaims (3(c), 16 and 41-46) regarding matters after the 2002 agreement, and found that *those* allegations were covered by the release contained in the 2002 agreement.

12.      The court simply never addressed Marland's affirmative claims for Thelen's post-2002 conduct; instead it stated that claims not disposed of by the August 1, 2007 order "may be arbitrated or litigated elsewhere."  Accordingly, Marland now seeks to arbitrate those claims before the ICDR.

### Background and Claims Previously Asserted

13.      Following are the factual background for Marland's claims, including claims that were initially asserted in this arbitration and then raised in the California Action.  Marland includes these allegations for context regarding the two claims detailed above, and to avoid a claim of wavier in the event that the Ninth Circuit dismisses the California Action for *any* reason (e.g., failure to join RoNo as an indispensable party, for Thelen's fraudulent invocation of the court's jurisdiction by claiming that the 2002 agreement did not incorporate the arbitration clause in the 1999 Attorney-Client Agreement, or any other reason).

14.      In the second half of 1998, Marland (a Frenchman living in Switzerland) met Gary Fontana, the TRP partner who took charge of Marland's representation, regarding a possible whistleblower action involving the use of secret fronting agreements to conceal the interests of banks owned by the French state in the 1991 acquisition of Executive Life, an insolvent California insurance company.  From the inception of this representation, Fontana and TRP gave Marland clearly wrong advice about his options and obligations, failed to protect his information and his interests, and maneuvered to use his information for TRP's own financial benefit, at Marland's expense.

15.     Instead of filing a <u>qui tam</u> action, or taking other action to ensure Marland's treatment as a whistleblower, TRP first sought to have Marland – a  fact witness to the underlying events – paid on a contingent fee as a consultant to one of the parties in interest, with TRP serving as Marland's counsel.

16.     As TRP later wrote, the firm considered itself a "partner" with Marland in seeking to capitalize on his information, based on Fontana's own knowledge of the parties and some of the events at issue in the underlying fraud.  However, TRP was also acting as Marland's counsel (as it later also confirmed in writing).  Thus from the inception of its representation, TRP was "wearing two hats", and failed to make adequate disclosures of its intentions and actions to its client/partner, Marland.

17.     TRP's efforts to profit directly from Marland's information tainted its entire representation of him.  For example, TRP negotiated for months with the California Department of Insurance ("DOI") regarding a potential retainer of Marland <u>and</u> TRP.  TRP told Marland that it was in his interest to have such an agreement, but failed to explore, or advise Marland, of his other options – such as pursuing a whistleblower agreement with the DOI in which the DOI would choose its own counsel, or filing other state or federal *qui tam* actions based on insurance contracts that state and federal agencies had purchased from Executive Life.

18.     TRP also failed to take reasonable steps to ensure the confidentiality of Marland's information when negotiating with the DOI.  As a result, the DOI began its own investigation and obtained information that made Marland's information less valuable.

19.     At the same time, Fontana told Marland (who was very concerned about protecting his anonymity, for fear of reprisal) that he could remain anonymous, and that he would not have to produce any documents he did not want to produce.  Marland told Fontana

that this was important to him, and relied on TRP's advice.  At no time did Fontana or TRP tell

Marland that he had an obligation to preserve or produce evidence he did not want to produce,

nor did TRP explain to Marland that there were ways to produce relevant documents without

being identified as the whistleblower.

20.     In February 1999, when it became clear that the DOI was going to file its own

action based on the investigation that Marland's information had sparked, TRP negotiated an

unconscionable contingent fee agreement with Marland as a *qui tam* whistleblower, under which

TRP would get at least 50% of Marland's recovery (unless the case settled in 1999, in which case

it would get 35%) – *even if* the California Attorney General ("AG") intervened in the *qui tam*

action and TRP did no actual work litigating the case.  This agreement – the February 1999

Attorney-Client Agreement, contains the arbitration clause that is the basis for this proceeding.

