KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
WENDY J. THURM - #163558
BENEDICT Y. HUR - #224018
BENJAMIN BERKOWITZ - #244441
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Plaintiff
THELEN REID BROWN RAYSMAN & STEINER LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THELEN REID BROWN RAYSMAN & STEINER LLP,<br><br>                          Plaintiff,<br><br>      v.<br><br>FRANÇOIS MARLAND,<br><br>                          Defendant. | Case No. C 07-5663 VRW<br><br>**REPLY BRIEF IN SUPPORT OF *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER BY PLAINTIFF THELEN REID BROWN RAYSMAN & STEINER LLP**<br><br>Date:      November 15, 2007<br>Time:      2:30 p.m.<br>Dept:      Courtroom 6<br>Judge:    Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  ARGUMENT ........................................................................................................2

    A.   Thelen is likely to succeed in proving that there is no valid arbitration
           agreement between Thelen and Marland or RoNo. ...................................2

          1.   This Court "necessarily decided" that the arbitration clause in
              the February Agreement was not incorporated into the
              December 2002 Agreement after Marland had a full and fair
              opportunity for litigation.........................................................................3

          2.   Claim preclusion bars Marland from re-litigating his
              "incorporation by reference" claim..........................................................5

    B.   Thelen will suffer irreparable harm if the Court does not enter a
           Temporary Restraining Order by November 15. ......................................5

    C.   Under controlling Supreme Court and Ninth Circuit precedent, Thelen
           has not waived its right to argue in this Court that there is no valid
           arbitration agreement between Thelen and Marland. ...............................7

III. CONCLUSION....................................................................................................10

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

## CASES

4    *Costantini v. Trans World Airlines*,
        681 F.2d 1199 (9th Cir. 1982) ...................................................................3, 5

5

6    *First Options of Chicago, Inc. v. Kaplan*,
        514 U.S. 938 (1995)............................................................................... passim

7    *Gruntal & Co., Inc. v. Steinberg*,
        854 F. Supp. 324 (D.N.J. 1994) .................................................................6

8

9    *Nagrampa v. Mailcoups, Inc.*,
        469 F.3d 1257 (9th Cir. 2006) ...........................................................1, 8, 9

10   *PowerAgent, Inc. v. Electronic Data Systems Corp.*,
        358 F.3d 1187 (9th Cir. 2004) .............................................................9, 10

11

12   *Robi v. Five Platters, Inc.*,
        838 F.2d 318 (9th Cir. 1988) .....................................................................2

13   *Ross v. IBEW*,
        634 F.2d 453 (9th Cir. 1980) .....................................................................3

14

15   *Segal v. American Telegraph & Telegraph Co.*,
        606 F.2d 842 (9th Cir. 1979) .....................................................................2

16   *Tellium, Inc. v. Corning, Inc.*,
        2004 WL. 307238 (S.D.N.Y. Feb. 13, 2004)............................................6

17

18   *Textile Unlimited, Inc. v. A.BMH & Co., Inc.*,
        240 F.3d 781 (9th Cir. 2001) ............................................................6, 7, 8, 9

19   *World Group Securities v. Ko*,
        2004 WL. 1811145 (N.D. Cal. Feb. 11, 2004) .......................................6, 7

20

## STATUTES

21

Federal Arbitration Act, 9 U.S.C. §§1-14........................................................7

22

## OTHER AUTHORITIES

23

24   18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction*
        § 4416 (1981)................................................................................................3

25

26

27

28

REPLY BRIEF IN SUPPORT OF EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
CASE NO. C 07-5663 VRW

# I.     INTRODUCTION

In order to grant the Temporary Restraining Order requested by Plaintiff Thelen Reid Brown Raysman & Steiner LLP ("Thelen"), the Court must answer three questions:

*First*, is Thelen likely to succeed in proving that it does not have any arbitration agreement with Defendant Francois Marland or his alter ego, RoNo LLC?

*Second*, will Thelen suffer irreparable harm if the Court does not enter a Temporary Restraining Order staying the arbitration?

*Third*, did Thelen waive its right to argue the first and second questions to this Court?

The answer to the first question is "Yes."  The December 2002 Agreement does not provide for arbitration.  Marland has already litigated his claim that the December 2002 Agreement "incorporates by reference" the arbitration clause from a February 1999 Agreement.  He is barred from re-litigating that claim.

