# EXHIBIT B

Case 3:07-cv-05663-VRW     Document 15-3     Filed 11/13/2007     Page 1 of 9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---

THELEN, REID, BROWN, RAYSMAN & STEINER
LLP, fka THELEN REID & PRIEST LLP,

    Plaintiff/Counter-Defendant,

vs.                       No. C 06-2071 VRW

FRANCOIS MARLAND,

    Defendant/Counter-Claimant,
----------------------------------//
THELEN REID BROWN RAYSMAN &
STEINER LLP, fka THELEN REID
& PRIEST LLP,
    Counter-Counter-Claimant,
vs.
FRANCOIS MARLAND and SUSANNAH
MAAS,
    Counter-Counter-Defendants.
----------------------------------//

**CERTIFIED COPY**

DEPOSITION OF

WYNNE S. CARVILL
Thursday, December 14th, 2006
Pages 266 through 290 are Deemed
Condifential and are Bound Separately

REPORTED BY:
KARLA SHALLENBERGER, CSR #10725

**U.S. LEGAL**
*Support*
Certified Shorthand Reporters
180 Montgomery Street, Suite 2180
San Francisco, CA 94104

888-575-3376 • Fax 888-963-3376
www.uslegalsupport.com

| | | |
|---|---|---|
| 1 | A. To RoNo, yes. | 13:42 |
| 2 | Q. Okay. And this September 18, 2001 | 13:42 |
| 3 | amendment to the attorney-client agreement we looked | 13:42 |
| 4 | at earlier today -- it's Exhibit 9 if you want to look | 13:42 |
| 5 | at it again. | 13:43 |
| 6 | A. All right. | 13:43 |
| 7 | Q. It refers to -- right underneath "Recital," | 13:43 |
| 8 | the very first recital refers to an attorney-client | 13:43 |
| 9 | agreement dated February 17th, amended June 2nd, 1999, | 13:43 |
| 10 | right, in the very first recital? | 13:43 |
| 11 | A. In the very first recital, yes, February | 13:43 |
| 12 | 17, amended June 2nd. | 13:43 |
| 13 | Q. On page two of Exhibit 9, paragraph nine | 13:43 |
| 14 | states that all other terms of the attorney-client | 13:43 |
| 15 | agreement not directly contradicted by the terms of | 13:43 |
| 16 | this agreement remain unchanged. Do you see that? | 13:43 |
| 17 | A. Yes, I do. | 13:43 |
| 18 | Q. And if you want to take out the | 13:43 |
| 19 | attorney-client agreement, Exhibit 2, I will direct | 13:43 |
| 20 | your attention to page six, paragraph 23, "Arbitration | 13:44 |
| 21 | of Disputes." Do you see that? | 13:44 |
| 22 | A. I see that. | 13:44 |
| 23 | Q. Okay. You understood in 2002 that Thelen | 13:44 |
| 24 | and Marland had agreed to arbitrate any disputes about | 13:44 |
| 25 | the attorney-client agreement, right? | 13:44 |

113

**U.S. Legal Support**

| | | |
|---|---|---|
| 1 | MS. THURM: Object to the form of the | 13:44 |
| 2 | question. | 13:44 |
| 3 | THE WITNESS: All I can tell you is that I | 13:44 |
| 4 | recall knowing in 2002 that there was an arbitration | 13:44 |
| 5 | clause in the original attorney-client agreement. | 13:44 |
| 6 | MR. HAYES: Q. Okay. And did you take any | 13:44 |
| 7 | steps in 2002 to provide for the recision of the | 13:44 |
| 8 | arbitration agreement contained in the original | 13:45 |
| 9 | attorney-client agreement, notwithstanding the fact | 13:45 |
| 10 | that paragraph G4 was reinstating RoNo's role as | 13:45 |
| 11 | counsel, general counsel to RoNo -- I'm sorry, | 13:45 |
| 12 | Thelen's role as general counsel to RoNo? | 13:45 |
| 13 | A. I think I understand your question, and if | 13:45 |
| 14 | I do, the answer is yes. | 13:45 |
| 15 | Q. What steps did you take to rescind the | 13:45 |
| 16 | arbitration agreement in the February 1999 | 13:45 |
| 17 | attorney-client agreement notwithstanding the | 13:45 |
| 18 | reinstatement of that agreement to the extent that | 13:45 |
| 19 | Thelen was serving as general counsel to RoNo? | 13:45 |
| 20 | MS. THURM: Object to the form of the | 13:45 |
| 21 | question. | 13:45 |
| 22 | THE WITNESS: I drafted and then received | 13:45 |
| 23 | European Counsel's suggestions and worked on further | 13:45 |
| 24 | drafts of a new agreement, the purpose of which was to | 13:45 |
| 25 | supersede and replace all agreements. And near the | 13:46 |

