DONALD W. CARLSON [Bar No.: 79258] dcarlson@ccplaw.com
GUY D. CALLADINE [Bar No.: 99431] gcalladine@ccplaw.com
CARLSON, CALLADINE & PETERSON LLP
353 Sacramento Street, 16th Floor
San Francisco, California 94111
Telephone:    (415) 391-3911
Facsimile:    (415) 391-3898

ANDREW W. HAYES (*pro hac vice*)
HAYES & MALONEY LLP
1 Rockefeller Plaza, Suite 1005
New York, New York  10020
Telephone:    (212) 554-3120
Facsimile:    (212) 554-3121

Attorneys for Defendant
FRANÇOIS MARLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THELEN REID BROWN RAYSMAN & STEINER LLP, <br><br> Plaintiff, <br><br> v. <br><br> FRANÇOIS MARLAND, <br><br> Defendant. | Case No.:    C-07-5663 VRW <br><br> **MARLAND'S MEMORANDUM IN OPPOSITION TO THELEN'S APPLICATION FOR A PRELIMINARY INJUNCTION** |

I, Andrew W. Hayes, declare and state as follows:

1  I am a member of the Bar of the State of New York, counsel to Defendant Francois Marland in the arbitration pending before the International Center for Dispute Resolution ("ICDR"), Case No. 50 180 T 00082 09, *Francois Marland and RoNo LLC v. Thelen, Reid & Priest LLP*, and admitted pro hac vice before this Court in this action and the previous litigation between the parties (Case No. C-06-02071 VRW, "*Thelen v. Marland I*").  I make this declaration to present the Court with information and documents referred to in Defendant Marland's Opposition to Plaintiff Thelen Reid Brown Raysman & Steiner LLP's ("Thelen") Application for

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

Preliminary Statement ........................................................................................................................ 1

Statement of Facts .............................................................................................................................. 3

    A. Thelen's Admission that its "Desire" to Entirely Replace the 1999 Agreement Was Not Realized, Because it Agreed to Partially Re-Instate the 1999 Agreement. .................................................................................................... 3

    B. Thelen's Admission that it Did Nothing to Revoke or Rescind the Arbitration Agreement in the 1999 Agreement, Other than Omit it From the 2002 Agreement. ........................................................................................................ 4

    C. The Arbitration Was Only Re-Activated After Thelen's Unexpected Decision to Allow the Agreement Staying the Arbitration to Expire. ............................. 5

    D. Thelen's Admission that it Chose to Pay the ICDR to Continue the Arbitration on the ICDR Docket, Rather than Have it Be Dismissed. .............................. 6

    E. Thelen's Admission that it Asked the ICDR to Bar Marland from Re-Activating the Arbitration, and Waited Until After the ICDR Rejected its Arguments – the Same Arguments Thelen Raises Here – Before Seeking an Injunction. ............................................................................................................. 6

    F. Thelen's Explanations Regarding its Continued Withholding of Funds Are Irrelevant to its Claim for an Injunction. .................................................................. 6

Argument ............................................................................................................................................ 8

    I. THELEN HAS NO CHANCE OF SUCCESS ON THE MERITS BECAUSE THE ARBITRATION AGREEMENT WAS NEVER REVOKED, AND WAS INSTEAD EXPRESSLY RE-INSTATED BY THE 2002 AGREEMENT. ......................... 8

        A. Thelen's Termination of the 1999 Attorney Client Agreement Did Not Rescind Marland's Right to Arbitrate Disputes that Might Arise Later, based on Obligations Created Pursuant to the Attorney Client Agreement. ........................................................................................................ 9

        B. Thelen's Agreement to Partially Re-Instate the 1999 Attorney Client Agreement Did Not Tacitly Remove the Arbitration Clause from that Re-Instated Agreement. ................................................................................................. 9

        C. Thelen's Other Arguments Regarding the Arbitration Clause are Also Flatly Contrary to the Law as Applied in this and other Courts. ................................. 11

    II. THELEN'S ISSUE AND CLAIM PRECLUSION ARGUMENTS -- THAT THE COURT ALRADY ADOPTED THELEN'S POSITION REGARDING ARBITRATION -- ARE WITHOUT LEGAL OR FACTUAL MERIT. ............................ 13

Conclusion ........................................................................................................................................ 15

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

# TABLE OF AUTHORITIES

**Cases**

*AT&T Tech., Inc. v. Communications Workers of America*,
   475 U.S. 643 (1986) .................................................................................................... 2

*Berkery v. Cross Country Bank*,
   256 F.Supp. 359 (E.D. Pa. 2003) ................................................................................ 13

*Blue Bell, Inc. v. Western Glove Works, Ltd.*,
   92 civ 2277, 1993 WL 404006 (S.D.N.Y. Oct. 4, 1993) ............................................. 3

*Buckeye Check Cashing, Inc. v. Cardegena*,
   126 S.Ct. 1204 (2006) ................................................................................................ 15

