KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
WENDY J. THURM - #163558
BENEDICT Y. HUR - #224018
BENJAMIN BERKOWITZ - #244441
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Plaintiff
THELEN REID BROWN RAYSMAN & STEINER LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THELEN REID BROWN RAYSMAN & STEINER LLP,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>FRANÇOIS MARLAND,<br><br>　　　　　　　　　　Defendant. | Case No. C 07-5663 VRW<br><br>**REPLY BRIEF IN SUPPORT OF THELEN'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:　　December 13, 2007<br>Time:　　2:30 p.m.<br>Dept:　　Courtroom 6<br>Judge:　Hon. Vaughn R. Walker |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..............................................................................................................1

II. ARGUMENT.....................................................................................................................3

    A. The December 2002 Agreement superseded and replaced the February 1999 Agreement and did not incorporate the arbitration agreement from that or any other agreement.................................................................................4

        1. Under California law, Thelen is not obligated to arbitrate disputes under an arbitration clause in a superseded agreement..................4

        2. Under California law, the December 2002 Agreement did not incorporate by reference the arbitration clause in the superseded February 1999 Agreement.........................................................8

    B. Marland is barred by claim preclusion and issue preclusion from asserting the continued viability of the arbitration provision in the February 1999 Agreement. ......................................................................................10

        1. Issue preclusion bars Marland's argument that the December 2002 Agreement "incorporated by reference" the arbitration clause in the February 1999 Agreement. ..................................................10

        2. Claim preclusion bars *any* argument by Marland in this action that the arbitration clause in the February 1999 Agreement remains valid and enforceable. ...............................................................11

    C. Marland's other arguments are irrelevant. ..........................................................12

III. CONCLUSION................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) .................................................................................................... 4

*Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*,
    584 F.2d 308 (9th Cir. 1978) ...................................................................................... 3

*Cariaga v. Local No. 1184 Laborers Int'l Union of North America*,
    154 F.3d 1072 (9th Cir. 1998) ............................................................................. 8, 10

*Costantini v. Trans World Airlines*,
    681 F.2d 1199 (9th Cir. 1982) .................................................................................. 12

*Disimone v. Browner*,
    121 F.3d 1262 (9th Cir. 1997) .................................................................................. 10

*Eberle v. Smith*,
    2007 WL 3151450 (S.D. Cal. Oct. 26, 2007) ......................................................... 6, 7

*Ferguson v. Countrywide Credit Industries, Inc.*,
    298 F.3d 778 (9th Cir. 2002) ...................................................................................... 4

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995) ............................................................................................... 4, 5

*Fisher v. A.G. Becker Paribas Inc.*,
    791 F.2d 691 (9th Cir. 1986) .................................................................................... 11

*Goshawk Dedicated Ltd. v. Portsmouth Settlement Co. I, Inc.*,
    466 F. Supp. 2d 1293 (N.D. Ga. 2006) .................................................................. 4, i

*Greenberg & Assocs., Inc. v. Cohen*,
    2005 WL 3527294 (D. Colo. Dec. 21, 2005) .......................................................... 7, 8

*Homestake Lead Co. v. Doe Run Resources Corp.*,
    282 F. Supp. 2d 1131 (N.D. Cal. 2003) ................................................................. 7, 8

*Lee v. Burlington Northern Santa Fe Ry. Co.*,
    245 F.3d 1102 (9th Cir. 2001) .................................................................................. 13

*Mpoyo v. Litton Electro-Optical Sys.*,
    430 F.3d 985 (9th Cir. 2005) .................................................................................... 12

*Perry v. Thomas*,
    482 U.S. 483 (1987) ............................................................................................... 4, 5

*Tellium Inc. v. Corning, Inc.*,
    2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) ............................................................... 4

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Textile Unlimited, Inc. v. A.BMH & Co., Inc.*,
   240 F.3d 781 (9th Cir. 2001) ...................................................................................3, 4

*Vedachalam v. Tata America Int'l Corp.*,
   477 F. Supp. 2d 1080 (N.D. Cal. 2007) ........................................................................8

