1   DONALD W. CARLSON [Bar No.: 79258] dcarlson@ccplaw.com
    GUY D. CALLADINE [Bar No.: 99431] gcalladine@ccplaw.com
2   CARLSON, CALLADINE & PETERSON LLP
    353 Sacramento Street, 16th Floor
3   San Francisco, California 94111
    Telephone:    (415) 391-3911
4   Facsimile:    (415) 391-3898

5   ANDREW W. HAYES (*pro hac vice*)
    HAYES & MALONEY LLP
6   1 Rockefeller Plaza, Suite 1005
    New York, New York 10020
7   Telephone:    (212) 554-3120
    Facsimile:    (212) 554-3121

8
    Attorneys for Defendant
9   FRANÇOIS MARLAND

10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13

14  THELEN REID BROWN RAYSMAN &          )   Case No.:      C-07-5663 VRW
    STEINER LLP,                         )
15                                       )   **MARLAND'S RESPONSE TO ORDER
                                         )   TO SHOW CAUSE**
                              Plaintiff, )
16                                       )
          v.                             )
17                                       )
    FRANÇOIS MARLAND,                    )
18                                       )
                             Defendant.  )
19

20

21        In response to the Court's Order to Show Cause, Marland respectfully submits that there are

22  two reasons why the Court cannot enter a final judgment dismissing this action, and one reason

23  why it should not: (1) the Court has not adjudicated all of Thelen's claims; (2) Marland has

24  counterclaims to Thelen's claims, which Marland intends to assert in this action; and (3) the

25  Court's preliminary injunction ruling ignored controlling Supreme Court precedent by conflating

26  the analysis of whether the arbitration clause in the parties' first agreement was incorporated into

27  the second agreement with the question of whether Marland's claim for breach of duties arising

28  under the initial, terminated agreement (which had an arbitration clause) were arbitrable.

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

I.    The Court Has Not Fully Adjudicated Thelen's Claims.

Under Fed. R. Civ. P. 54(b), the Court can enter a final judgment on "one or more but fewer than all of the claims" in an action only upon "an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Marland understands that the Court's proposed "final judgment" is intended to be a complete and final judgment, not a partial judgment. However, while the Court has now issued a preliminary injunction based on one of Thelen's five claims, that is not a permanent injunction, and the Court has not adjudicated any of Thelen's other claims. A "final judgment" would thus be a misnomer, creating ambiguity regarding the merits of Thelen's other claims that will only complicate any appeal of the injunction itself.

Thelen here chose to assert *six* claims for relief; in addition to its claim for declaratory and injunctive relief based on the purported lack of any enforceable arbitration agreement, it also sought a judicial determination that Marland was barred from arbitrating claims that (according to Thelen's vaguely-worded complaint) were previously litigated, or barred by the doctrines of issue preclusion, claim preclusion, and estoppel. As long as those additional claims remain pending, however vaguely pled, the Court cannot enter a "final judgment" disposing of the entire action.

II.    Marland Has Counterclaims to Thelen's Claims.

The Court also cannot enter a final judgment because Marland has counterclaims that he needs to assert in this action – the same claims that the Court has enjoined Marland from arbitrating, one of which is indisputably a claim that was *not* asserted in the pleadings in *Thelen v. Marland I*. If the Court's injunction is affirmed on appeal, Marland must either assert those claims in this action or risk a finding that he has waived those claims.

Having tried unsuccessfully to litigate his claim that Thelen's appearance in opposition to its own former client was a major breach of fiduciary duty for which Thelen should forfeit its fee, Marland sought to arbitrate that claim, and the following section shows why the Court's decision regarding the 2002 Agreement does not support the conclusion that Marland cannot arbitrate claims arising under obligations created by the 1999 Agreement. Marland also sought to arbitrate

2

1   his claim that Thelen was required to pay over the over $612,500 due to the European Counsel,

2   regardless of the pendency of Marland's appeal.