21.     TRP then filed a *qui tam* action the same day as the DOI filed its own action –

February 18, 1999, on behalf of RoNo, the entity that it had created to represent Marland's

interests and protect his identity as the whistleblower.  After this filing, TRP continued to use its

representation of Marland and RoNo to secure a second retainer with the DOI.  Marland agreed

to this based on TRP's advice that it was in his interest to do so and on the understanding that

TRP would share its fees from that representation with Marland so that the net result was the

same as if the fees had been recovered in the *qui tam* action.  Fontana and Thelen have

repeatedly acknowledged that this principle was the basis on which TRP was allowed to pursue

the second retainer with the DOI.

22.     Nevertheless, TRP's pursuit of a retainer with the DOI reflected its elevation

of its interests ahead of its client's.  In particular, negotiations regarding cooperation between the

DOI, the AG, and TRP over the two pending actions were complicated by TRP's insistence that

it serve as lead counsel for both the AG (who would then intervene in the *qui tam* action) and the DOI and by TRP's failure to understand how to fully protect Marland's anonymity.

23.    In April 1999, TRP told Marland that it had proposed to the AG and the DOI that the parties should agree to work together, with the AG's office leading the litigation, and postpone any issues regarding allocation of recoveries until the end of the litigation.  The AG has since told Marland that it never received such a proposal.

24.    When TRP did sign a retainer with the DOI, in May 1999, it failed to disclose its potential conflicts of interest from this dual representation and failed to obtain any waiver from either Marland or the DOI.  TRP also failed to advise the DOI of its prior advice to Marland that he did not have to produce any documents he did not want to produce – even though Marland had reminded TRP, in writing days before this second retainer, that he would not produce any more documents relating to the matter.

25.    TRP's retainer with the DOI also called for Marland to dismiss the *qui tam* lawsuit in favor of the DOI's action.  Marland agreed to this condition on the understanding (noted above) that TRP would share its fees from the DOI action with him as if they were obtained in the *qui tam* action, according to the terms of the February 1999 Attorney-Client Agreement.  This agreement was reflected in a June 1999 Agreement to Associate Counsel – *i.e.*, a fee-sharing agreement – between TRP, Marland, and two of Marland's European lawyers, who along with Marland were referred to as the "European Counsel" to disguise the fact that the purpose of this agreement was (as Fontana has testified) to compensate Marland for his role as the whistleblower.

26.    Also in June 1999, TRP had Marland sign a blatantly unlawful amendment to his Attorney-Client Agreement which provided for Marland's share of any recovery to be

reduced by half if he did not testify in the pending civil litigation.  This amendment – which reduced to an agreement to pay Marland for his testimony – shows TRP's disregard for legal constraints on attorney-client agreements.

27.    The fee-sharing percentages in the June 1999 Agreement were slightly different from those in the February 1999 Attorney-Client Agreement to reflect TRP's agreement to pay an additional 5% contingent fee to one of the other European Counsel, a French lawyer, for work on the case going forward.

28.    After both sides reiterated, in writing, that recoveries (both the relator's share and fee awards) should be shared among the parties on the same basis regardless of which action they were obtained in, the parties in June 2001 executed amendments to both the February 1999 Attorney-Client Agreement and the June 1999 Agreement to Associate Counsel which provided for Marland (together with the European Counsel) to receive 52.5% of the total recoveries and fee awards in either the *qui tam* action or the DOI action.

29.    When the AG's office decided to intervene in the action in about July 2001, the AG told the DOI that TRP had a clear and unwaivable conflict of interest in representing both Marland and the DOI.  TRP responded by falsely telling both the DOI and the AG that it had obtained a clear and unequivocal conflict waiver from Marland – when in fact TRP had obtained no waiver at all from Marland.   Indeed, TRP had not even sought such a waiver.

30.    After seeking and obtaining a very limited waiver from Marland in September 2001, TRP failed to advise its other client, the DOI, that Marland's limited waiver required TRP to put Marland's interests ahead of TRP's in the event of any actual conflict.