The answer to the second question is "Yes."  As a result of Thelen's TRO Application, the International Centre for Dispute Resolution (ICDR) stated that if the Court does not stay the arbitration by November 15, it will "proceed with the appointment of the arbitrator."  Thelen will suffer irreparable harm in having to expend time and resources in an arbitration proceeding absent any agreement with Marland or RoNo to arbitrate.

The answer to the third question is "No."  Under the United States Supreme Court's decision in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) and the Ninth Circuit's *en banc* decision in *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006), Thelen's consistent objections to the New York Arbitration on procedural and jurisdictional grounds did not effect a waiver of its right to argue to this Court that it has no arbitration agreement with Marland.

Accordingly, this Court should enter a Temporary Restraining Order prohibiting Marland from proceeding with the New York Arbitration, pending further order of the Court.

# II.    ARGUMENT

**A.    Thelen is likely to succeed in proving that there is no valid arbitration agreement between Thelen and Marland or RoNo.**

This Court ruled in *Thelen Reid Brown Raysman & Steiner LLP v. Francois Marland et al.*, Case No. C 06-2071 VRW (*Thelen v. Marland I*) that the December 2002 Agreement is the only valid and enforceable agreement between the parties and that it "replaced 'any and all other agreements' between the parties."[1]  The December 2002 Agreement does not contain an arbitration clause.  Instead, Marland and Thelen agreed to submit disputes arising from the December 2002 Agreement to a court in California and to resolve such disputes under California law.[2]

Marland does not point to any language in the December 2002 Agreement that, on its own, constitutes an agreement to arbitrate disputes.  Instead, Marland argues that the arbitration clause in his February 1999 Agreement with Thelen was incorporated into the December 2002 Agreement by the provision in that Agreement by which Thelen agreed to resume serving as RoNo's general counsel.  Opp. Br., at 11:26-12:11.  Marland made this precise claim in *Thelen v. Marland I*, and is therefore barred by issue and claim preclusion from re-litigating that issue here.[3]

Under the doctrine of issue preclusion—also known as collateral estoppel—a party is prohibited from re-litigating all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding.  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (quoting *Segal v. American Tel. & Tel. Co.*, 606 F. 2d 842, 845 (9th Cir. 1979)).  Claim preclusion—or res judicata—"bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of

---

[1] Request for Judicial Notice in support of *Ex Parte* Application for TRO, ("RJN"), Ex. 10, at 54:2-3.

[2] Declaration of Wendy J. Thurm in support of *Ex Parte* Application for TRO ("Thurm Decl."), Ex. F, ¶ C.9.

[3] Marland expressly concedes that his Second Amended Description of Claims, which he filed with the ICDR immediately after Thelen notified him of its intent to file this motion, "includes Marland's previously-asserted claims."  Opp. Br., at 9:5-6.

action." *Costantini v. Trans World Airlines*, 681 F. 2d 1199, 1201 (9th Cir. 1982) (quoting *Ross v. IBEW*, 634 F. 2d 453, 457 (9th Cir. 1980)).  These principles bar Marland from re-litigating the issue of whether the December 2002 Agreement incorporates by reference the arbitration clause from the February 1999 Agreement.

>    1.    **This Court "necessarily decided" that the arbitration clause in the February Agreement was not incorporated into the December 2002 Agreement after Marland had a full and fair opportunity for litigation.**

Issue preclusion applies to all issues that were "necessarily decided" after a "full and fair opportunity" for litigation.  18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4416, at 138 (1981).  Marland's claim that the arbitration provision in the February 1999 Agreement was incorporated into the December 2002 Agreement was "necessarily decided" by this Court in *Thelen v. Marland I* after Marland had a full and fair opportunity to litigate the issue.