114

**U.S. Legal Support**

| | | |
|---|---|---|
| 1 | end I accepted one modification, and that was -- on | 13:46 |
| 2 | the issue of prior agreements, and that was, all | 13:46 |
| 3 | right, we'll do the general counsel, meaning, that | 13:46 |
| 4 | Dana Fox will do these functions. | 13:46 |
| 5 | That is the only part of the prior | 13:46 |
| 6 | agreements I understood survived.  Because we | 13:46 |
| 7 | undertook that duty, it's immediately superseded. | 13:46 |
| 8 | Q.   I'm sorry, the last sentence you said | 13:46 |
| 9 | because we undertook that duty. | 13:46 |
| 10 | A.   Let me get the language.  I was looking for | 13:46 |
| 11 | the language. | 13:46 |
| 12 | Q.   Sure. | 13:46 |
| 13 | A.   It was reinstated and immediately | 13:46 |
| 14 | superseded except for one narrow function, and that | 13:47 |
| 15 | was the Dana Fox role.  So I believe, rightly, | 13:47 |
| 16 | wrongly, I believe that everything prior was over | 13:47 |
| 17 | except to the extent that we had to do the Dana Fox | 13:47 |
| 18 | function. | 13:47 |
| 19 | Q.   Well, if I could use that phrase of yours | 13:47 |
| 20 | for current purposes, the Dana Fox function, or Dana | 13:47 |
| 21 | Fox role, it was your understanding when you signed | 13:47 |
| 22 | this December 2002 agreement that if there was some | 13:47 |
| 23 | dispute over what Dana Fox did or didn't do, or should | 13:47 |
| 24 | or shouldn't have done, that pursuant to the clause G4 | 13:47 |
| 25 | here in the December 2002 agreement, and the provision | 13:47 |

115

| | | |
|---|---|---|
| 1 | which refers to the September 2001 amendment, which | 13:47 |
| 2 | specifies that all other provisions in the February | 13:48 |
| 3 | 1999 agreement are unchanged, that that dispute over | 13:48 |
| 4 | what Dana Fox did or didn't do, or should or shouldn't | 13:48 |
| 5 | have done would be subject to arbitration, correct? | 13:48 |
| 6 |     A.    I never considered that issue. | 13:48 |
| 7 |     Q.    You had in mind specifically an intention | 13:48 |
| 8 | to supersede the arbitration clause in the February | 13:48 |
| 9 | 1999 agreement when you were drafting this December | 13:48 |
| 10 | 2002 agreement? | 13:48 |
| 11 |     A.    I had the intention to supersede, to | 13:48 |
| 12 | replace everything, and only at the end when I | 13:48 |
| 13 | received in this sort of a last punch list, something | 13:48 |
| 14 | from Brunswick where Brunswick wanted us to assume | 13:48 |
| 15 | that role, which I understood was the Dana Fox role, I | 13:48 |
| 16 | said okay. | 13:48 |
| 17 |     Q.    Okay. Respectfully, sir, I'm not sure you | 13:48 |
| 18 | answered my question. If you understood -- | 13:49 |
| 19 |     A.    Here is why I'm putting it this way. When | 13:49 |
| 20 | I received that suggestion from Phillipe Brunswick, I | 13:49 |
| 21 | did not sit down and try to figure out how much | 13:49 |
| 22 | baggage from prior agreements that might draw in. So | 13:49 |
| 23 | I didn't have a view of it then. I didn't think about | 13:49 |
| 24 | it. I'm telling you, the only thing I thought about | 13:49 |
| 25 | was, okay, to the Dana Fox function. | 13:49 |