*Dandong Shuguang Axel Corp. v. Brilliance Machinery Co.*,
   No. C 00-4480, 2001 WL 637446 (N.D.Cal. Jun. 1, 2001) ....................................... 11

*Emcasco Ins. Co. v. Nasuti*, No. 90-3424, 1992 WL 19858
   (E.D. Pa. Jan. 3, 1990), *aff'd*, 975 F.2d 1549 (3d Cir. 1992) ................................... 12

*Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*,
   466 F. Supp.2d 1293 (N.D.Ga. 2006) ........................................................................ 13

*Homestake Lead Co. v. Doe Run Resources Corp.*,
   282 F. Supp. 1131 (N.D.Cal. 2003) .................................................................. 1, 10-12

*Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*,
   210 F. 3d 262, 267 (4th Cir. 2000) ............................................................................ 11

*Lippus v. Dahlgren Mfg. Co.*,
   644 F. Supp. 1473 (E.D.N.Y. 1986) ............................................................................ 3

*Litton Financial Printing Div. v. N.L.R.B.*,
   501 U.S. 190, 111 S.Ct. 2215 (1991) ....................................................................... 2, 9

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 103 S. Ct. 927 (1983) ................................................................................ 2

*Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionary*
   *Workers Union, AFL-CIO*, 430 U.S. 243, 97 S.Ct. 1067 (1977) ..................... 2, 9, 12

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

*Primex Intl. Corp. v. Wal-Mart Stores, Inc.,*
   679 N.Y.2d 594, 679 N.E.2d 624 (1997) ........................................................................ 12

*Riley Mfg. Co. Inc. v. Anchor Glass Container Corp.,*
   157 F.3d 775 (10th Cir. 1998) ........................................................................................ 12

*United Computer Sys. v. AT&T Corp.,*
   298 F.3d 756 (9th Cir. 2002) ......................................................................................... 12

**Treatises**

11A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure*
   § 2948.1 at 152-53 (1995). ............................................................................................. 2

**Other**

T. Stark, *Negotiating and Drafting Contract Boilerplate* (2003) .................................................... 11

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

**Preliminary Statement**

Thelen's claims here rest on two assertions: (1) the factual assertion that the 2002 "New Agreement to Associate Counsel" "replaced any and all other agreements between the parties,"[1] and (2) the legal conclusion this "replacement" precludes Marland from invoking the arbitration clause in the 1999 Attorney Client Agreement. Both of these assertions are wrong.

As a *factual* matter, the recitals to the 2002 Agreement state that "the parties *desire* to replace the Attorney Client Agreement and Original Agreement and any and all other agreements . . . with this new Agreement as the sole agreement between them."[2] But Thelen has admitted that this "desire" was not realized, because – as this Court found – Thelen agreed to resume representing RoNo pursuant to the 1999 Attorney-Client Agreement, amended in 2001:[3]

**"TR&P and Marland agree that their previously terminated Attorney Client Agreement shall be re-instated and immediately superseded by this Agreement <u>except that TR&P shall resume its role as general counsel to RoNo as provided in the September 18, 2001 Amendment to the Attorney Client Agreement</u>."**[4]

Thelen is also wrong on the *law*: absent a "clear and specific waiver" of an arbitration clause in an agreement, that clause remains enforceable after the agreement's termination "*even where the prior agreement itself is rescinded by the latter agreement.*"[5] Here, Thelen has admitted that it did nothing to rescind or revoke the arbitration clause in the February 1999 Attorney-Client agreement beyond omitting a similar clause from the new agreement.[6] Thus even if the carve-out noted above did not exist, Thelen's claim – that the omission of an arbitration clause from the 2002 Agreement precludes Marland from invoking the arbitration clause in the 1999 Agreement – is a legal non-sequitur, made without *any* supporting authority, and in complete disregard of the uniform law to the contrary.

---

[1] Hayes Dec. Ex. 1 at p. 1.
[2] Hayes Dec. Ex. 1 at p. 1.
[3] Hayes Dec. Ex. 2 at pp. 114:6-115:7
[4] Hayes Dec. Ex. 3 at 43:22-44:5 (*quoting* Hayes Dec. Ex. 1 at p. 6, ¶ B.2(g)(iv)) (emphasis added).
[5] *Homestake Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 1131, 1142 (N.D.Cal. 2003) (Patel, J.) ("clear and specific" waiver required).
[6] Hayes Dec. Ex. 2 at 118:11-119:5.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

The continued validity of the arbitration clause, and a dispute that "arises under" that agreement's subject matter, necessarily terminates the Court's inquiry, and this action.[7] Thelen's representation of RoNo from 1999 through 2005 was governed by an Attorney Client Agreement that provided for Thelen to also seek to represent the Department of Insurance[8] and provides for arbitration of disputes concerning that agreement. Marland's and RoNo's amended arbitration claim alleges that Thelen breached its duty of loyalty to RoNo as a former client – a claim squarely under the 1999 Agreement – and wrongly withheld fees from the DOI representation, which was expressly contemplated in the 1999 Agreement. Since these claims "arose under" the 1999 Agreement, Thelen's request to enjoin the arbitration must be denied, *notwithstanding* this Court's holding that the substantive terms of the 1999 Agreement were replaced by the 2002 Agreement.[9]