*Westinghouse Elec. Corp. v. General Circuit Breaker*,
   106 F.3d 894 (9th Cir. 1997) .....................................................................................10

*World Group Secs. v. Ko*,
   2004 WL 1811145 (N.D. Cal. Feb. 11, 2004) ...............................................................4

## STATE CASES

*Chan v. Drexel Burnham Lambert, Inc.*,
   178 Cal. App. 3d 632 (1986) ........................................................................................9

*Citizens Utilities Co. v. Wheeler*,
   156 Cal. App. 2d 423 (1957) ........................................................................................6

*Maggio v. Windward Capital Management Co.*,
   80 Cal. App. 4th 1210 (2000) .......................................................................................5

*Mitchell v. Am. Fair Credit Ass'n*,
   99 Cal. App. 4th 1345 (2002) .......................................................................................6

*Slaught v. Bencomo Roofing Co.*,
   25 Cal. App. 4th 744 (1994) .........................................................................................9

*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*,
   164 Cal. App. 3d 1122 (1985) ......................................................................................5

## STATE STATUTES

Cal. Civ. Code § 1636 ..........................................................................................................5

Cal. Civ. Code § 1638 ..........................................................................................................5

Cal. Civ. Code § 1639 ..........................................................................................................5

## MISCELLANEOUS

18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4415 (1981) ...............12

18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4416 (1981) ...............10

## I. INTRODUCTION

Nearly two years ago, Thelen filed *Thelen v. Marland I*, seeking to enjoin Marland from proceeding with an arbitration he had initiated in New York. The core of *Thelen v. Marland I* focused on the parties' December 2002 Agreement. Thelen alleged that the December 2002 Agreement was the only valid and enforceable agreement between the parties, it replaced and superseded all prior agreements (including a February 1999 Agreement) and did not contain an arbitration clause. Therefore, Thelen argued, Marland was not entitled to arbitrate his claims against Thelen, but instead, must pursue his claims in court.[1]

Marland took a different view. He asserted numerous defenses to the enforceability of the December 2002 Agreement. Moreover, Marland claimed, *even if* the December 2002 Agreement were valid, that Agreement incorporated a February 1999 Agreement which did contain an arbitration clause, such that Thelen was obligated to arbitrate its disputes with Marland arising under the December 2002 Agreement.[2]

After sixteen months of litigation, this Court agreed with Thelen, finding that the December 2002 Agreement is the only valid and enforceable agreement between Thelen and Marland and that it "replaced 'any and all other agreements' between the parties."[3] Having made that determination, the Court then proceeded to adjudicate the very claims Marland had asserted in the New York Arbitration. Implicit in the Court's ruling was a recognition that the December 2002 Agreement did not provide for arbitration, whether by reference to the February 1999 Agreement or otherwise. Put another way, if the Court had concluded that the December 2002 Agreement compelled Thelen to arbitrate disputes with Marland, the Court very well might have found the December 2002 Agreement valid and enforceable, and then sent the parties back to arbitration to resolve their other disputes. Instead, the Court adjudicated the parties' claims, and denied Thelen's request to enjoin the New York Arbitration as moot.

---

[1] Request for Judicial Notice filed in support of *Ex Parte* Application for TRO, ("RJN"), Ex. 2 (First Amended Complaint in *Thelen v. Marland I*), ¶¶ 6, 39, 45.

[2] RJN, Ex. 4 (Marland's Answer to Thelen's First Amended Complaint in *Thelen v. Marland I*), ¶¶ 6, 39, 45.

[3] RJN, Ex. 10 (Order on Summary Judgment), at 54:2-3.

---

1

REPLY BRIEF IN SUPPORT OF THELEN'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C 07-5663 VRW

407593.01

In opposing Thelen's request for a Temporary Restraining Order in this action, Marland argued that Thelen has little chance of success on the merits:

> Since the Court has found (correctly) that the 2002 Agreement incorporated the 2001 Amendment to the 1999 Attorney-Client Agreement, it follows that Thelen is stopped from disputing that RoNo is entitled to arbitrate claims against Thelen for breaches of professional duties arising from the attorney-client relationship provided for in the 2002 Agreement.[4]

This was precisely the argument Marland made in *Thelen v. Marland I* and rejected in the Court's summary judgment Order. Thelen, therefore, argued in its reply brief on the TRO application that Marland was barred by claim and issue preclusion from seeking to re-litigate the issue.