3        The alternative to asserting a counterclaim demanding payment of those funds is simply to

4   rely on Thelen's good graces to pay over the funds if it prevails on appeal.  There are four reasons

5   why this is inadequate:

6        (1) Thelen has already repudiated its express, written undertaking to this Court once,

7        (2) Thelen's counsel's statement at the beginning of the November hearing on Thelen's

8   TRO application (stating that Thelen's position was that Marland was *not* entitled to even the 35%

9   of Thelen's fee) reflected – albeit unintentionally – a continuing hostility to paying even amounts

10  that Thelen admits it owes;

11       (3) no party should be forced to forego its right to seek an enforceable judgment simply

12  because the other side has put the money in a segregated account, and

13       (4) even apart from the fact that it has repudiated its prior representations to the Court,

14  Thelen's stated reasons for continuing to withhold the funds make absolutely no sense:  as stated

15  in Thelen's own brief, the "dispute" about the funds arises out of Marland's appeal of the Court's

16  denial of his request that Thelen pay over the funds, and this dispute *entitles* Thelen to withhold

17  the funds, under the terms of the 2002 Agreement.  (Docket No. 24 at 12:24-13:3).  In other

18  words, Thelen is entitled to withhold the money because Marland is demanding that Thelen pay it.

19  If Thelen is willing to withhold the money now based on such absurd "logic", there is no telling

20  what new excuse it may latch onto at some point in the future to play more games with money that

21  it owes to its former client.

22       In short, if the Court is correct that Marland is unable to arbitrate either of his two claims

23  highlighted in his amended demand for arbitration, then they must be asserted here, as

24  counterclaims, at the risk of waiver.

25   III. <u>The Court's Preliminary Injunction Analysis Ignored Controlling Supreme Court</u>

26        <u>Precedent and Conflated the Analysis of Marland's Two Main Claims.</u>

27       Marland does not understand the Court's Order to Show Cause as requiring Marland to re-

28  assert his prior legal arguments to preserve them for appeal.  However, there is one specific point

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

3

CARLSON CALLADINE & PETERSON LLP
353 SACRAMENTO STREET
16TH FLOOR
San Francisco, CA 94111

from Marland's response to Thelen's preliminary injunction motion which we respectfully believe the Court did not properly consider, and which upon due consideration – either now or after the opportunity to lay out the facts in detail, from discovery – should lead the Court to realize that it erred in holding that there is no enforceable arbitration agreement between the parties.

Specifically, the Court's preliminary injunction decision focused on whether the arbitration agreement in the 1999 Attorney-Client Agreement was *incorporated into* the 2002 Amendment to Agreement to Associate Counsel (see docket No. 27 at 7:21-8:1). This is not the same thing as deciding whether the 2002 Agreement *rescinded* the arbitration clause in the 1999 Agreement.

The Court's preliminary injunction decision does not appear to have addressed the latter question; instead, the Court seems to have assumed that the termination of the arbitration agreement (as the Court found) by the 2002 Amendment necessarily precludes Marland from arbitrating any claims, even claims arising under obligations created by the 1999 Agreement. This tacit conclusion is directly contrary to Supreme Court precedent, first stated in *Nolde Brothers, Inc. v. Local No. 358, Bakery and Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 253-255, 97 S.Ct. 1067, 1073-74 (1977), and repeated in later cases in this and other courts.

Here, Thelen does not appear to dispute that Marland's claim for breach of fiduciary duty arises from the attorney-client relationship created by the 1999 Attorney-Client Agreement. Given *Nolde Brothers*' holding that grievances based on events *after* the contract's termination are still subject to arbitration so long as the obligations at issue arise under the terminated contract, it should be irrelevant that the 2002 amendment terminated the arbitration agreement in the 1999 Agreement.

### Conclusion

Because the 1999 arbitration agreement was never rescinded, the Court should reconsider its holding that Marland cannot arbitrate his claim that Thelen breached its duties under the 1999 Agreement when it appeared in opposition to its former client. Even if the Court declines to reconsider that conclusion, it cannot enter judgment at this time because it has not adjudicated all of Thelen's claims, nor has Marland had a chance to litigate his counterclaims.

Respectfully submitted,

4

Dated:  December 20, 2007

CARLSON, CALLADINE & PETERSON LLP
HAYES & HARDY LLP

By: _Andrew W. Hayes_
ANDREW W. HAYES

Attorneys for Defendant
FRANÇOIS MARLAND

MARLAND'S RESPONSE TO ORDER TO SHOW CAUSE

CASE NO.: C-07-5663 VRW