31.    As noted, the underlying litigation concerned the use of secret fronting agreements to conceal the interests of banks owned by the French state in the acquisition of an

insolvent California insurance company, as well as the subsequent cover-up of those fronting agreements from regulatory scrutiny. This litigation involved hundreds of witnesses on two continents, millions of pages of documents, complex regulatory issues, and multiple criminal investigations and charges. TRP had in fact anticipated in early 1999 that the defendants might mount a vigorous defense. Yet just months after signing the June 2001 amendments to the Attorney-Client Agreement and the fee-sharing agreement, TRP told Marland that it could not have anticipated that the litigation would take over three years and cost over $10 million (as TRP claimed it had incurred). Citing these "unanticipated" pressures, and making varying claims about its actual lodestar to date, TRP told Marland that it needed to renegotiate the Attorney-Client Agreement to ensure that TRP made a profit from the representation.

32.     When Marland balked at renegotiating, TRP then purported to terminate the Attorney-Client Agreement in August 2002. TRP did not, however, assign to Marland and RoNo its share of the proceeds from the qui tam action, as was a condition of its right to terminate. TRP also did not take any other steps required by law and applicable ethics rules in connection with the termination of its representation. Instead, TRP misrepresented the facts and threatened Marland, all in an effort to get him to reduce his share of the combined recoveries and fees from the litigation.

33.     In particular, TRP told Marland that this termination meant he would be excluded from *any* recoveries or any share of TRP's fees, even though TRP knew or should have known that the law would not permit such a result. TRP also told Marland that the Attorney General could dismiss RoNo from the *qui tam* case for failure to cooperate. This was contrary to TRP's previous advice that the AG could not stop Marland from sharing in any recovery of the

qui tam action, and in any event any lack of cooperation with the Attorney General was based on TRP's own advice.

34.        Also, after Marland balked at TRP's proposed renegotiation, in late 2002 TRP falsely told Marland that they needed to renegotiate its retainer because the DOI was (TRP claimed) angry with Marland and wanted to exclude Marland from any recoveries due to his refusal to produce an incriminating document he had previously described to TRP.  Reminded that Marland had told TRP in May 1999 he would not produce that or any other document, TRP responded that the DOI (its other client) was unaware of that refusal – which, in any event, was based on TRP's own disastrously misguided advice to Marland.  In any event, the entire document production issue was a pretext twice over:  TRP had been demanding a greater share of the recoveries for months before this issue even arose, and the DOI has stated that it did not direct TRP to renegotiate or terminate its agreement with Marland.

35.        Using these and other pressure tactics, TRP finally coerced Marland to sign a new attorney-client in December 2002, which provided the initial Attorney-Client Agreement was reinstated and then superseded by the new agreement, which cut the European Counsel's share of any award was cut by one-third, from 52.5% to 37%.  The new agreement provided for TRP to continue to represent RoNo as its "General Counsel", pursuant to a 2001 agreement that itself expressly referred back to and incorporated the February 1999 Attorney-Client Agreement, and also provided for TRP to represent Marland in response to any effort by any defendant to block payments to Marland.  And, most importantly to TRP, the December 2002 agreement had a global release clause, which recited that Marland release TRP from all claims, known or unknown.

36.      The December 2002 stated that the effectiveness of the entire agreement was conditioned on approval by the Commissioner of the Department of Insurance of the agreement. Up until May 3, 2006, when Marland filed a motion to dismiss TRP's action in federal court that sought to block this arbitration, TRP had not disclosed to Marland that the Commissioner never approved the December 2002 Agreement. Instead, the Commissioner approved only the revised fee-sharing formula in the December 2002 agreement; not any of the other provisions. Thus the December 2002 agreement never went into effect, and TRP sought to conceal that fact up to and including its initial Complaint in the federal action it filed to block this arbitration.

37.      Moreover, the Commissioner's limited consent was not obtained by TRP until August 2004 – shortly after TRP was advised that Marland had retained new counsel. The coincidence of this timing suggests that TRP reacted to the news of Marland's new counsel by pressing the Commissioner to approve the December 2002 Agreement so that TRP could have the benefit of a global release clause that was included in that agreement, but still was only able to obtain approval of the revised fee-sharing clause.

38.      Even if the Commissioner had approved the entire December 2002 agreement, the global release clause was procured by fraud, void as against public policy, and unenforceable, for several reasons.