In his initial arbitration demand filed on February 13, 2006, Marland relied on the February 1999 Agreement, which contained an arbitration provision.[4]  In its Statement of Defense, Thelen objected to the arbitration on several grounds, but in particular argued that the only valid and existing agreement between it and Marland is the December 2002 Agreement, which does not provide for arbitration.[5]  Thelen then filed its complaint in *Thelen v. Marland I*, seeking to enjoin the New York Arbitration.  Thelen reiterated its argument that the only valid agreement it had with Marland was the December 2002 Agreement, which does not contain an arbitration clause.[6]  Thelen also pointed to the provisions in the December 2002 Agreement by which Marland agreed to submit disputes to a court in California and to resolve such disputes under California law.[7]

---

[4] *See* Declaration of John J. Kerr filed in support of TRO Application ("Kerr Decl."), Ex. 1, ¶ 1. Also note that Marland's Opposition wrongly states that the arbitration was commenced in 2005. It was initiated on February 13, 2006.

[5] Kerr Decl., Ex. 2.

[6] RJN, Ex. 1, ¶ 6.

[7] RJN, Ex. 1, ¶¶ 9, 44; *see also* Thurm Decl., Ex. F, ¶ C.9.

1    In his Answer and Counterclaims, Marland denied Thelen's allegation that the December

2    2002 Agreement contained no arbitration provision, alleging:

> Section B.2.(g)(iv) of the "December 2002 Agreement" . . . expressly provides
> that Thelen "shall resume its role as general counsel to RoNo as provided in the
> September 18, 2001 Amendment to the Attorney-Client Agreement" – an
> Amendment that specifically adopted and incorporated the February 1999
> Attorney-Client Agreement between Marland and Thelen, which does contain an
> arbitration clause.  Thus, even if the December 2002 Agreement were valid,
> which it is not, Thelen is still, indisputably, required to arbitrate its disputes with
> RoNo arising from its conduct as RoNo's general counsel.[8]

8    Marland then deposed Thelen on this issue.[9]

9    In its August 1, 2007 Order in *Thelen v. Marland I*, this Court rejected Marland's

10   "incorporation by reference" argument.  First, this Court held that Thelen lawfully terminated the

11   February 1999 Agreement, after which "the parties negotiated extensively over many months to

12   reach the December 2002 agreement."[10]  Second, the Court held that the December 2002

13   Agreement "replaced 'any and all other agreements' between the parties."[11]  After upholding the

14   validity of the December 2002 Agreement, this Court then proceeded to adjudicate Thelen's

15   claims and Marland's counterclaims in light of that Agreement.[12]  The Court's adjudication of

16   the claims in dispute between Thelen and Marland is a determination that they were not subject

17   to arbitration.

18   Marland fully and fairly litigated in *Thelen v. Marland I* the very issue he now raises in

19   this Court to avoid the entry of a Temporary Restraining Order.  Issue preclusion bars Marland

20   from re-litigating the issue here.

---

[8] RJN, Ex. 4, ¶ 6.

[9] *See* Supplemental Declaration of Wendy J. Thurm in support of TRO Application ("Supp. Thurm Decl."), Ex. B (Deposition of Wynne Carvill, taken in *Thelen v. Marland I*, at 113:2-116:16; 118:15-119:5).

[10] RJN, Ex. 10, at 30:20-23; 42:1-10.

[11] RJN, Ex. 10, 54:1-3.

[12] RJN, Ex. 10, at 53:21-55:11.

4

**2.    Claim preclusion bars Marland from re-litigating his "incorporation by reference" claim.**

Claim preclusion precludes a party from re-litigating a claim or defense that was pled in a prior action when (1) the rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) substantially the same evidence is presented in the two actions; (3) the two suits involve infringement of the same right; and (4) two suits arise out of the same transactional nucleus of facts. *Costantini*, 681 F. 2d at 1201-02.  The last of these factors is most important.  *Id*. at 1202.

Each of the factors weighs strongly in favor of barring Marland from re-litigating in this Court his claim that the arbitration clause from the February 1999 Agreement was incorporated by reference in the December 2002 Agreement.  First, this claim was resolved in Thelen's favor by this Court's summary judgment order.  Any re-litigation of this issue would necessarily impair the Court's order in *Thelen v. Marland I*.  Second, Marland already deposed Thelen witnesses on this issue, and would therefore have to present that testimony to this Court.[13]  Third, both this action and *Thelen v. Marland I* involve infringement of the same rights.  Most importantly, this action arises out the same "transactional nucleus of operative facts" as *Thelen v. Marland I*.

Marland is barred by claim preclusion from re-litigating in this Court his claim that the December 2002 Agreement incorporates by reference the arbitration clause in the February 1999 Agreement.