**U.S. Legal Support**

| | | |
|---|---|---|
| 1 | If it's not helpful, I will stop. | 13:50 |
| 2 |     A.    The reason why I am saying this is I didn't | 13:50 |
| 3 | consider it.  So you're asking me to testify as to | 13:50 |
| 4 | what was my view when I was drafting these agreements, | 13:50 |
| 5 | as to what the effect was with putting this in at the | 13:50 |
| 6 | end given the arbitration clause, I will tell you I | 13:50 |
| 7 | didn't consider it. | 13:51 |
| 8 |     Q.    That's it almost exactly.  Let me just now | 13:51 |
| 9 | try to restate it. | 13:51 |
| 10 |     A.    Okay. | 13:51 |
| 11 |     Q.    Understanding that you were trying to | 13:51 |
| 12 | replace all prior agreements between the parties with | 13:51 |
| 13 | a new agreement? | 13:51 |
| 14 |     A.    Correct. | |
| 15 |     Q.    Apart from that, you did not have in mind | 13:51 |
| 16 | in drafting the December 2002 agreement, any further | 13:51 |
| 17 | and specific thought of rescinding, or revoking, or | 13:51 |
| 18 | dissolving the agreement for arbitration of disputes | 13:51 |
| 19 | that was contained in the February 1999 agreement? | 13:51 |
| 20 |     A.    Sure I did. | 13:51 |
| 21 |     Q.    You did? | 13:51 |
| 22 |     A.    In the sense that I knew there was an | 13:51 |
| 23 | arbitration clause here.  And as the person who | 13:51 |
| 24 | initially drafted the new agreement to associate | 13:51 |
| 25 | counsel, I didn't include it. | 13:51 |

118

| | | |
|---|---|---|
| 1 | Q. Okay. So you were aware that was a clause, | 13:51 |
| 2 | and you wanted to not have that kind of clause in the | 13:51 |
| 3 | new agreement? | 13:51 |
| 4 | A. It was not among the list of clauses I | 13:51 |
| 5 | chose to put in the new agreement. | 13:52 |
| 6 | Q. Indeed, okay. But then did it occur to you | 13:52 |
| 7 | or not that when you agreed to Brunswick's suggestion | 13:52 |
| 8 | that is reflected here in paragraph G4, you were | 13:52 |
| 9 | reimporting the arbitration agreement from the | 13:52 |
| 10 | February 1999 attorney-client agreement? | 13:52 |
| 11 | A. And my answer, I think I have said it three | 13:52 |
| 12 | times now, is it that I did not think about it. So, | 13:52 |
| 13 | how can I tell you that, yes, I believed I was, or no, | 13:52 |
| 14 | I believed I wasn't. | 13:52 |
| 15 | Q. No -- | 13:52 |
| 16 | A. It never crossed my mind. | 13:52 |
| 17 | Q. Okay. But, you had an intention to get rid | 13:52 |
| 18 | of it and you didn't realize you were importing it | 13:52 |
| 19 | back in? | 13:52 |
| 20 | A. I'm not agreeing? -- | 13:52 |
| 21 | MS. THURM: Objection to the form of the | |
| 22 | question. Excuse me. Assumes facts not in evidence | 13:52 |
| 23 | and argumentative. | 13:52 |
| 24 | THE WITNESS: I am not agreeing that I | 13:52 |
| 25 | imported it or that I didn't import it. I am saying | 13:53 |

119

**U.S. Legal Support**

```
 1  STATE OF CALIFORNIA      )
                             )
 2                           )
    COUNTY OF SAN FRANCISCO  )
 3
 4
 5      I, Karla Shallenberger, do hereby certify:
 6      That I am a Certified Shorthand Reporter, License
 7  No. 10725 of the State of California;
 8      I fully, truly and correctly took down in
 9  shorthand writing all of the proceedings had and all
10  of the testimony given in said matter;
11      That I thereafter truly, fully and correctly
12  transcribed the same into typewriting, and that the
13  foregoing pages are a full, true and correct
14  transcript of my said notes taken at the time and
15  place therein stated.
16      IN WITNESS WHEREOF, I have hereunto set my
17  hand.  12-14-2006.
18
                    Karla Shallenberger
19                  Certified Shorthand Reporter
                    License No. 10725
20
```