We understand the Court's desire to preserve what it takes to be the *status quo* during the two years it will take for Marland's appeal to be heard. There are two reasons why that desire does not provide the necessary support for the Court to issue an injunction:

(1) The *status quo* changed in October, when Thelen chose to let the stay of the arbitration expire by not cross-appealing the denial of its injunction request. Whatever "harm" Thelen will suffer from arbitrating these claims now is *entirely* the result of that choice – and it hornbook law that "if the harm complained of is self-inflicted, it does not qualify as irreparable."[10]

---

[7] A district court may not pass on the merits of any action when determining the threshold question of arbitrability of claims. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).

[8] Hayes Dec. Ex. 4 at 1-2.

[9] *See Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 253-255, 97 S.Ct. 1067, 1073-74 (1977) (grievances that arise under the contract but based on events after the contract's termination are subject to arbitration); *Litton Financial Printing Div. v. N.L.R.B.*, 501 U.S. 190, 205-206, 111 S.Ct. 2215, 2225 (1991) (grievances arising after expiration of the contract are arbitrable where they involve "facts and occurrences that arose before expiration").

[10] *E.g.,* 11A C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure* § 2948.1 at 152-53 (1995).

(2) The law is also clear that a court has no discretion to enjoin an arbitration "even if a stay would avoid inconsistent verdicts or piecemeal adjudication."[11] Fear that the arbitrator will not apply the law of issue or claim preclusion is not a basis to enjoin an arbitration.[12]

Instead of addressing the abundant law contradicting its central positions, Thelen's main argument is that the Court already decided this issue in *Thelen I*. This claim is at least inconsistent with the Court's *denial* of Thelen's request to enjoin the arbitration as moot and its statement that disputes not resolved by the Court's decision could be "arbitrated or litigated elsewhere."[13] Simply put, the Court's ruling regarding the validity of the 2002 Agreement as a substantive replacement to the 1999 Agreement did not decide – and did not need to decide – the narrower issue of federal arbitration law presented here, regarding the continuing validity of the arbitration clause in the 1999 Agreement.

### Statement of Facts

The following focuses on facts particularly relevant to the present motion, including points raised in Thelen's reply brief and the November 15, 2007 hearing on Thelen's TRO application.

### A. Thelen's Admission that its "Desire" to Entirely Replace the 1999 Agreement Was Not Realized, Because it Agreed to Partially Re-Instate the 1999 Agreement.

As Thelen's counsel put it, Wynne Carvill was Thelen's 30(b)(6) witness regarding "why certain provisions are in or not in the agreement and what certain terms mean in the agreement as it was executed in 2002."[14] Carvill testified that while Thelen "wanted to have all prior agreements just wiped off the board and have one agreement that defined everything, they [Marland and the European Counsel] wanted us to assume some task in the prior agreement."[15]

---

[11] *Lippus v. Dahlgren Mfg. Co.*, 644 F.Supp. 1473 (E.D.N.Y. 1986) (*citing* 9 U.S.C. § 3 and *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S. Ct. 927 (1983)).

[12] *Blue Bell, Inc. v. Western Glove Works, Ltd.*, 92 civ 2277, 1993 WL 404006 (S.D.N.Y. Oct. 4, 1993) (Sweet, J.) (movant sought to enjoin petitioner "from raising in arbitration claims or issues that were tried or could have been tried in the previous arbitration"; petition denied).

[13] Hayes Dec. Ex. 3 at 56:25.

[14] Hayes Dec. Ex. 2 at 140:23-25.

[15] *Id.* at 107:8-11.

Thelen has admitted that it gave in on this point, agreeing that the 2002 Agreement would not "supercede" the 1999 Agreement (as amended in September 2001) with regard to Thelen's service as RoNo's General Counsel.[16] The carve-out language in the 2002 Agreement, quoted above, thus precisely reflects the parties' intention that the 2002 Agreement would not supercede the 1999 Agreement with regard to Thelen's ongoing service as RoNo's general counsel.

Finally, there is no dispute that Thelen's agreement to partially re-instate the 1999 Agreement came "near the end" of the negotiations over the 2002 Agreement[17] – long after the recital that Thelen cites was drafted.

### B. Thelen's Admission that it Did Nothing to Revoke or Rescind the Arbitration Agreement in the 1999 Agreement, Other than Omit it From the 2002 Agreement.

Thelen made a deliberate choice to omit an arbitration clause from the 2002 Agreement, but gave no thought at the time to the effect that partially re-instating the 1999 Attorney Client Agreement would have on the arbitration clause of the 1999 Attorney Client Agreement into the 2002 Agreement – as Carvill testified, "it never crossed my mind."[18] Thelen thus cannot now claim that the 2002 Agreement reflects a specific agreement one way or the other regarding arbitration of disputes arising under the 1999 Attorney Client Agreement.