Now that the Court has granted Thelen's TRO request, and is set to rule on Thelen's motion for preliminary injunction, Marland has put forth yet another theory for why the December 2002 Agreement does not eviscerate the arbitration clause in the February 1999 Agreement. Marland argues now that under federal law, the arbitration clause in the February 1999 Agreement survived Thelen's termination of that agreement, because the December 2002 Agreement did not explicitly revoke the arbitration clause.

Marland is wrong on the facts, the law, and is otherwise barred from raising his new theory in this action. Under Supreme Court precedent, courts apply state law to determine whether or not a contract provides for arbitration. California law—and not federal arbitration law—therefore governs this issue. And under California law, the December 2002 Agreement replaced, superceded, extinguished and forever put to rest the arbitration clause in the February 1999 Agreement. But the Court need not even reach that issue, because under governing Ninth Circuit law, Marland is barred by issue and claim preclusion from asserting in this action any theory that he raised or could have raised in *Thelen v. Marland I*.

The parties fully and fairly litigated in *Thelen v. Marland I* numerous claims, counterclaims, and defenses arising out of and relating to their professional and contractual relationships. Any claims, counterclaims or defenses that could have been asserted in *Thelen v.*

---

[4] *See* Marland's Opposition to Thelen's Application for Temporary Restraining Order [Docket # 11] ("Marland's Opp. Brief re TRO") at 13:25-28.

*Marland I*—but were not—were waived. If Marland disagrees with this Court's Order and judgment, he can and should vigorously pursue his appeal in the Ninth Circuit. In the meantime, Thelen should not have to spend its time and resources wondering, as Yogi Berra famously said, "Is this déjà vu all over again?"

Thelen respectfully requests that this Court enter an order preliminarily enjoining Marland (for himself and RoNo) from proceeding with the New York Arbitration.

## II.    ARGUMENT

The Ninth Circuit has articulated two tests to determine whether a preliminary injunction is proper. The "traditional test" requires a plaintiff to establish four elements: (1) a likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the balance of hardships favors the plaintiff-applicant; and (4) the injunction will not disserve the public interest. *Textile Unlimited, Inc. v. A.BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001). The "alternative test" states that a plaintiff may establish *either* (1) a combination of probable success on the merits and the possibility of irreparable injury *or* (2) serious questions as to these matters and the balance of hardships tips sharply in the plaintiff's favor. *Id.* These are not separate tests, but the outer reaches "of a single continuum." *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978).

Marland's primary argument is that Thelen has no likelihood of success on the merits. He does not refute Thelen's arguments on irreparable harm, balance of hardships and public interest. Those factors, therefore, tip sharply in favor of granting the preliminary injunction.

On the merits of Thelen's claim, Marland is wrong. As discussed below, under this Court's Order in *Thelen v. Marland I* and governing California law, the December 2002 Agreement replaced and superceded the February 1999 Agreement in its entirety and extinguished Thelen's obligation to arbitrate any dispute with Marland at any time. Without a valid and enforceable agreement to arbitrate, Thelen cannot be forced to do so. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

1  648 (1986) (citation omitted); *Textile Unlimited*, 240 F.3d at 788-89 (enjoining an arbitration

2  proceeding because there was no arbitration agreement between the parties).

3  Under prevailing Ninth Circuit law, Thelen will suffer irreparable harm if it is forced to

4  proceed with the New York Arbitration, because it has no valid and enforceable agreement with

5  Marland to arbitrate their disputes.  *See Textile Unlimited*, 240 F.3d at 786, 788-789 (affirming a

6  finding that arbitration absent consent constitutes irreparable harm); *see also World Group Secs.*

7  *v. Ko*, 2004 WL 1811145, at *7 (N.D. Cal. Feb. 11, 2004); *Tellium Inc. v. Corning, Inc.*, 2004

8  WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004).

9  **A.    The December 2002 Agreement superseded and replaced the February 1999 Agreement and did not incorporate the arbitration agreement from that or any other agreement.**

10

11  **1.    Under California law, Thelen is not obligated to arbitrate disputes under an arbitration clause in a superseded agreement.**

12

13  Marland argues that the arbitration clause in the February 1999 Agreement remains intact

14  because the December 2002 Agreement does not explicitly state that it rescinds or revokes the

15  arbitration clause.  Marland relies on a body of federal arbitration law that does not apply in a

16  diversity action, where the enforceability of arbitration agreements is governed by state law.