39.      After Marland retained additional counsel in late 2004 who were independent of TRP, TRP refused over a dozen requests and pleas from that new counsel to discuss the evolution of its representation of Marland. More recently, TRP again completely ignored a request from Marland's counsel to discuss the evolution of the parties' relationship and Marland's concerns – leaving no alternative but to file this proceeding to enforce Marland's rights under the Agreement and applicable fiduciary law.

40.      TRP continues to claim that the December 2002 agreement is in effect, and has paid Marland (who, together with his European counsel, are parties to the June 1999 and December 2002 fee-sharing agreements) only 37% of Thelen's fee award, instead of the 52.5% that would be due pursuant to the parties' February 1999 and June 1999 agreements.

41.      TRP has also given different and apparently conflicting reports regarding its fees received to date, which are apparently around $50 million.  TRP has refused Petitioners' requests to provide any clarification or backup to corroborate its conflicting statements about its fees to date.

42.      In sum, based on the above:

a.   TRP's advice to Marland was flatly contrary to law on several key points, harmed Marland's and RoNo's interest and ability to pursue their claims in the *qui tam* litigation, and was clearly skewed to reflect TRP's interest to maximize its own role and recovery from any litigation.

b.   TRP's negotiation of its 1999 retainer by the DOI – and its failed negotiations with the AG – breached its duties to Marland by placing its interests ahead of his and failing to obtain his informed consent.   TRP also harmed Marland's and RoNo's interests by failing to pursue alternative opportunities for Marland to recover as a whistleblower, such as by filing *qui tam* complaints based on losses suffered by state and federal governmental units on insurance contracts they had purchased from Executive Life, which TRP was aware of in early 1999.

c.   TRP's negotiation of the June 1999 amendment that provided for Marland's recovery to be reduced if he did not testify was a breach of TRP's professional duties and harmed Marland's and RoNo's interests by damaging Marland's credibility as a witness.

d.  TRP further breached its fiduciary duties to Marland and RoNo in 2001 by falsely telling the AG that Marland had given a waiver, when in fact no waiver had been given and the waiver that was given, later in 2001, required TRP to place Marland's interests (including his interest in RoNo) ahead of the DOI's in the event of any conflict.

e.  TRP's purported termination of the February 1999 Attorney-Client Agreement was void for failure to fulfill a condition precedent and failure to comply with applicable ethical rules.  Even if that termination was effective, it did not relieve TRP of its continuing duties to Marland and RoNo as (purportedly) former clients.

f.  The December 2002 agreement, by its own terms, never took effect, because the effectiveness of the entire agreement was conditioned on the Commissioner's approval of the agreement, and that approval was never obtained.

g.  The December 2002 agreement, even if it might otherwise be effective is also void and unenforceable because TRP cannot justify it as fair and reasonable, as required by Section 18 of the Restatement of the Law Governing Lawyers, and applicable California law, regarding amendments to retainer agreements.

h.  TRP also cannot enforce the 2002 agreement because it never complied with the condition of Marland's limited September 2001 waiver – on the contrary, it consistently placed the DOI's interests ahead of Marland's, up through and including its negotiation of settlements with the defendants, at which time TRP refused even to advise Marland of the status or substance of the negotiations.

i.  The purported waiver in the December 2002 agreement is also void because it was procured by fraud, without full disclosure by TRP, as a fiduciary, of its client's rights, and as against public policy applicable to an ongoing attorney-client relationship.

j.   As a matter of simple contract enforcement, TRP owes Marland (as a member of the European Counsel) the difference between what it has paid to date under the ineffective December 2002 agreement (about $15 million), and what is payable under the February 1999 Attorney-Client Agreement and the June 1999 fee-sharing agreements, both as amended in June 2001 – i.e., about $10 million.

k.   In addition to the foregoing amounts that are past due and payable, TRP, as a disloyal fiduciary that repeatedly and intentionally breached its duties to Marland and RoNo and placed its own interests ahead of its clients', should be required to forfeit the balance of its compensation received from the DOI, which Petitioners are informed and believe to be approximately $25 million.