**B.    Thelen will suffer irreparable harm if the Court does not enter a Temporary Restraining Order by November 15.**

Marland argues that that Thelen waited too long to seek injunctive relief and that Thelen's TRO Application was premature.  Of course, both points cannot be correct.  Here, neither one is.

---

[13] Supp. Thurm Decl., Ex. B.

1    First, Marland argues that Thelen had notice in early October, 2007 of his intent to re-

2    activate the arbitration and pursue claims he contends were not covered by this Court's

3    August 1, 2007 Order.  Opp. Br., at 10:14-11:10.  He further argues that Thelen should have

4    sought injunctive relief at that time.  *Id.*  But the ICDR staff had not yet re-activated the

5    arbitration by taking it off the ICDR's abeyance calendar.  It was not until November 5, 2007

6    that the ICDR notified the parties in writing that it would re-activate Marland's arbitration

7    demand and take steps to appoint an arbitrator.[14]  Two days later, Thelen filed its *Ex Parte*

8    Application for a TRO.  Docket No. 3.

9    Second, Marland argues that Thelen invented a fake "deadline" by telling the Court in its

10   TRO Application that the ICDR had ordered Thelen to comment on the arbitrator selection

11   process by November 8, 2007.  Opp. Br., at 9:20-10:10.  But Marland failed to tell the Court that

12   on November 8, 2007—the day *after* Thelen filed its TRO Application and the day *before*

13   Marland filed his Opposition Brief—the ICDR informed the parties in writing that if the Court

14   does not stay the arbitration by November 15, or the parties do not otherwise agree, it will

15   appoint an arbitrator to hear Marland's claims as set forth in his Second Amended Description of

16   Claims.[15]

17   Under prevailing Ninth Circuit law, a party will suffer irreparable harm if it is forced to

18   expend *any time and resources* defending itself in an arbitration where the parties have not

19   agreed to arbitrate their disputes.  *Textile Unlimited, Inc. v. A.BMH & Co., Inc.*, 240 F.3d 781,

20   789 (9th Cir. 2001); *World Group Secs. v. Ko*, 2004 WL 1811145, at *7 (N.D. Cal. Feb. 11,

21   2004); *see also Tellium, Inc. v. Corning, Inc.*, 2004 WL 307238, at * 3 (S.D.N.Y. Feb. 13, 2004)

22   (holding that a party suffers "per se" irreparable harm when it is compelled to arbitrate claims it

23   has not agreed to arbitrate); *Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 342 (D.N.J.

24   1994) (same)(cited in *World Group*, 2004 WL 1811145, at *7).

25

26
_____

27   [14] Kerr Decl., Ex. 7; Supplemental Declaration of John J. Kerr, Jr. in support of TRO Application ("Supp. Kerr Decl."), ¶ 14.

28   [15] Supp. Kerr Decl., ¶ 17, Ex. 6.

1       At this time, there is no doubt that without a Temporary Restraining Order, Thelen will

2  be forced to expend time and resources defending itself in an arbitration it has not agreed to.

3  Under these circumstances, Thelen has made an adequate showing of irreparable harm.

4       Moreover, Thelen would suffer a greater hardship than Marland if the Court does not stay

5  the New York Arbitration.  A Temporary Restraining Order will maintain the status quo, pending

6  the Court's resolution of Thelen's claims in this action.  Even if Marland had any valid and

7  arbitrable claims against Thelen (and he does not), a TRO will merely delay resolution of those

8  claims in an arbitration.  On the other hand, if the Court denies Thelen's request for a TRO,

9  Thelen will be forced to expend its time and resources to defend itself in the New York

10  Arbitration in the absence of a valid arbitration agreement.  Under these circumstances, the

11  balance of hardships weighs decidedly in Thelen's favor.  *See Textile Unlimited*, 240 F. 3d at

12  786, 789; *see also World Group*, 2004 WL 1811145, at *8.

**C.    Under controlling Supreme Court and Ninth Circuit precedent, Thelen has not waived its right to argue in this Court that there is no valid arbitration agreement between Thelen and Marland.**

15       Under the Federal Arbitration Act, 9 U.S.C. §§1-14, courts have the authority to decide

16  whether parties have agreed to arbitrate disputes unless the parties have affirmatively granted

17  that authority to the arbitrator.  In the latter situation, courts will find that the parties have given

18  the arbitrator the power to determine arbitrability only when there is "clear and unmistakable

19  evidence that they did so."  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)

20  (citations omitted).