Moreover, when asked to focus on the arbitration clause, apart from his general desire to replace all prior agreements with a new agreement, and asked if he had "any further and specific thought of rescinding, or revoking, or dissolving the agreement for arbitration of disputes that was contained in the February 1999 [Attorney Client] agreement", Carvill simply responded that he knew there was an arbitration clause in the 1999 Agreement, and "didn't include it" in the new agreement.[19] Asked to reconfirm his answer, Carvill simply responded that "[i]t was not among the list of clauses I chose to put in the new agreement."

---

[16] *See Id.* at 106:15-16 (parties' understanding regarding the 1999 Agreement was "don't supercede it as to this one function that we want continued"); *Id.* at 115:14 (1999 Agreement "superceded except for one narrow function").
[17] *Id.* at 114:25-115:1.
[18] *Id.* at 118:11-119:16; *see also* 119:17-120:10.
[19] *Id.* at 118:16-25.

4

In short, other than omitting an arbitration clause from the 2002 Agreement, Thelen took *no* steps to rescind or revoke the arbitration clause in the 1999 Attorney Client Agreement. Indeed, when the issue of partially re-instating the 1999 Agreement came up, he "didn't consider" the implication of that re-instatement on the scope or validity of the earlier arbitration clause.[20]

After that admission, Carvill – Thelen's designated representative regarding "what certain terms mean in the agreement as it was executed in 2002" [21] – flatly refused to answer questions regarding the effect of Thelen's agreement to partially re-instate the Attorney Client Agreement in the 2002 Agreement on the arbitration clause in the 1999 Agreement. [22]

### C. The Arbitration Was Only Re-Activated After Thelen's Unexpected Decision to Allow the Agreement Staying the Arbitration to Expire.

At the November 15, 2007 hearing Thelen suggested that there was some contradiction between Marland's position on summary judgment – that there was no need for a permanent injunction – and his later decision to revive the arbitration.[23] The fact is that Marland's position on this point changed because Thelen changed the *status quo* when it chose to allow the parties stay of the arbitration to expire.

As previously noted, the parties stipulated to stay the arbitration pending a *final order* dismissing Thelen's motion to enjoin the arbitration.[24] Marland's summary judgment briefs reflected his belief that this stipulation mooted Thelen's request for an injunction because the arbitration would remain stayed through trial and any appeal, because it seemed obvious that Thelen would appeal any denial of its request for an injunction if Marland was appealing other

---

[20] *Id.* at 120:9.
[21] *Id.* at 140:23-25.
[22] *Id.* at 120:11-128:25. When examining counsel sought to make a record of Carvill's reasons for not answering these questions, Thelen's counsel (Ms. Thurm) became very agitated, repeatedly interrupting examining counsel. *See id*. at 122:3-123:12. Ms. Thurm claimed that her conduct was justified by referring to unspecified objections that were purportedly made in Marland's and Chateau's depositions. *See id*. at 125:3-12. Thurm's conduct was sufficiently disruptive that Carvill finally turned away from her, and assured examining counsel that notwithstanding his own counsel's speechifying, "you have my attention." *Id*. at 126:4.
[23] We do not yet have the transcript of the hearing. The above represents counsel's best recollection of Thelen's statement on this point.
[24] *See* Hayes Dec. Ex. 5.

5

portions of the Court's decision. However, Thelen chose not to appeal the denial of its request for an injunction – not even as a conditional cross-appeal. Thelen presumably has its reasons for doing so. *As a result of Thelen's decision*, the Court's order dismissing Thelen's injunction request became final, and the agreement to stay the arbitration expired by its own terms.

### D. Thelen's Admission that it Chose to Pay the ICDR to Continue the Arbitration on the ICDR Docket, Rather than Have it Be Dismissed.

Thelen's reply in support of its TRO application admits that on October 3, it paid the ICDR $150, half of the $300 abeyance fee requested by the ICDR, to keep the arbitration from being dismissed.[25] This voluntary payment is inconsistent with Thelen's position here that the 2002 Agreement precludes Marland and RoNo from arbitrating *any* claims against Thelen.

### E. Thelen's Admission that it Asked the ICDR to Bar Marland from Re-Activating the Arbitration, and Waited Until After the ICDR Rejected its Arguments – the Same Arguments Thelen Raises Here – Before Seeking an Injunction.

Thelen does not dispute most of the facts regarding its efforts to have the ICDR rule that Marland and RoNo could not resume the arbitration, including that (a) the purportedly harmful "deadline" referred to in its TRO application was simply a courtesy the ICDR gave both sides to reach an alternative agreement regarding the appointment of the arbitrator; (b) Thelen allowed the first "deadline" to pass without event on October 15, or (c) Thelen specifically waited until after the ICDR had rejected Thelen's arguments before seeking to enjoin the arbitration.[26]

### F. Thelen's Explanations Regarding its Continued Withholding of Funds Are Irrelevant to its Claim for an Injunction.

Two final points discussed at the November 15 hearing requires note, because they came up in the context of a possible compromise but are irrelevant to the merits of Thelen's motion.