17  In determining whether the December 2002 Agreement replaced and superceded the

18  arbitration clause in the February 1999 Agreement, this Court "should apply ordinary state-law

19  principles that govern the formation of contracts."  *First Options of Chicago v. Kaplan*, 514 U.S.

20  938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter[,] courts

21  generally . . . should apply ordinary state-law principles that govern the formation of contracts.");

22  *see also Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987) (courts look to state contract law to

23  determine whether a valid agreement to arbitrate exists); *Ferguson v. Countrywide Credit*

24  *Industries, Inc.*, 298 F.3d 778, 782 (9th Cir. 2002) (applying California law to determination of

25  validity of arbitration clause).  Indeed, in *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co.*

26

27

28

*I, Inc.*, 466 F. Supp. 2d 1293, 1298-99 (N.D. Ga. 2006), on which Marland relies, the court based its decision on Georgia law.[5]

Moreover, the Supreme Court has ordered courts to interpret arbitration agreements under state law in the same manner as the courts interpret ordinary contracts. *See, e.g., Perry*, 482 U.S. at 492 n.9 ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law."). In other words, courts applying California law cannot create special rules that apply differently to arbitration agreements than to other agreements. *See First Options*, 514 U.S. at 944; *Maggio v. Windward Capital Management Co.*, 80 Cal. App. 4th 1210, 1214-1215 (2000) ("Ordinary rules of contract interpretation apply to the arbitration clause.").

In its Order granting summary judgment in *Thelen v. Marland I*, this Court set forth the rules governing the interpretation of contracts under California law:

> Under California law, "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "The language of the contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. When possible, the intention of parties entering into a written contract should be ascertained from the writing alone. Cal. Civ. Code § 1639.[6]

In addition, the Court already rejected consideration of the deposition testimony that Marland now cites as extrinsic evidence of the meaning of the plain terms of the December 2002 Agreement:

> The court notes that both parties also cite to Carvill's deposition testimony taken in this litigation regarding what he understood the provision [of the December 2002 Agreement] to mean. The court declines to consider this testimony as extrinsic evidence. California case law establishes an objective standard for contract interpretation. "[I]t is now a settled principle of the law of contract that the undisclosed intentions of the parties are . . . immaterial; and that the outward manifestation or expression of assent is controlling." *Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.*, 164 Cal App. 3d 1122, 1127 (1985). Contractual language is not controlled by "what either of the parties intended or thought its

---

[5] *See* Marland's Memorandum in Opposition to Thelen's Application for a Preliminary Injunction [Docket # 23] ("Marland's Opp. Brief re PI"), at 13:1-3 & n. 46.

[6] RJN, Ex. 10 (Order), at 19:13-21.

5
REPLY BRIEF IN SUPPORT OF THELEN'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. C 07-5663 VRW

407593.01

1    meaning to be." *Citizens Utilities Co. v. Wheeler*, 156 Cal. App. 2d 423, 432 (1957).[7]

3    Applying these principles here, the Court need not look any further than the December 2002 Agreement, particularly in light of the Court's summary judgment order in *Thelen v. Marland I*. The Court held that the December 2002 Agreement is the only valid and enforceable agreement between the parties and that it "replaced 'any and all other agreements' between the parties."[8]  This ruling is consistent with the text of the December 2002 Agreement, which states that the purpose of the agreement is to "replace the Attorney Client Agreement and Original Agreement and any and all other agreements between TR&P, on the one hand, and either Marland, RoNo or the European Counsel, on the other, with this new Agreement *as the sole agreement between them*."[9]  Marland and Thelen also agreed that the December 2002 Agreement "represents the *entire agreement* between the parties hereto with respect to the subject matter hereof."[10]  The December 2002 Agreement does not contain an arbitration clause. Instead, Marland "consent[ed] to jurisdiction in the State of California to enforce any rights arising" under the 2002 Agreement.[11]