21       In *First Options*, the Court considered whether the arbitration defendants (the Kaplans)

22  had "clearly and unmistakably" granted the arbitrators the power to decide whether a valid

23  arbitration agreement existed.  The arbitration plaintiffs (First Option) argued that the Kaplans

24  had given the arbitrators this authority when they filed written objections with the arbitrators

25  objecting to the arbitrators' jurisdiction but then proceeded to arbitrate the claims on the merits.

26  The Court rejected that argument, holding:

      [M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the

7

1    arbitrator's decision on that point.  To the contrary, insofar as the Kaplans were
2    forcefully objecting to the arbitrators deciding their dispute with First Options,
     one naturally would think that they did not want the arbitrators to have binding
     authority over them.

3    514 U.S. at 946.

4         Similarly, an *en banc* panel of the Ninth Circuit held last year that a party does not waive

5    its right to challenge in federal court the arbitrability of a dispute by contesting an arbitrator's

6    authority in response to an arbitration demand.  *Nagrampa v. Mailcoups, Inc.*, 469 F.3d at 1279-

7    80.  In that case, Nagrampa "participated" in the arbitration by filing a written response to the

8    arbitration demand, stating "We are not ready or willing to proceed with this arbitration."  *Id.* at

9    1277.  Thereafter, her participation was "limited to procedural issues and undertaking certain

10   actions to preserve her rights" including filing a counter-demand and discovery requests.  *Id.* at

11   1278.  But, the Court held, Nagrampa "never participated in any proceedings which even

12   touched the merits of the . . . claims that were the subject of the arbitration."  *Id.*  Relying on the

13   Supreme Court's decision in *First Options* and its own decision in *Textile Unlimited*, 240 F.3d at

14   788 (discussed, *supra*, in Section II.A.), the Court ruled Nagrampa had not waived her right to

15   challenge the arbitrability of the claims in federal court.

16        Since Marland filed his initial arbitration demand on February 13, 2006, Thelen has acted

17   consistent with the guidance set forth in *First Options*, *Textile Unlimited*, and *Nagrampa*.  As

18   described in detail in the Supplemental Declaration of John J. Kerr, Jr., Thelen has consistently

19   objected to the arbitration on procedural and jurisdictional grounds.[16]  At the earliest opportunity,

20   and at every opportunity thereafter, Thelen objected to having to participate in the arbitration at

21   all, and reserved its rights to challenge the arbitrability of Marland's claims.  Thelen made these

22   objections:

23        •   when it filed its Statement of Defense with the ICDR in March, 2006;

24        •   when it submitted its list of "struck and ranked" potential arbitrators;

25        •   when it filed its Complaint in this Court;

26

27   _____
     [16] Mr. Kerr represents Thelen in the New York Arbitration commenced by Marland and pending
28   before the ICDR.  Supp. Kerr Decl., ¶ 1.

8

- when Marland sought to re-activate the arbitration after the Court ruled entirely in Thelen's favor in *Thelen v. Marland I*.

- when the ICDR decided to re-activate the proceeding and move forward with the process of selecting an arbitrator; and

- when the ICDR extended the deadline for the parties to submit their comments regarding the selection of an arbitrator.[17]

Under governing Supreme Court and Ninth Circuit precedent, Thelen preserved its right to argue to this Court that Marland's claims (however and whenever pled) are not subject to arbitration.

Marland does not cite to or discuss *First Options*, *Textile Unlimited* or *Nagrampa*. Instead, Marland relies on *PowerAgent, Inc. v. Electronic Data Systems Corp.*, 358 F.3d 1187 (9th Cir. 2004), to argue that Thelen waived its right to challenge arbitrability in this court. *PowerAgent* does not apply.  In that case, the plaintiff filed a complaint in this court for breach of various agreements.  The defendant (EDS) filed a motion compel arbitration.  The district court found the dispute was subject to arbitration. After other procedural skirmishes, PowerAgent filed its own Notice of Arbitration and "asserted that the arbitration panel, not the district court, should determine arbitrability."  *Id.* at 1190.  The arbitrators agreed with the district court, held that the claims in dispute were arbitrable, and found entirely for EDS on the merits.