---

[25] Kerr Reply Dec., Docket Item No. 16 at 3:13.

[26] One continuing point of dispute concerns Thelen's insistence that it always objected to the ICDR's deciding whether to exercise jurisdiction over Marland's claims. As noted, this assertion is contradicted by the only formal letter Thelen sent to the ICDR – which Thelen omitted from its moving papers here – and which not only contains no such reservation of rights, but affirmatively promises to make a more detailed submission to the ICDR at a later date regarding Marland's right to pursue the arbitration. Hayes Dec. Ex. 6.

6

Thelen told the Court on November 15 that the statement in Thelen's summary judgment papers – that Thelen would "promptly" pay Marland the $612,500 it owes the European Counsel under the 2002 Agreement if the Court granted Thelen summary judgment – was inartfully worded (again, we do not have the transcript, but the message was clear). Thelen also represented to the Court that the disputed funds had been paid into a separate client escrow fund, where it earns interest, and noted at some length how hard it would be for Thelen to enforce a judgment against Marland because he lives in Switzerland.

These representations seemed to underscore the Court's natural preference to preserve the "status quo", but they are *at best* irrelevant to the issue of whether Thelen is entitled to a preliminary injunction, and when examined closely they simply underscore the inequity of Thelen's "status quo". Unless Thelen has some legal basis to withhold the funds, it does not matter where Marland lives, where the funds are held, or how much is at issue. The purported difficulty of retrieving funds is utterly irrelevant unless a party has some colorable legal basis to ever seek to retrieve the funds.

As of now, however, Thelen has asserted *no* legal claim that would justify its conduct. Thelen's counter-counterclaims have been dismissed, and Thelen chose not to appeal that dismissal. Thelen has no claims pending against Marland in any other forum. Granting the injunction gives Thelen two more years before it will even have to *defend* its continued withholding of the funds.

In reality, Thelen is seeking to indefinitely stay its present obligation to pay money under an agreement this Court has found to be valid, based on Thelen's assertion that if (and *only* if) Marland prevails on his appeal, Thelen would then be able to re-assert claims that were dismissed more than two years previously and recover more money from the European Counsel than the 35% Thelen agreed to pay under the 2002 Agreement.

Even *if* Thelen's counter-counterclaims were not untimely on their face, and *if* they had any merit, and *if* Thelen could meet the legal standard for impounding funds otherwise due and payable to Marland (whose wife is American, and whose wife's family reside in the US, and who regularly visits the US), and *if* Thelen can be relieved of any consequences for not advising the

7

Court that Thelen had "inartfully" mis-represented its intention to "promptly" pay over the funds if its cross-motion was granted, Thelen is *still* not entitled to a preliminary injunction of Marland's arbitration demand – because none of the above support the assertion that Thelen would be irreparably harmed by having to *justify* its withholding of the funds in an arbitration.

A final factual point, also not be dispositive but relevant in response to Thelen's "what's the harm?" argument: given the depreciation of the dollar against the Euro and other currencies over the past year; it is likely that the funds, even with interest, are worth less now to Marland and the European Counsel than when Thelen was obligated to pay the money, over a year ago.

## Argument

### I. THELEN HAS NO CHANCE OF SUCCESS ON THE MERITS BECAUSE THE ARBITRATION AGREEMENT WAS NEVER REVOKED, AND WAS INSTEAD EXPRESSLY RE-INSTATED BY THE 2002 AGREEMENT.

Thelen has never squarely addressed the effect of the 2002 Agreement's provision re-instating 1999 Attorney Client Agreement on the arbitration clause in the 1999 agreement – not in discovery, when its designated 30(b)(6) witness refused to answer questions on the topic, nor on this motion, where Thelen argues that the Court has already decided the entire issue and need not look beyond the recitals in the 2002 Agreement.

Instead, Thelen claims that the Court *already rejected* Marland's argument that the arbitration clause in the 1999 Agreement was re-instated, along with the rest of the 1999 Agreement, by the above-quoted paragraph B.2(g)(iv) in the 2002 Agreement.[27] Thelen rests this argument on the Court's finding that the parties' intention in entering into the 2002 Agreement was to replace all prior agreements between them – quoting the *recital* in the agreement.[28]

The unspoken (but necessary) premise of Thelen's argument is that the 2002 Agreement had to itself contain an arbitration clause, or at least refer to the arbitration clause in the 1999 Agreement, for that clause to have remained operative. For Thelen, the statement that "the 2002

---

[27] *See, e.g.*, Thelen's Reply Brief, Docket Item No. 14 at 3:5-5:20.
[28] *See id.*

8

Agreement does not contain an arbitration clause"[29] is both a fact and a legal conclusion that requires no further analysis – nor any citation to supporting caselaw.   Thelen's position is directly contrary to controlling precedent, illogical, and meritless.