Under California law, the December 2002 Agreement effected a novation of the February 1999 Agreement, extinguishing the arbitration clause. *See Eberle v. Smith*, No. 07-CV-120, 2007 WL 3151450, at *1-4 (S.D. Cal. Oct. 26, 2007) (slip copy) (citing *Mitchell v. Am. Fair Credit Ass'n*, 99 Cal. App. 4th 1345, 1354 (2002)).  In *Eberle*, the court considered the question of whether the defendants could compel the plaintiff to arbitrate his claims according to the terms of an arbitration provision contained in an August 2003 agreement. Applying California contract principles, the court determined that the August 2003 agreement had been superseded by an agreement that was formed through a 2005 email exchange. The court noted that the terms of

---

[7] *Id.*, at 23:26-24:10.
[8] *Id.*, at 54:2-3.
[9] *See* Declaration of Wendy J. Thurm filed in support of Application for TRO ("Thurm Decl."), Ex. F (Dec. 2002 Agreement), at 1 (emphasis added).
[10] *Id.*, at 9 (emphasis added).
[11] *Id.*, at 9.

1  the 2005 email exchange "did not explicitly include mandatory arbitration" and that "[n]othing in
2  the series of emails between Eberle and Smith evidences an intent to include such a provision by
3  implication either." *Id.* at *1. Accordingly, the court concluded that the arbitration clause from
4  the August 2003 agreement did not survive the new 2005 agreement. *Id.* at *1, 4.

5  Here, the December 2002 Agreement does not include an arbitration provision and
6  nothing in the text of the Agreement evidences any intent by the parties to include an arbitration
7  provision by implication. To the contrary, language in the Agreement stating that the February
8  1999 Agreement was terminated and superceded, that the Agreement was to constitute the only
9  agreement between the parties, and that the parties would resolve their disputes in a California
10 court under California law, lead to the singular conclusion that the December 2002 Agreement
11 extinguished the arbitration clause in the February 1999 Agreement.

12 Marland does not cite any case applying California law to hold that an arbitration
13 provision of a superseded agreement survived novation. Marland relies primarily on *Homestake*
14 *Lead Co. v. Doe Run Resources Corp.*, 282 F. Supp. 2d 1131 (N.D. Cal. 2003). The facts of
15 *Homestake* are the exact opposite of the facts here. Moreover, the court in *Homestake* erred by
16 not applying California law.

17 In 1986, Homestake and Resources entered into a partnership agreement which contained
18 a broad arbitration clause. A later 1997 agreement expressly incorporated the partnership
19 agreement, stating "except for 'specific terms of this Agreement [which] shall expressly
20 supersede and govern over any contrary or different terms,' all other terms and conditions of the
21 November 1986 Partnership Agreement remain in full force and effect." *Id.* at 1142. Because
22 no term in the 1997 Agreement explicitly addressed arbitration, the court held that the 1997
23 Agreement "expressly incorporated the partnership agreement and its arbitration clause." *Id.* No
24 such incorporation can be found in the December 2002 Agreement. To the contrary, the
25 December 2002 Agreement expressly states that it replaced and superceded the February 1999
26 Agreement, and constituted the only agreement between the parties.

27 Recently, the district court in Colorado distinguished the *Homestake* opinion under facts
28 very similar to those here. In *Greenberg & Assocs., Inc. v. Cohen*, No. 05-CV-1233, 2005 WL