On appeal, PowerAgent relied on *First Options*, arguing that it had not waived its right to argue in court that the parties' disputes were not subject to arbitration.  The Ninth Circuit disagreed, noting:

> In *First Options*, the *defendants* in arbitration filed with the arbitrators a memorandum opposing the arbitrators' jurisdiction.  The Supreme Court concluded that that submission did not signify an agreement to submit the question of arbitrability to the arbitrator. . . .  PowerAgent's position in this case is quite different from that of defendants' posture in *First Options*.  PowerAgent was the *plaintiff* in arbitration and affirmatively sought to submit the issue of arbitrability to the arbitration panel, arguing in favor of the arbitrators' authority to decide the issue.

---

[17] Supp. Kerr Decl., ¶¶ 3-4, 8-17.

9

*Id.* at 1191-92 (emphasis in original). The Court then held that PowerAgent had clearly evinced its intent to be bound by the arbitrators' decision, and was therefore estopped to argue otherwise on appeal. *Id.* at 1192.[18]

Here, the ICDR has not yet appointed an arbitrator, so there has been absolutely nothing decided on the merits in the New York Arbitration. What the ICDR staff "decided" on November 5, 2007 was to re-activate Marland's arbitration and proceed to appoint an arbitrator. Thelen then acted promptly to seek injunctive relief in this Court, to enjoin Marland from proceeding any further with the New York Arbitration. Thelen has not waived its right to challenge the arbitrability of Marland's claims.

### III.    CONCLUSION

For the foregoing reasons, Thelen respectfully requests that this Court immediately enter a Temporary Restraining Order prohibiting Marland (for himself and RoNo) from proceeding with the New York Arbitration, pending further Order of this Court.

Dated:  November 13, 2007                    KEKER & VAN NEST, LLP


                                             By:   /s/ Wendy J. Thurm
                                                 WENDY J. THURM
                                                 Attorneys for Plaintiff
                                                 THELEN REID BROWN RAYSMAN &
                                                 STEINER LLP

---

[18] Marland's failure to discuss and distinguish *First Options* and his reliance on *PowerAgent* is troubling, given that Marland's counsel in this Court—Andrew W. Hayes—was counsel of record for PowerAgent, Inc. in its case against EDS.

10

1

## PROOF OF SERVICE

2      I declare as follows:

3      I am employed in the City and County of San Francisco, State of California in the office

4  of a member of the bar of this court at whose direction the following service was made.  I am

5  over the age of eighteen years and not a party to the within action.  My business address is Keker

6  & Van Nest, LLP, 710 Sansome Street, San Francisco, California 94111-1704.

7      On November 13, 2007, I served the following document(s):

8      **REPLY BRIEF IN SUPPORT OF *EX PARTE* APPLICATION FOR**

9      **TEMPORARY RESTRAINING ORDER  BY PLAINTIFF**
       **THELEN REID BROWN RAYSMAN & STEINER LLP**

10
       **SUPPLEMENTAL DECLARATION OF JOHN J. KERR, JR.**
11     **IN SUPPORT OF THELEN REID BROWN RAYSMAN & STEINER LLP'S**
       ***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**
12
       **SUPPLEMENTAL DECLARATION OF WENDY J. THURM**
13     **IN SUPPORT OF THELEN REID BROWN RAYSMAN & STEINER LLP'S**
       ***EX PARTE*  APPLICATION FOR TEMPORARY RESTRAINING ORDER**
14

15  by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy
    scanned into an electronic file in Adobe "pdf" format.  The transmission was reported as
16  complete and without error.

17  Guy D. Calladine                          Andrew W. Hayes
    Edward F. Donohue                         Hayes & Maloney LLP
18  Carlson, Calladine & Peterson LLP         One Rockefeller Plaza, Suite 1005
19  353 Sacramento Street, 16th Floor         New York, NY 10020
    San Francisco, CA 94111                   Email:  ahayes@hayes-hardy.com
20  Email: gcalladine@ccplaw.com
            edonohue@ccplaw.com
21

22      I declare under penalty of perjury under the laws of the State of California that the above
23  is true and correct.

24      Executed on November 13, 2007, at San Francisco, California.

25

26  _____
    Laura Lind

27

28

1