### A. Thelen's Termination of the 1999 Attorney Client Agreement Did Not Rescind Marland's Right to Arbitrate Disputes that Might Arise Later, based on Obligations Created Pursuant to the Attorney Client Agreement.

Thelen does not actually argue that its termination of the 1999 Attorney Client Agreement in the summer of 2002, in and of itself, terminated the arbitration agreement, and precluded Marland or RoNo from later seeking to arbitrate any claims whatsoever.  Thelen cannot make that argument, because it is flatly contrary to numerous precedents from the Supreme Court and other courts, and frivolous on its face.[30]

### B. Thelen's Agreement to Partially Re-Instate the 1999 Attorney Client Agreement Did Not Tacitly Remove the Arbitration Clause from that Re-Instated Agreement.

Once it is conceded that the termination of the Attorney Client Agreement did not rescind the arbitration clause, the illogic of Thelen's position becomes ineluctable.  Since the arbitration clause continued in effect after the termination of the rest of the Attorney Client Agreement, how could it have been terminated in December 2002, when Thelen agreed to re-instate the 1999 Agreement with regard to Thelen's continued representation of RoNo?

Thelen's answer, apparently, is that the absence of any express statement re-instating the arbitration clause, the general absence of an arbitration clause in the 2002 Agreement, and the inclusion of a consent to jurisdiction in California tacitly revoked the arbitration agreement.[31]  In other words, the arbitration clause remained valid up until the moment the rest of the 1999 Attorney Client Agreement was partially re-instated.

---

[29] *E.g.*, Thelen's Reply Brief at 2:7-8, 3:19-20; *see* Thelen's First Amended Complaint, *Thelen I* Docket Item No. 11, at ¶ 45.

[30] *E.g.*, *Nolde Brothers*, 430 U.S. at 253-255, 97 S.Ct. at 1073-74 (1977) (grievances that arise under the contract but based on events after the contract's termination are subject to arbitration); *Litton Financial Printing*, 501 U.S. at 205-206, 111 S.Ct. at 2225 (1991) (grievances arising after expiration of the contract are arbitrable where they involve "facts and occurrences that arose before expiration").

[31] *See* Thelen's Reply Brief at 3:20-22.

This position gets the law precisely backwards, by treating the arbitration clause as uniquely disfavored, and subject to tacit revocation. As Judge Patel held in *Homestake:*

> An arbitration clause can also fail where a subsequent agreement supercedes the arbitration clause with a "clear and specific" waiver. Absent the explicit intention to rescind an arbitration clause, however, the clause will survive even where the prior agreement itself is rescinded by the latter agreement.[32]

That is precisely the situation here – except that Thelen has never claimed that anything in the 2002 Agreement constituted a "clear and explicit" waiver of the arbitration clause. Thelen cannot make that claim because when Carvill was asked what he did to rescind or revoke the arbitration agreement, he answered twice that he simply chose not to include an arbitration clause in the new agreement.[33] Thelen cannot now claim that the 2002 Agreement contains the "clear and specific waiver" the law requires to support Thelen's position.

In *Homestake*, as here, an earlier agreement that contained an arbitration clause was expressly superceded by a later agreement that did not contain an arbitration clause. Plaintiff sought to enjoin an arbitration filed after the new agreement was executed, citing *inter alia* the absence of any arbitration clause in the latter agreement.[34] Judge Patel rejected this argument: "Homestake reasonably could contend that arbitration was not on the minds of the parties as they drafted the subsequent Agreements, but it cannot make the necessary showing that parties intended to strike the arbitration clause." [35]

Here, Carvill admitted that when he agreed to re-instate the 1999 Agreement in part, it "never crossed his mind" to consider the arbitration clause in that earlier agreement.[36] Thelen thus cannot make the necessary showing that it intended to strike the arbitration clause when it re-incorporated that agreement in the 2002 Agreement (indeed, Thelen has never tried to make this showing).

Since the arbitration agreement was not revoked by the termination of the Attorney Client Agreement, and the 2002 Agreement contains no waiver or revocation of the agreement, the

---

[32] 282 F.Supp. at 1142 (citations omitted).
[33] Hayes Dec. Ex. 2 at 118:16-25.
[34] 282 F.Supp. at 1139.
[35] Id. at 1142.
[36] Hayes Dec. Ex. 2 at 118:11-119:16.

conclusion follows that the arbitration clause continued in effect after the execution of the 2002 Agreement, and Thelen's therefore has no chance of success on the merits of its new Complaint.