1  3527294 (D. Colo. Dec. 21, 2005), the court analyzed a later-in-time agreement which did not
2  explicitly incorporate the arbitration clause from a previous agreement.  Like Marland, the
3  plaintiffs in *Greenberg & Assocs.* sought to rely on *Homestake*, but the court disagreed, noting
4  that in *Homestake*, the parties had "expressly incorporated the prior agreement and excepted the
5  arbitration clause from replacement."  *Greenberg & Assocs.*, 2005 WL 3527294 at *6.  In
6  *Greenberg & Assocs.*, as here, the parties did not expressly incorporate previous agreements into
7  the new agreements; instead, the parties expressly *superseded and replaced* the previous
8  agreements with new agreements.
9       This Court reached a similar result in *Vedachalam v. Tata America Int'l Corp.*, 477 F.
10  Supp. 2d 1080 (N.D. Cal. 2007).  In *Vedachalam*, the defendants moved to compel arbitration
11  under the Federal Arbitration Act and the United Nations Convention on the Recognition and
12  Enforcement of Foreign Arbitral Awards.  This Court applied federal common law to the
13  interpretation of the contracts.  *Id*. at 1086.  The defendants sought to compel arbitration based
14  on a 1997 contract that had expired in 1999.  This Court was "unpersuaded" by defendants'
15  argument that, while the rest of the agreement may have expired, the arbitration provision
16  continued to govern the relationship between the parties.  *Id*. at 1087. The Court concluded that
17  the expired 1997 agreement did not provide a basis for compelling arbitration.
18       In sum, California law applies to this Court's determination of whether the December
19  2002 Agreement extinguished the arbitration clause in the February 1999 Agreement.  But under
20  either California or federal law, the arbitration provision in the February 1999 Agreement did not
21  survive the parties' execution of the December 2002 Agreement.

22      **2.**    **Under California law, the December 2002 Agreement did not incorporate by reference the arbitration clause in the superseded February 1999 Agreement.**
23

24       To the extent the Court views Marland's new argument as an extension of his previous
25  "incorporation by reference" argument, the result is the same.
26       "Under California law, for one document to incorporate another document by reference,
27  '[t]he reference to the incorporated document must be *clear and unequivocal*.'"  *Cariaga v.*
28  *Local No. 1184 Laborers Int'l Union of North America*, 154 F.3d 1072, 1074 (9th Cir. 1998)

1  (emphasis added) (quoting *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994)). Moreover, to incorporate an arbitration provision by reference, the new agreement cannot merely make a "general reference" to the previous agreement, but must "guide the reader" to the arbitration provision sought to be incorporated. *Id.* at 1074-1075 (following *Chan v. Drexel Burnham Lambert, Inc.*, 178 Cal. App. 3d 632 (1986)).

As discussed in the Court's summary judgment order in *Thelen v. Marland I*, in September, 2001, with Marland's consent, Thelen withdrew as counsel of record for RoNo in the *qui tam* action, and assisted Marland in finding substitute counsel. Later in September 2001, Thelen and Marland signed an amendment to the February 1999 Agreement, memorializing Thelen's withdrawal as counsel of record for RoNo in the *qui tam* action, and Thelen's agreement to serve as "general counsel" to RoNo and as "counsel" to Marland.[12] In the summer of 2002, after numerous disputes between Thelen and Marland, Thelen withdrew from the February 1999 Agreement, including the September 2001 amendment.[13] After months of extensive negotiations, Thelen and Marland entered into the December 2002 Agreement.[14]

Marland points to section B.2.(g)(iv) of the December 2002 Agreement which states: "[Thelen] and Marland agree that their previously terminated Attorney Client Agreement shall be deemed to be re-instated and immediately superceded by this Agreement except that [Thelen] shall resume its role as general counsel to RoNo as provided in the September 18, 2001 Amendment to the Attorney Client Agreement."[15] This language did not specifically incorporate the arbitration clause of the February 1999 Agreement. It did not even incorporate the February 1999 Agreement with a "general reference." Instead, it stated that the February 1999 Agreement was "supercede[d]." Nor did the Agreement generally incorporate the September 2001 Amendment. Instead, the Agreement incorporated a single, specific provision of the September 2001 Agreement which provided for Thelen to act as "general counsel" to RoNo.

---

[12] RJN, Ex. 10 (Order), at 9:13-20.
[13] *Id.*, at 9:26-11:8.
[14] *Id.*, at 11:9-14.
[15] Thurm Decl., Ex. F (Dec. 2002 Agreement), at ¶ B(2)(g)(iv).