### C. **Thelen's Other Arguments Regarding the Arbitration Clause are Also Flatly Contrary to the Law as Applied in this and other Courts.**

Thelen cites no cases supporting its arguments regarding the arbitration clause because its arguments are all contrary to settled law – indeed, most are squarely rejected by *Homestake*. As for the relationship between the earlier arbitration agreement and the new agreement, Judge Patel cited another decision of this Court, *Dandong Shuguang Axel Corp. v. Brilliance Machinery Co.*,[37] which held that "if the subsequent agreement was intended to be a new financial arrangement that was *outside of the original agreement's arbitration scope*, the Court would have expected the parties to expressly state so in the subsequent contract, rather than merely choosing to execute the contract in California and omit any arbitration provision."[38]

Here, the 2002 Agreement expressly acknowledged that it was revising financial arrangements set forth in the original, arbitrable, Attorney-Client Agreement, but it also included revived and new provisions regarding Thelen's representation of RoNo and Marland. If Thelen wanted to avoid having this "re-negotiated retention agreement" subject to arbitration, it had to do more than (as Carvill testified) simply omit an arbitration clause from the revised agreement.

Thelen's reference to the consent to jurisdiction provision in the 2002 Agreement also fails. Citing a Fourth Circuit precedent, Judge Patel held that "a consent to jurisdiction clause in a subsequent agreement does not revoke the party's right to arbitrate any disputes arising out of an underlying agreement containing a valid arbitration clause."[39]

Here, the consent to jurisdiction is the loosest kind, with no exclusivity, and no waiver of other remedies. Thelen surely knows the difference between permissive and mandatory or exclusive forum clauses,[40] and its claim that the consent to jurisdiction and forum clauses in the

---

[37] No. C 00-4480, 2001 WL 637446 at *4 (N.D.Cal. Jun. 1, 2001) (Conti, J.).
[38] *Homestake*, 282 F.Supp. 2d at 1142 (citations, brackets and ellipses omitted; emphasis added).
[39] Id. at 1142-43 (citing *Kvaerner ASA v. Bank of Tokyo-Mitsubishi, Ltd.*, 210 F. 3d 262, 267 (4th Cir. 2000)).
[40] *See, e.g.*, T. Stark, *Negotiating and Drafting Contract Boilerplate* 137-40 (2003).

11

2002 Agreement somehow support its argument that the arbitration clause was tacitly revoked is contrary to recent precedent from this very district, which Thelen does not even discuss.

Far from being unusual, *Homestake* is simply applying the Supreme Court's holding in *Nolde Bros.*,[41] and the three-prong test that the Ninth Circuit has adopted to determine whether a party has waived its arbitration rights.[42] Decisions from courts outside of this Circuit are in accord.[43] For example, in *Primex Intl. Corp. v. Wal-Mart Stores, Inc.*,[44] the New York Court of Appeals has unanimously held that a *merger clause* in the last of a series of agreements between the parties, which did not have an arbitration agreement, did not revoke a party's rights to arbitrate claims for breaches of earlier, terminated agreements, which did have arbitration clauses:

> Notwithstanding that a contract merger clause may be considered the equivalent of a general release of substantive claims under a prior Agreement, as Wal-Mart's argument suggests, we have already held that, absent a more specific indication of intent to abandon contractual rights to an arbitration forum, a general release terminating the substantive rights of the parties to the contract will not nullify their obligation to submit to an arbitrator all of the disputes relating to that contract and its termination.[45]

In short, Thelen's core argument – that there is no arbitration agreement, because the 2002 Agreement terminated or revoked the arbitration clause in the 1999 Agreement – is not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. Neither Thelen's initial brief nor its reply brief cite a single case supporting its claim that the arbitration clause in the 1999 agreement was revoked or rescinded based on the facts of the parties' negotiations here.

---

[41] 430 U.S. 243, 255.

[42] See *United Computer Sys. V. AT&T Corp.*, 298 F.3d 756, 765 (9th Cir. 2002), discussed at length in *Homestake*, 282 F.Supp.2d at 1143 n.5.

[43] *E.g.*, *Riley Mfg. Co. Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998); *Emcasco Ins. Co. v. Nasuti*, No. 90-3424, 1992 WL 19858, at *3 (E.D. Pa. Jan. 3, 1990), *aff'd*, 975 F.2d 1549 (3d Cir. 1992).

[44] 679 N.Y.2d 594, 679 N.E.2d 624 (1997).

[45] *Id.* at 601, 679 N.E.2d at 628 (citations omitted); *see also* 679 N.Y.2d at 598-99, 679 N.E.2d at 626.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

Thelen does not even appear to have performed a reasonable review of the law governing its claim, since Thelen does not mention, much less try to distinguish, any of the many cases that flatly reject the very arguments it seems to think need no support.[46]

## II. THELEN'S ISSUE AND CLAIM PRECLUSION ARGUMENTS – THAT THE COURT ALREADY ADOPTED THELEN'S POSITION REGARDING ARBITRABILITY – ARE WITHOUT LEGAL OR FACTUAL MERIT.

Instead of defending its position based on the law, Thelen's opening and reply briefs both rely on a short-cut: the assertion that this Court actually already, necessarily, rejected Marland's position regarding the validity of the arbitration clause when it ruled in Thelen's favor on the merits. This act of ventriloquism appears plainly on Page 4 of Thelen's reply brief in support of its TRO (the last page of its argument on issue preclusion), and it is worth studying carefully, as it reveals the utter lack of merit to Thelen's short-cut.