1  Under California law, section B.2.(g)(iv) does not amount to an incorporation of the
2  arbitration clause of the February 1999 Agreement. The December 2002 Agreement lacks a
3  "clear and unequivocal" reference to the arbitration clause of the February 1999 Agreement, and
4  the only reference to the February 1999 Agreement is to replace and supercede it. Accordingly,
5  December 2002 Agreement does not compel Thelen to arbitrate any disputes with Marland. *See*
6  *Cariaga*, 154 F.3d at 1074.

**B.   Marland is barred by claim preclusion and issue preclusion from asserting the continued viability of the arbitration provision in the February 1999 Agreement.**

   **1.   Issue preclusion bars Marland's argument that the December 2002 Agreement "incorporated by reference" the arbitration clause in the February 1999 Agreement.**

Issue preclusion applies to all issues that were "necessarily decided" after a "full and fair opportunity" for litigation. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4416, at 138 (1981). An issue has been necessarily decided when the issue is the logical prerequisite to a finding of the Court. *See Disimone v. Browner*, 121 F.3d 1262, 1268 (9th Cir. 1997) (logical, implicit finding in prior action cannot be subsequently re-litigated); *Westinghouse Elec. Corp. v. General Circuit Breaker*, 106 F.3d 894, 901 (9th Cir. 1997).

Marland provides no support for his conclusory assertion that he lacked a "full and fair opportunity" to litigate the issue of whether the December 2002 Agreement incorporates by reference the arbitration clause of the February 1999 Agreement.[16] Nor can he. Marland actually litigated this issue. The issue was directly framed by the parties pleadings. And Marland deposed Thelen, in the person of Wynne Carvill, asking every which way whether he intended to incorporate the arbitration provision in section B.2.(g)(iv) of the 2002 Agreement.

In its Order granting summary judgment to Thelen, the Court "necessarily decided" that the arbitration clause in the February 1999 Agreement is not incorporated by reference into the December 2002 Agreement. The Court held that the December 2002 Agreement is the only

---

[16] Marland's Opp. Brief re PI, at 13-14.

1  valid and enforceable agreement between Thelen and Marland and that it "replaced 'any and all
2  other agreements' between the parties."[17] Having made that determination, the Court then
3  proceeded to adjudicate the very claims Marland had asserted in the New York Arbitration.
4  Implicit in the Court's Order was a finding that the December 2002 Agreement did not provide
5  for arbitration, whether by reference to the February 1999 Agreement or otherwise. Put another
6  way, if the Court had concluded that the December 2002 Agreement compelled Thelen to
7  arbitrate disputes with Marland, the Court very well might have found the December 2002
8  Agreement valid and enforceable, and then sent the parties back to arbitration to resolve their
9  other disputes. Instead, the Court adjudicated the parties' claims, and denied Thelen's request to
10 enjoin the New York Arbitration as moot because "the parties have litigated their claims here to
11 final resolution" and that the Court's "order eliminates those claims."[18] Because the Court must
12 have necessarily decided that the December 2002 Agreement did not incorporate the arbitration
13 clause from a prior agreement, Marland is precluded from raising the same issue here.[19]

### 2. Claim preclusion bars *any* argument by Marland in this action that the arbitration clause in the February 1999 Agreement remains valid and enforceable.

16 Even if the Court concludes that Marland is not barred by issue preclusion from seeking
17 to re-litigate his "incorporation by reference" argument, Marland is still barred by claim
18 preclusion from re-litigating that theory, or any other theory suggesting that Thelen is required to
19 arbitrate disputes with Marland.

20 Claim preclusion prevents a party from re-litigating a claim, defense or theory that was
21 pled *or could have been pled* in a prior action when (1) the rights or interests established in the

---

[17] RJN, Ex. 10 (Order), at 54:2-3.

[18] *Id.*, at 56:20-22.

[19] Even if the arbitration clause of the February 1999 Agreement applies here—and it does not—Marland has clearly waived his right to assert it. Examining whether a party has waived a right to arbitration involves a three-factor test: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986). Here, Marland clearly believed he had a right to compel arbitration, acted inconsistent with that right by asking the Court to adjudicate his claims, and has prejudiced Thelen by trying to compel it to participate in an arbitration involving the same claims the Court has already resolved.