Page 4 of Thelen's TRO reply brief begins by quoting part of Marland's Answer to Paragraph 45 of Thelen's Complaint:

> Section B.2(g)(iv) of the "December 2002 Agreement" . . . expressly provides that Thelen "shall resume its role as general counsel to RoNo as provided in the September 18, 2001 Amendment to the Attorney-Client Agreement" – an Amendment that specifically adopted and incorporated the February 1999 Attorney-Client Agreement between Marland and Thelen, which does contain an arbitration clause. Thus, even if the December 2002 Agreement were valid, which it is not, Thelen is still, indisputably, required to arbitrate its disputes with RoNo arising from its conduct as RoNo's general counsel.

Thelen then refers to Marland's effort to depose Thelen on this issue, quotes the Court's discussion of the negotiation of the 2002 Agreement, and the recital regarding the replacement of all prior agreements between the parties. Thelen concludes this synopsis with the non-sequitur that "*The Court's adjudication of the claims in dispute between Thelen and Marland is a*

---

[46] The law and the policy underlying the law are exhaustively discussed in *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*, 466 F. Supp.2d 1293, 1299-1301 (N.D.Ga. 2006) (holding that "all courts which have directly addressed the issue have held that, absent a showing that the parties specifically agreed to retroactively rescind or terminate the arbitration agreement itself, an arbitration agreement generally survives novation and remains enforceable against an original party.") Another recent decision that carefully reviews the applicable law and decisions of various courts is *Berkery v. Cross Country Bank*, 256 F.Supp. 359, 368-70 (E.D. Pa. 2003).

*determination that they were not subject to arbitration.*"[47] Thelen follows this *ipse dixit* with the equally fallacious assertion that "Marland fully and fairly litigated in *Thelen v. Marland I* the very issue he now raises in this Court to avoid the entry of a Temporary Restraining Order."[48]

Of course, no such findings regarding arbitrability appear in the Court's order, which on its face denied Thelen's request for an injunction as moot. Thus Thelen's argument only makes sense if (a) there is no difference between the court's analysis of the modification or rescission of an arbitration clause and any other clause in a contract, such that the rescission of the 1999 Agreement in favor of the 2002 Agreement raises no special issues regarding the arbitration clause in the 1999 Agreement; *and* (b) one ignores (as Thelen's motion ignores) the fact that the 2002 Agreement re-instated the 1999 Attorney Client Agreement for at least some purposes, which would raise a question regarding the re-instatement of the arbitration clause even if Thelen's first assumption were correct.

The first premise of Thelen's argument is not correct, however; it ignores decades of settled caselaw and is frivolous on its face, for the reasons discussed above. And Thelen's continued quotations of the recitals in the 2002 Agreement do not erase the Court's own finding that the 2002 Agreement was "a re-negotiated retention agreement" that provided for Thelen to resume representing RoNo pursuant to the 1999 Attorney Client Agreement, and in other ways.[49]

For both these reasons, it is clear that the when the Court decided the merits of the parties' claims as set forth in their summary judgment briefs, it did not decide – and did not need to decide – anything about the continuing validity of the arbitration clause, or the effect of the re-instatement of the 1999 Attorney Client Agreement on the scope of the parties' arbitration agreement. And the Court need not derogate from any of its findings regarding the validity or enforceability of the 2002 Agreement to hold that the continued existence and scope of the arbitration agreement was not actually decided by its order in *Thelen I*. Thelen's issue and claim preclusion arguments have no more merit than its other arguments, and should be dismissed.

---

[47] Thelen's Reply Brief at 4:15-17.
[48] Id. at 4:18-19.
[49] Hayes Dec Ex. 3 at 43:22-44:5 (*quoting* Hayes Dec. Ex. 1 at p. 6, ¶ B.2(g)(iv)).

### **Conclusion**

Under settled law, the 1999 arbitration agreement was never revoked. Marland and RoNo are thus entitled to arbitrate claims based on obligations created by the 1999 Attorney Client Agreement. Indeed, because Thelen is challenging the validity of the 1999 Attorney Client Agreement as a whole, "the issue of the contract's validity is considered by the arbitrator in the first instance" [50] The Court has no discretion to pass on the merits of those claims, nor stay them because an arbitration would arguably conflict with Marland's appeal. For these reasons and the reasons set forth in Marland's prior brief, which are incorporated herein by reference, Thelen's request should be denied, and the Court should grant such other and further relief as is appropriate given Thelen's complete disregard for the settled law governing its meritless claims.

November 29, 2007

    Respectfully submitted,

    CARLSON, CALLADINE & PETERSON LLP
    HAYES & HARDY LLP

    By: *[signature]*
    ANDREW W. HAYES

    Attorneys for Defendant
    FRANÇOIS MARLAND

---

[50] *Buckeye Check Cashing, Inc. v. Cardegena*, 126 S.Ct. 1204, 1209 (2006).