1  prior judgment would be destroyed or impaired by prosecution of the second action; (2)
2  substantially the same evidence is presented in the two actions; (3) the two suits involve
3  infringement of the same right; and (4) the two suits arise out of the same transactional nucleus
4  of facts. *Costantini v. Trans World Airlines*, 681 F. 2d 1199, 1201-02 (9th Cir. 1982); *see also*
5  *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 988-9 (9th Cir. 2005) (holding that new
6  theory not raised in prior action is barred by claim preclusion where theory relates to claim
7  previously raised); 18 Wright, Miller & Cooper, *Federal Practice and Procedure*, §4415 (fn. 44)
8  (same).

9      Marland asserts that claim preclusion does not apply here, but fails to provide any
10 supporting explanation.  He has not analyzed any of the relevant factors or attempted to
11 distinguish Thelen's application of them.[20]  The law fully supports Thelen's claim preclusion
12 argument.

13     There is no question that all of Marland's theories for compelling Thelen to arbitrate
14 disputes with Marland relate to the same claims and implicate the same rights at issue in *Thelen*
15 *v. Marland I*.  Thelen filed the first action for the very purpose of halting the New York
16 Arbitration.  Thelen argued that the December 2002 Agreement was the only valid agreement
17 between the parties and did not require arbitration of any claims.  In response, Marland was
18 obligated to assert any and all theories that he believed entitled him to arbitrate any disputes with
19 Thelen.  Allowing Marland to argue in this action that the February 1999 arbitration clause
20 survived the signing of the December 2002 Agreement would lead to duplicative and
21 burdensome litigation, and undermine the Court's Order in *Thelen v. Marland I*.  *Mpoyo*, 430
22 F.3d at 989; *Costantini*, 681 F. 2d at 1201-02.

23 **C.    Marland's other arguments are irrelevant.**

24     Although he concedes that it is irrelevant to the instant motion, Marland argues that
25 Thelen has no basis for withholding the $612,500 it owed to the European Counsel, in light of
26 the Court's finding that the December 2002 Agreement is valid and enforceable.  But Marland is

---

[20] Marland's Opp. Brief re PI, at 13-14.

1  appealing that ruling, and continues to contest the validity of the 2002 Agreement.  Therefore,
2  the amount Thelen owes European Counsel, if anything, is in dispute.  Under section B.2.(b) of
3  the December 2002 Agreement, Thelen may withhold any payment of any amount in dispute.[21]
4      If the Ninth Circuit were to overturn the Court's finding that the December 2002
5  Agreement is valid, and remand the case to this Court, Thelen's counter-counterclaims would
6  again be at issue.  In that instance, the trier of fact would determine how the attorneys fees paid
7  by the Department of Insurance to Thelen—of which Marland has already received $19 million
8  through his Swiss bank account—should be apportioned, in the absence of a binding agreement
9  between the parties.  Marland argues that Thelen waived its counter-counterclaims because the
10 Court denied them as moot and Thelen did not file a conditional cross-appeal.  Marland is wrong.
11 The Ninth Circuit disfavors conditional cross-appeals, and requires them only in the limited
12 circumstances where the party in whose favor judgment is entered seeks to enlarge its rights
13 beyond those afforded by the district court's judgment.  *Lee v. Burlington Northern Santa Fe Ry.*
14 *Co.*, 245 F.3d 1102, 1107 (9th Cir. 2001).

### III.  CONCLUSION

For the foregoing reasons, Thelen respectfully requests that this Court enter a preliminary injunction prohibiting Marland from proceeding with the New York arbitration.

Dated:  December 6, 2007                  KEKER & VAN NEST, LLP

By:   /s/ Wendy J. Thurm
WENDY J. THURM
Attorneys for Plaintiff
THELEN REID BROWN RAYSMAN &
STEINER LLP

---

[21] *See* Thurm Decl., Ex. F (Dec. 2002 Agreement), ¶ B.2.(b).