# EXHIBIT A

1

```
 1                  UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF CALIFORNIA

 3                                          COPY

 4   THELEN REID, BROWN, RAYSMAN     )

 5   AND STEINER LLP,                )

 6                  PLAINTIFF,       )

 7   VERSUS                          )   CASE NO. C07-5663VRW

 8                                   )   NOVEMBER 15, 2007

 9   FRANCOIS MARLAND,               )   SAN FRANCISCO, CALIFORNIA

10                  DEFENDANT.       )

11   _____  )

12             BEFORE THE HONORABLE VAUGHN R. WALKER

13             UNITED STATES DISTRICT COURT JUDGE

14   APPEARANCES:

15   FOR PLAINTIFF:    KEKER & VAN NEST LLP

16                     BY:  WENDY THURM, ATTORNEY AT LAW

17                     710 SANSOME STREET

18                     SAN FRANCISCO, CALIFORNIA 94111

19

20   FOR DEFENDANT:    HAYES AND MALONEY LLP

21                     BY:  ANDREW HAYES, ESQ. (VIA TELEPHONE)

22                     1 ROCKEFELLER PLAZA, SUITE 1005

23                     NEW YORK, NEW YORK 10020

24

25   REPORTED BY:    JUANITA GONZALEZ, CSR NO. 3003
```

1          THE CLERK:  CALLING C07-5663, THELEN REID VERSUS

2  MARLAND.

3          YOUR APPEARANCES, PLEASE.

4          MS. THURM:  GOOD AFTERNOON.  WENDY THURM,

5  KEKER VAN NEST, FOR THE THELEN REID FIRM.

6          THE COURT:  GOOD AFTERNOON, MISS THURM.

7          MR. HAYES:  GOOD AFTERNOON.  ANDREW HAYES FOR MR.

8  MARLAND.

9          THE COURT:  GOOD AFTERNOON, MR. HAYES.

10          WHERE DO WE STAND IN CONNECTION WITH THE ARBITRATION?

11  WHAT'S THE LATEST DEVELOPMENTS, IF ANY?

12          MR. HAYES:  I'M NOT SURE OF ANY DEVELOPMENTS BEYOND

13  WHAT'S IN THE PAPERS.  THELEN'S REPLY INCLUDES A LETTER FROM THE

14  ICDR INDICATING THAT AFTER THE T.R.O. TODAY, THEY'RE GOING TO GO

15  AHEAD AND NAME THE ARBITRATOR WHO WAS THE RESULT OF OUR MATCHING

16  PROCESS EARLY '06.

17          THE COURT:  MR. HAYES, THE REPORTER TELLS ME THAT

18  YOU'RE GOING TO HAVE TO SPEAK UP.  WE'LL TURN UP THE VOLUME, BUT

19  GET NEAR THE SPEAKER AND SPEAK UP.

20          MR. HAYES:  YES, YOUR HONOR.  I'M NOT ON SPEAKER PHONE,

21  BUT I WILL TRY TO.  IS THIS A GOOD LEVEL?

22          THE COURT:  YES.

23          MR. HAYES:  SHOULD I REPEAT?

24          THE COURT:  YES, IF YOU WOULD, SIR.

25          MR. HAYES:  THELEN'S REPLY PAPERS CONTAIN THE MOST

1  RECENT CORRESPONDENCE WE HAD FROM THE ICDR.  IT STATES THAT

2  AFTER THE T.R.O. TODAY, THEY WILL PROCEED TO APPOINT THE

3  ARBITRATOR, WHO IS THE PERSON THAT RESULTED FROM THE STRIKE AND

4  MATCH PROCESS WE HAD IN EARLY 2006.

5        THE COURT:  WELL, THE QUESTION THAT OCCURS TO ME FIRST

6  OFF IS WHY, UNDER THE CIRCUMSTANCES, THE PARTIES DON'T SIMPLY

7  STIPULATE TO A STAY OF THE ARBITRATION PENDING MARLAND'S APPEAL

8  OF THE COURT'S DECISION.

9        MR. HAYES:  WITH THE ONE DIFFERENCE FROM WHAT YOUR

10 HONOR JUST SAID; THAT THELEN SHOULD ALSO DO WHAT IT TOLD THE

11 COURT IT WAS GOING TO DO, WHICH IS PAY THE $612,500 PLUS

12 INTEREST.  I SAID TO THELEN'S COUNSEL IN THE ARBITRATION, THAT

13 IF THEY WOULD DO THAT, WE COULD WORK OUT A STIPULATION THAT

14 WOULD STAY THE ARBITRATION IN A WAY THAT DIDN'T PREJUDICE

15 MARLAND, WHATEVER HAPPENED ON THE APPEAL.

16        THE COURT:  DO YOU HAVE AN OFFER, MISS THURM?

17        MS. THURM:  WELL, THE OFFER IS NOT TO STAY THE

18 ARBITRATION PENDING THE APPEAL.  IT INCLUDES WHAT APPEARS TO BE

19 A CLAIM FOR BREACH OF THE 2002 AGREEMENT THAT MR. HAYES HAS NOW

20 PUT FORWARD AND THAT WE INITIATED ARBITRATION, AND WE DON'T

21 BELIEVE THAT MR. MARLAND IS ENTITLED TO THAT MONEY UNDER THE

22 TERMS OF THE 2002 AGREEMENT; SO WE BELIEVE HE'S ASSERTED IT IN

23 AN ARBITRATION, AND WE BELIEVE THERE IS NO ARBITRATION CLAUSE,

24 AND, THEREFORE, THE ARBITRATION ENTITY THE TRIPLE A OF THE ICDR,

25 AND THE ARBITRATOR, HAS NO AUTHORITY TO DO ANYTHING.  THAT'S WHY

1  WE'VE COME BACK TO THIS COURT.

2         WE ALSO BELIEVE -- AND IT'S EVIDENCED BY MR. MARLAND'S

3  APPELLATE PAPERS TO THE NINTH CIRCUIT, THAT HE HAS ALREADY

4  RAISED THAT AS A QUESTION ON APPEAL TO THE NINTH CIRCUIT; SO,

5  THEREFORE, THERE IS --

6         THE COURT:  RAISED WHAT?

7         MS. THURM:  MR. MARLAND, IN HIS NOTICE OF APPEAL AND IN

8  HIS DOCKETING STATEMENT TO THE NINTH CIRCUIT, HAS CLAIMED AS ONE

9  BASIS FOR ERROR, THE FACT THAT THIS COURT'S AUGUST 1, 2001 ORDER

10 DID NOT IN FACT ORDER THELEN TO PAY THE MONEY THAT MR. HAYES WAS

11 JUST REFERRING TO.  SO IF YOU LOOK AT THE DOCKETING STATEMENT --

12        THE COURT:  DID YOU SAY 2004, OR DID I MISUNDERSTAND

13 YOU?

14        MS. THURM:  I MAY HAVE MISSTATED.  THE COURT'S ORDER OF

15 AUGUST 1, 2007 DOES NOT ORDER THELEN TO PAY MONEY MR. MARLAND

16 SAYS HE IS OWED ON THE 2002 AGREEMENT.  MR. MARLAND HAD APPEALED

17 MANY ASPECTS OF THE AUGUST 1ST ORDER, INCLUDING THAT ASPECT.  SO

18 THE QUESTION OF WHETHER OR NOT THE COURT ERRED WITH RESPECT TO

19 THAT PART OF HIS CLAIMS, IS CURRENTLY PENDING BEFORE THE NINTH

20 CIRCUIT.  SO THERE IS A -- I MEAN -- HIS PROPOSAL TO STAY THE

21 ARBITRATION, EXCEPT FOR A CLAIM THAT HE WANTS TO EITHER LITIGATE

22 IN ANOTHER FORM OR OTHERWISE, IS NOT A REAL OFFER TO STAY THE

23 ARBITRATION.

24        MR. HAYES:  YOUR HONOR, MISS THURM JUST SAID SOMETHING

25 THAT IS EITHER ANOTHER MISTAKE, UNINTENTIONALLY, OR THEY'VE JUST

1  CHANGED THEIR POSITION, AGAIN, TO SOMETHING THEY HAVE NEVER

2  BEFORE ASSERTED.  MISS THURM JUST SAID IT'S THELEN'S POSITION

3  THAT MARLAND IS NOT ENTITLED TO THE $612,000 UNDER THE 2002

4  AGREEMENT.  I THINK THAT WAS A MISTAKE.  MISS THURM CAN TELL ME

5  IF IT WAS OR IT WASN'T.

6        MS. THURM:  I DON'T THINK THAT'S WHAT I SAID.  THE

7  DISPUTE ARISES BECAUSE MR. MARLAND IS CONTINUING TO ASSERT, BY

8  VIRTUE OF HIS APPEAL TO THE NINTH CIRCUIT, THAT THAT AGREEMENT

9  IS NOT VALID.

10        YOU MIGHT RECALL WHEN WE WERE BEFORE THE COURT IN THE

11  PRIOR CASE, THAT THELEN HAS A SERIES OF COUNTER-COUNTERCLAIMS

12  THAT WAS SEEKING A RETURN OF THE 19 MILLION THAT HAD ALREADY

13  BEEN PAID UNDER THE THEORY THAT IF AN AMOUNT OF MONEY HAS BEEN

14  PAID UNDER AN AGREEMENT THAT IS LATER HELD TO BE INVALID, THERE

15  WOULD HAVE NEEDED TO BE A DETERMINATION, HAD WE GOTTEN THAT FAR

16  IN THE EARLIER CASE, AS TO HOW THE AMOUNT OF MONEY PAID BY THE

17  DEPARTMENT OF INSURANCE OUGHT TO BE DISTRIBUTED BETWEEN THELEN

18  AND MARLAND.

19        IF MR. MARLAND WANTS TO DROP HIS APPEAL AND ACCEPT THE

20  FACT THAT THIS COURT HAS FOUND THAT 2002 AGREEMENT VALID, THELEN

21  IS PREPARED TO MEET ALL OF ITS OBLIGATIONS UNDER THAT AGREEMENT;

22  BUT THAT'S NOT THE POSITION HE IS TAKING.

23        THE COURT:  WELL, IF THE COURT'S DECISION IN AUGUST OF

24  2007 IS CORRECT, BECAUSE THERE IS NO ARBITRATION PROVISION IN

25  THE `2002 AGREEMENT, THEN, OBVIOUSLY, THERE IS NO GROUNDS TO

1    PURSUE AN ARBITRATION.

2           MS. THURM:  THAT'S OUR POSITION.

3           THE COURT:  IN THE EVENT THAT THE COURT IS IN ERROR,

4    AND THE NINTH CIRCUIT WILL TELL US WHETHER THE COURT IS IN ERROR

5    OR NOT, AND THERE IS VITALITY LEFT IN THE 1999 AGREEMENT, IT'S

6    VERY POSSIBLE THERE IS GROUNDS FOR AN ARBITRATION.  WHAT I DON'T

7    UNDERSTAND IS WHY THE PARTIES AREN'T WILLING TO STIPULATE TO

8    STAY THE ARBITRATION PENDING THE OUTCOME OF THE APPEAL UNDER THE

9    GUIDANCE THE NINTH CIRCUIT WILL PROVIDE US.

10          MS. THURM:  WE WOULD BE WILLING TO DO THAT, BUT NOT

11   WITH THE CARVE-OUT THAT MR. HAYES HAS SUGGESTED, WHICH IS THAT

12   HE WANTS AN OPPORTUNITY TO PURSUE IN SOME FORM NOW  -- I WOULD

13   TAKE IT EITHER THIS FORM OR SOME OTHER FORM THAT DOESN'T INCLUDE

14   THE NINTH CIRCUIT, SOME BREACH OF CONTRACT CLAIM OR SOME OTHER

15   CLAIM FOR PAYMENT OF THIS AMOUNT OF MONEY WHICH THELEN BELIEVES

16   IT APPROPRIATELY CAN WITHHOLD NOW BECAUSE MR. MARLAND CONTINUES

17   TO CONTEST THE VALIDITY OF THE AGREEMENT THAT THIS COURT HAS

18   FOUND VALID.

19          THE COURT:  HE IS CERTAINLY ENTITLED TO PURSUE HIS

20   APPEAL AND TO MAKE THE ARGUMENTS THAT THE COURT WAS IN ERROR,

21   AND I'M SURE HE WILL DO SO VIGOROUSLY.  BUT THAT REALLY DOESN'T

22   ANSWER THE QUESTION WHY WE NEED TO GO THROUGH -- WHY IT'S EVEN A

23   LIVE ISSUE.

24          MR. HAYES:  YOUR HONOR, MISS THURM EXPLAINED THE

25   POSITION THREE TIMES.  I WOULD LIKE TO RESPOND ONCE.  I POINT

1  OUT THAT SHE JUST SAID SOMETHING THAT CONTRADICTS EVERYTHING

2  THEY SAID BEFORE.  I WOULD LIKE TO RESPOND ONCE.

3          THELEN HAS CROSS-APPEALED THAT ISSUE.  THOSE

4  COUNTER-COUNTERCLAIMS ARE GONE.  NOW, THELEN TOLD YOUR HONOR IN

5  A BRIEF MISS THURM SIGNED, THAT IF YOU GRANTED THEIR

6  CROSS-MOTION, THEY WOULD PROMPTLY PAY THE MONEY TO MR. MARLAND.

7  THERE IS NO FOOTNOTE THERE THAT SAYS, WELL, OF COURSE, IF

8  MR. MARLAND APPEALS, ALL BETS ARE OFF.  THERE WAS NOTHING

9  ABOUT, WELL, YOU KNOW, OF COURSE, WE MIGHT CROSS-APPEAL --

10  NOTHING.

11          SHE MADE A REPRESENTATION, YOUR HONOR, THAT I THINK WE

12  CAN PRESUME THE COURT TOOK HER AT HER WORD IN REACHING ITS

13  RULING.  MY CLIENT IS NOT PREPARED TO SIT BY HAVING SOMETHING WE

14  HOPE WE DON'T HAVE TO GET INTO.  WE HAD A LONG EXCHANGE WITH

15  MISS THURM.  SHE WOULDN'T TELL US THEY ARE GOING TO PUT THE

16  MONEY INTO ESCROW, SORT OF, KIND OF.  SHE WON'T TELL US WHERE.

17  SHE WON'T TELL US WHETHER IT'S A CLIENT ACCOUNT.  WE HAD A LOT

18  OF FUN WITH THAT.  AND HAVING MISREPRESENTATION TO THE COURT

19  ABOUT WHAT THEY'RE GOING TO DO PROMPTLY AFTER YOU GAVE

20  SOMETHING, AND THEN YOU DID SOMETHING, AND THEY DON'T DO IT.

21  IT'S SOMETHING MR. MARLAND BELIEVES VERY FIRMLY HE SHOULD PURSUE

22  RIGHT AWAY.

23          HOWEVER, I'VE MADE CLEAR TO THEM THAT IF THEY DON'T TRY

24  TO EXTORT THAT MONEY AS LEVERAGE FOR SOME GREATER SETTLEMENT AND

25  JUST DO WHAT THEY TOLD THE COURT THEY WOULD DO, THEN WE CAN WORK

1  OUT A STIPULATION OF MARLAND'S OTHER CLAIMS.

2        MS. THURM:  MAY I RESPOND, YOUR HONOR?

3        THE COURT:  I THINK MR. HAYES HAS SUBSIDED, SO YOU MAY

4  PROCEED.

5        MS. THURM:  THELEN DID NOT FILE A CROSS-APPEAL, NOR DID

6  THELEN THINK THAT ONE WAS NECESSARY OR APPROPRIATE.  THE

7  COUNTER-COUNTERCLAIMS WERE DISMISSED AS MOOT IN THE COURT'S

8  AUGUST 1, 2007 ORDER BECAUSE THE COUNTER-COUNTERCLAIMS WERE

9  CONDITIONAL ON A DETERMINATION BY THE COURT THAT THE '02

10  AGREEMENT WAS INVALID.  IF THE COURT'S FINDING THAT THE

11  AGREEMENT IS VALID IS REVERSED FOR ANY REASON BY THE NINTH

12  CIRCUIT, I AM NOT AWARE OF ANY AUTHORITY WHICH WOULD SUGGEST

13  CLAIMS DISMISSED AS MOOT WOULD NOT  -- MY UNDERSTANDING IS THAT

14  THEY WOULD, IN A SENSE, COME BACK TO LIFE AS CONDITIONAL

15  COUNTERCLAIMS, SHOULD WE END UP IN DISTRICT COURT FOLLOWING

16  APPEAL.  SO THELEN DID NOT BELIEVE IT WAS NECESSARY OR

17  APPROPRIATE TO, AND MR. HAYES HAS DECIDED TO SUGGEST THAT

18  THELEN'S FAILURE TO DO THAT WAS A WAIVER.

19        THE COURT:  WELL, MR. HAYES CONTENDS THAT YOU TOLD THE

20  COURT THAT YOU WERE, IN THE EVENT THE COUNTERCLAIMS WERE

21  DISMISSED, GOING TO -- YOUR CLIENT WAS GOING TO PAY THE

22  $600,000.

23        MR. HAYES:  COUNTER-COUNTERCLAIMS, JUST TO CLARIFY.

24  THELEN'S CROSS-MOTION FOR SUMMARY JUDGEMENT.

25        THE COURT:  WHERE IS THAT REPRESENTATION?

1    MR. HAYES:  IT'S IN THELEN'S BRIEF, AND IT'S EXHIBIT

2  ONE TO MY DECLARATION, PAGES 29 TO 30 OF THELEN'S OPPOSITION TO

3  MARLAND'S MOTION FOR SUMMARY JUDGEMENT, SECTION D, BEGINNING AT

4  THE BOTTOM OF PAGE 29, LINE 25.  QUOTE -- THIS IS AFTER

5  MARLAND'S ARGUMENT ON A PARTICULAR POINT.

6    THE COURT:  TALKING ABOUT YOUR DECLARATION HERE?

7    MR. HAYES:  YES.  I ATTACHED THESE PAGES AS AN EXCERPT

8  FROM THEIR BRIEF TO MY DECLARATION HERE, FOR THE COURT'S

9  CONVENIENCE.

10    THIS GETS BACK TO MISS THURM'S APPARENT MISTAKE A FEW

11  MOMENTS AGO.  THELEN'S POSITION IS THAT MARLAND IS ENTITLED TO

12  NO MORE THAN THE 35 PERCENT, BUT TO THE 35 PERCENT.  THAT HAS

13  BEEN THEIR POSITION ALL ALONG; SO THE FACT THAT MARLAND IS

14  APPEALING SOME OTHER ISSUE ON SOME OTHER CLAIM, JUST DOESN'T

15  ENTITLE THEM TO SAY, WELL, WE'VE GOT YOUR MONEY, SO WE'RE GOING

16  TO SIT ON IT.  IT'S JUST UNCONSCIONABLE.  EVEN APART FROM THE

17  FACT THAT THEY TOLD YOU RIGHT THERE IN THEIR BRIEF, THERE IS NO

18  FOOTNOTE, THERE'S NO HEDGING, THERE'S NO WAFFLING, THERE'S NO,

19  GEE, HE'S APPEALING, SO WE'RE GOING TO WITHHOLD THIS MONEY.

20  IT'S JUST BULLYING.

21    MS. THURM:  MR. HAYES ALSO TOLD THE COURT THAT THE

22  COURT DIDN'T NEED TO REACH THE QUESTION OF WHETHER AN INJUNCTION

23  AND THE ARBITRATION WAS NECESSARY, BECAUSE HE WAS LITIGATING ALL

24  THIS CLAIMS IN THIS COURT.  WHY WE'RE HAVING TO DEAL WITH THE

25  ICDR REMAINS TO BE SEEN.  SO LET ME JUST RESPOND.

1      THELEN'S POSITION HAS BEEN, AND MR. HAYES IS AWARE OF

2  THIS, THAT WHILE MR. MARLAND CONTESTS THE VALIDITY OF THE

3  '02 AGREEMENT, THELEN IS NOT GOING TO CONTINUE TO PAY MONEY TO

4  HIM IN SWITZERLAND THAT THELEN REALLY HAS NO REALISTIC WAY OF

5  GETTING BACK SHOULD THE EVENTS THAT WERE POTENTIAL TO TAKE

6  PLACE, COULD TAKE PLACE FOLLOWING THE NINTH CIRCUIT'S APPEAL.

7  THAT IS, THELEN HAS ALREADY PAID MARLAND 19 MILLION DOLLARS

8  PURSUANT TO AN AGREEMENT HE SAYS IS INVALID.  THE

9  COUNTER-COUNTERCLAIMS WAS PRESERVING THELEN'S RIGHT TO SAY, IF

10 THE '02 AGREEMENT IS INVALID, THEN THE TRIER OF FACT HAS TO

11 FIGURE OUT HOW TO DISTRIBUTE THAT MONEY.

12      THE COURT:  WHERE IS THE MONEY BEING HELD?

13      MS. THURM:  IN A SEPARATE ACCOUNT, A SEPARATE NUMBERED

14 ACCOUNT THAT THELEN HAS, NOT IN THE GENERAL ACCOUNT.  IT'S IN AN

15 INTEREST BEARING ACCOUNT.  I DON'T KNOW WHAT THEY CALL IT.  THAT

16 INTEREST IS BEING HELD FOR THE BENEFIT OF MR. MARLAND, AND NOT

17 FOR THE -- IT'S NOT A CLIENT -- YOU KNOW WHAT I MEAN -- THAT THE

18 STATE BAR HAS REQUIREMENTS --

19      THE COURT:  NOT ALL INTEREST ON CLIENT TRUST ACCOUNTS

20 GOES TO THE --

21      MS. THURM:  THIS INTEREST IS ACCRUING.

22      THE COURT:  INTEREST THEY CAN'T ATTRIBUTE TO ANYBODY.

23      MS. THURM:  THERE WAS A SEPARATE ACCOUNT SET UP WITH A

24 SEPARATE NUMBER AMONG THE ACCOUNTS THAT THELEN HAS WITH ITS

25 BANK.  INTEREST HAS BEEN ACCRUING, AND THE INTEREST CONTINUES TO

1  ACCRUE.

2       I THINK MR. HAYES ASKED THAT BEFORE HE STARTED TO

3  REINSTITUTE THE ARBITRATION PROCEEDINGS, HOW MUCH WAS IN THERE.

4  I FORGET THE NUMBER, BUT IT WENT FROM 612,500 TO SOMETHING LIKE

5  640,000.  I DON'T HAVE THE EXACT NUMBER.

6       AGAIN, YOUR HONOR, MR HAYES HAS TOLD THE NINTH CIRCUIT

7  THAT THE COURT ERRED BY NOT ORDERING US TO PAY THAT, SO HE HAS

8  ALREADY MADE A CLAIM TO THE NINTH CIRCUIT THAT, AMONG OTHER

9  ERRORS, THE COURT ERRED BY NOT IN FACT ORDERING US TO PAY THE

10  MONEY.  SO I DON'T KNOW HOW HE CAN BE IN THIS COURT NOW, HAVING

11  TOLD THE NINTH CIRCUIT THAT ONE OF THE ISSUES HE IS GOING TO

12  SEEK REVIEW ON AND REVERSAL ON IS THE FACT THAT THE COURT DIDN'T

13  ORDER US TO PAY IT, TO SUGGEST THAT WE -- OBLIGATED TO PAY IT.

14       MR HAYES:  MAY I RESPOND?

15       THE COURT:  FINE.

16       MR. HAYES:  THE FACT THAT WE'RE CLAIMING YOU ERRED IN

17  NOT ORDERING THEM TO DO SOMETHING, DOES NOT MEAN THAT THEY DON'T

18  HAVE AN OBLIGATION TO DO IT, GIVEN THE OTHER RULINGS YOU MADE

19  WHEN YOU REJECTED OUR OTHER CLAIMS.  I MEAN, YOU HELD THE 2002

20  AGREEMENT AS VALID.  THAT WAS THEIR POSITION.  AND UNDER THAT

21  AGREEMENT THEY HAD TO PAY THIS MONEY WITHIN 10 BUSINESS DAYS OF

22  RECEIVING IT, AND IF THERE IS ANY DISPUTE ABOUT ANY PORTION OF

23  THE MONEY, THEY HAVE TO PAY THE UNDISPUTED PORTION.

24       THEY TURNED THAT LANGUAGE ON ITS HEAD TO SAY THAT WE

25  HAVE THESE CLAIMS -- THEY WITHHELD THE MONEY BEFORE THEY

1  ASSERTED THE COUNTER-COUNTERCLAIMS, MONTHS BEFORE.  THEN THEY

2  ASSERTED THE COUNTER-COUNTERCLAIMS.  NOW THEY'RE DISMISSED, AND

3  WE CAN ALL -- THIS IS A MATTER OF THEORETICAL POSSIBILITY --

4  UNDERSTAND THAT THE NINTH CIRCUIT DOESN'T GET TO REINSTATE THE

5  COUNTER-COUNTERCLAIMS.  THE NINTH CIRCUIT MAY AFFIRM, THEY MAY

6  REVERSE, THEY MAY DIRECT ENTRY OF SUMMARY JUDGEMENT AGAINST

7  THELEN.  AND I DON'T THINK I HAVE A NEED TO CITE ANY CASES WHY

8  MISS THURM WON'T BE ABLE TO SAY, WAIT A MINUTE.  WE HAVE THESE

9  COUNTERCLAIMS.  WE DIDN'T CROSS-APPEAL, BUT -- YOU KNOW -- DON'T

10 ENTER SUMMARY JUDGEMENT AGAINST US.

11          THE COURT:  WHY ISN'T IT A WAY FOR THE COURT TO

12 PRESERVE THE STATUS QUO HERE, TO ENJOIN THE ARBITRATION,

13 INASMUCH AS THE AMOUNT THAT YOU CONTEND MARLAND IS OWED UNDER

14 THE DECEMBER 2002 AGREEMENT IS IN ESCROW DRAWING INTEREST, AND

15 IN THE EVENT THAT THE COURT'S DECISION IS AFFIRMED, THAT THAT

16 MONEY IS GOING TO BE PAID TO YOUR CLIENT, AND IN THE EVENT THAT

17 THE COURT'S DECISION IS REVERSED  -- AND, OF COURSE, IT DEPENDS

18 -- SUBSEQUENT PROCEEDINGS WILL DEPEND UPON WHAT THE TERMS OF THE

19 REVERSAL ARE, THAT THE CASE COMES BACK HERE AND WE'LL HAVE

20 FURTHER PROCEEDINGS OF SOME KIND OR OTHER?

21          MR. HAYES:  BECAUSE, A, THAT STATUS QUO IS INEVITABLE.

22 B, THERE IS NO LEGAL BASIS FOR THAT.  MIGHT AS WELL PUT THE

23 MONEY IN A NUMBERED ACCOUNT THAT YOU CONTROL OR I CONTROL.

24 THERE'S JUST NO BASIS TO SAY, WELL, THE MONEY IS SOMEWHERE, SO

25 EVERYTHING IS HUNKY-DORY.

1    THE COURT:  WELL, IS THE ISSUE HERE WHERE THE MONEY IS?

2  IF THE MONEY WERE TO BE PLACED IN SOME HANDS, SOME NEUTRAL THIRD

3  PARTY'S HANDS, WOULD THAT SATISFY YOU?

4    MR. HAYES:  NO, YOUR HONOR.  THE ISSUE IS THEY EITHER

5  LIED TO YOU AT THE TIME, OR THEY CHANGED THEIR MIND AFTERWARDS.

6  I GOT A LETTER FROM MR. BERKOWITZ ON MONDAY SAYING THAT MY

7  CLAIM  THAT THELEN HAS REPUDIATED IT'S REPRESENTATION TO THE

8  COURT ABOUT PAYING THE MONEY PROMPTLY, IS FILACEOUS.  THEY WROTE

9  SOMETHING IN A BRIEF TO YOUR HONOR, THAT THEY ARE RENEGING ON.

10    THE FIRST ISSUE, I WOULD THINK, SHOULD BE WHAT IS THEIR

11  BASIS FOR RENEGING.  IT CAN'T BE THAT MARLAND APPEALED.  THERE

12  IS NO HEDGING OR QUALIFICATION OF WHAT THEY WROTE TO THE COURT,

13  AND THEY DIDN'T EVEN BOTHER TO CROSS-APPEAL THEIR ISSUE.  WHEN

14  YOU ASKED ABOUT KEEPING THE STAY, YOUR HONOR -- LET'S BE CLEAR

15  ABOUT THIS.  IF THEY HAD CROSS-APPEALED -- AND MISS THURM TRIED

16  TO TAKE A SHOT AT ME ABOUT WHAT I SAID TO THE COURT PREVIOUSLY

17  ABOUT THE INJUNCTION -- THE ARBITRATION BEING STAYED.  IF THEY

18  HAD CROSS-APPEALED, THEN THE ARBITRATION WOULD HAVE REMAINED

19  STAYED.  THAT'S ALL THEY HAD TO DO.  WHY THEY DIDN'T DO THAT IS

20  BETWEEN THEM AND THEIR MALPRACTICE COUNSEL.  BUT THEY MADE THAT

21  CHOICE, SO HERE WE ARE.

22    THE COURT:  GO AHEAD.

23    MR. HAYES:  YOUR HONOR, LET ME SHIFT A LITTLE BIT.  THE

24  REASON WHY -- MY CLIENT CHOSE TO BE IN ARBITRATION, THELEN

25  SOUGHT TO ENJOIN THAT.  MY CLIENT BELIEVED HE HAD MADE A CHOICE

1  TO THEN PURSUE ALL CLAIMS BEFORE YOUR HONOR.  NOW,

2  INTERESTINGLY, THELEN'S REPLY BRIEF STATES THAT THE PARTIES

3  AGREED TO LITIGATE BEFORE YOUR HONOR CLAIMS REGARDING THE 2002

4  AGREEMENT.

5       THAT IS AN INTERESTING STATEMENT, RIGHT ON PAGE ONE OF

6  THEIR REPLY BRIEF.  IT'S INTERESTING BECAUSE MY RESPONSE TO

7  THEIR EX PARTE APPLICATION NOTED THAT THE COURT'S AUGUST 1ST

8  DECISION DID NOT SPECIFICALLY ADDRESS MARLAND'S CLAIMS FOR

9  THELEN'S BREACH OF LOYALTY IN LATE 2005.  SO THELEN NOW SEEMS TO

10 BE SHIFTING, TAKING THE POSITION THAT THOSE CLAIMS RELATE TO

11 2005 ACTIVITIES WEREN'T LITIGATED BEFORE YOUR HONOR.

12      THAT MAY BE RIGHT.  THE NINTH CIRCUIT MAY FIND THAT IS

13 CORRECT, BUT THEN MY CLIENT IS SAYING, WAIT A MINUTE, NOW WE'RE

14 GOING TO 2008, ALMOST TWO YEARS LATER, AND THIS CLAIM IS JUST

15 SITTING IN LIMBO.  MY CLIENT IS WILLING TO DO THAT IF THELEN AT

16 LEAST PAYS THE MONEY THAT IT CLAIMS IT OWES MY CLIENT.  BUT IT

17 DOESN'T GET TO JUST HOLD ON TO IT BECAUSE IT CAN AND THEN SAY,

18 YOU JUST WAIT FOREVER, FOR THIS CLAIM YOU TRIED TO ARBITRATE TWO

19 YEARS AGO.

20      MS. THURM:  CAN I TAKE THIS BACK TO THE REASON WHY

21 WE'RE HERE TODAY?  BECAUSE WE'VE GOTTEN INTO SOME OF THE MERITS

22 OF THE UNDERLYING CLAIMS MR. MARLAND WANTS TO PURSUE.  WHAT

23 WE'RE HERE FOR IS TO CONFIRM OUR UNDERSTANDING, AND IT SOUNDED

24 LIKE, FROM WHAT THE COURT SAID EARLIER, THAT YOU AGREE THAT THE

25 '02 AGREEMENT IS VALID AND DOES NOT PROVIDE FOR ARBITRATION.

1  YOU INDICATED, WHY COULDN'T THE PARTIES JUST AGREE TO STAY,

2  BECAUSE THAT RULING MIGHT GET OVERTURNED BY THE NINTH CIRCUIT.

3  BUT UNDER FEDERAL LAW, ABSENT A REVERSAL BY THE NINTH CIRCUIT,

4  YOUR ORDER GOVERNS THE PARTIES' CONDUCT.  THE '02 AGREEMENT

5  DOESN'T HAVE AN ARBITRATION PROVISION.  IT REPLACED AND

6  SUPERCEDED A PRIOR AGREEMENT.  SO WHILE THE APPEAL IS PENDING,

7  WE SHOULDN'T HAVE TO CONTEND -- WE CAN GET TO THE MERITS OF

8  WHETHER THERE IS ANOTHER FORUM OR THERE IS AN APPROPRIATE TIME

9  OR WHETHER MR. MARLAND HAS SUBSUMED IN HIS APPEAL TO THE NINTH

10 CIRCUIT SOME OF THE MERITS ISSUES.  BUT ON THE QUESTION OF WHERE

11 WE SHOULD BE --

12        THE COURT:  WELL, ANSWER THE QUESTION MR. HAYES POSED

13 AT THE OUTSET.  AND THAT IS YOUR STATEMENT IN YOUR APRIL 19TH

14 SUBMISSION.

15        QUOTE:  "IF THE COURT GRANTS THELEN'S CROSS-MOTION FOR

16 SUMMARY JUDGEMENT, THELEN WILL PROMPTLY PAY MARLAND $612,500

17 THAT IT IS HOLDING IN ESCROW."

18        YOU DIDN'T SAY, IF THELEN PREVAILS, IF THELEN OBTAINS A

19 FINAL JUDGEMENT.  IT'S "IF THE COURT GRANTS THELEN'S

20 CROSS-MOTION FOR SUMMARY JUDGEMENT".  WELL, THE COURT DID GRANT

21 THELEN'S CROSS-MOTION FOR SUMMARY JUDGEMENT, SO WHY NOT PAY THE

22 612,000 BUCKS?

23        MS. THURM:  I THINK IT'S FAIR TO STATE THAT IS

24 INACCURATE WORDING, YOUR HONOR.

25        THE COURT:  IT IS.

1    MS. THURM:  IT PROBABLY SHOULD HAVE INCLUDED SOME

2 QUALIFICATION, EXPLANATION, TO EXPLAIN HERE MORE THAT THE REASON

3 THE MONEY WAS BEING WITHHELD WAS BECAUSE MR. MARLAND WAS

4 CONTESTING THE VALIDITY OF THE AGREEMENT, AND WHILE HE CONTINUED

5 TO CONTEST IT, THELEN WOULD WAS GOING TO HOLD THE MONEY IN

6 ESCROW.  I RECOGNIZE THAT IT DOESN'T SAY THAT.  NEVERTHELESS,

7 HERE WE ARE.  MR. MARLAND IS CONTINUING TO CONTEST THE '02

8 AGREEMENT.  WE BELIEVE THAT UNDER THE TERMS OF THAT AGREEMENT,

9 THELEN HAS A RIGHT TO HOLD THAT MONEY PENDING THE RESOLUTION OF

10 THAT DISPUTE.

11    THE QUESTION HERE IS, EITHER THAT HAS BEEN SUBSUMED IN

12 YOUR ORDER AND WILL BE TAKEN UP BY THE NINTH CIRCUIT IN LIGHT OF

13 THE DOCKETING STATEMENT THAT MR. MARLAND FILED WITH THE NINTH

14 CIRCUIT, OR IF MR. MARLAND THINKS HE HAS A CLAIM THAT ISN'T

15 GOVERNED BY THE COURT'S ORDER, HE CAN TRY TO PURSUE A BREACH OF

16 CONTRACT CLAIM, BUT HE CAN'T DO SO IN ARBITRATION IN NEWARK,

17 BECAUSE THERE IS NO VALID ARBITRATION AGREEMENT AS IT STANDS

18 RIGHT NOW, BETWEEN THE PARTIES.

19    I RECOGNIZE THE COURT HAS DETERMINED THAT THE

20 COURT -- IT WAS MOOT -- THE COURT DIDN'T NEED TO THEN ENJOIN THE

21 ARBITRATION; AND WE DIDN'T APPEAL THAT BECAUSE WE AGREED THAT

22 WHAT HAD BEEN LITIGATED HAD BEEN RESOLVED AND WE DIDN'T THINK WE

23 WOULD BE IN A POSITION OF HAVING STAFF MEMBERS OF THE ARBITRAL

24 PANEL READ YOUR ORDER AND CONCLUDE, WELL, WE'LL LET AN

25 ARBITRATION FIGURE THAT OUT.  THAT'S WHY WE'RE BACK HERE.

1        BUT IF MR. MARLAND HAS A BREACH CLAIM, IT'S EITHER

2   SUBSUMED IN WHAT HE'S ALREADY BROUGHT TO THE NINTH CIRCUIT, OR

3   HE CAN TRY AND PURSUE THAT, AND WE CAN LITIGATE AS TO

4   WHETHER IT'S BROUGHT BY AN ISSUE OF COLLATERAL ESTOPPEL, BUT HE

5   IS CONTINUING TO SAY THAT THE '02 AGREEMENT IS INVALID; AND

6   UNDER THE PLEADINGS, AS HAVE BEEN BEFORE THIS COURT, THELEN

7   WOULD BE IRREPARABLY HARMED BY PAYING THAT MONEY WHICH WOULD

8   THEN END UP IN SWITZERLAND, AND SHOULD THE NINTH CIRCUIT

9   REVERSE, WE'LL NEVER HAVE A CHANCE TO SEE THAT MONEY AGAIN.

10        THE COURT:  WELL, THE WAY THE FRANC IS GOING AGAINST

11  THE DOLLAR, IT WOULD PROBABLY BE A GOOD THING FOR THE MONEY TO

12  BE INTRUSTED.

13        MS. THURM:  PERHAPS TO MR. MARLAND, BUT NOT IN TERMS OF

14  THELEN'S ABILITY TO EXERCISE ANY JUDGEMENT SHOULD THE NINTH

15  CIRCUIT REVERSE AND SHOULD WE GET BACK, ETCETERA, ETCETERA.  SO

16  IF THE COURT IS INTERESTED IN --

17        THE COURT:  CONSIDERING THE AMOUNT OF MONEY THAT'S BEEN

18  SPILLED IN THIS CASE, $612,000 IS SMALL CHANGE, ISN'T IT?

19        MS. THURM:  THERE HAS BEEN A SIGNIFICANT AMOUNT OF

20  MONEY, BUT THERE IS A SIGNIFICANT AMOUNT OF DAMAGES SOUGHT BY

21  MR. MARLAND VERSUS 50 MILLION DOLLARS.

22        THE COURT:  ANYTHING FURTHER?

23        MR. HAYES:  YES, YOUR HONOR.

24        BACK TO THE OTHER REASON WHY WE'RE HERE.  WE'RE HERE ON

25  A T.R.O. APPLICATION TO TRY TO STOP THE ICDR FROM SIMPLY

1  FOLLOWING THROUGH ON A PROCESS THAT BEGAN BEFORE THE LAWSUIT,

2  THELEN ONE, WAS EVER FILED.  I SAW NOTHING IN THELEN'S REPLY ON

3  THIS ISSUE.  WE POINTED OUT THAT THE ICDR HAD ORIGINALLY SET A

4  DEADLINE OF OCTOBER 15TH, AND THELEN LET THAT PASS.  AFTER THAT

5  THELEN -- THE ICDR COULD HAVE SENT A NOTICE ON OCTOBER 16

6  SAYING, I HAVE NOT HEARD ANYTHING FROM THE PARTIES ABOUT WHETHER

7  THEY REACHED AN ALTERNATE AGREEMENT ON APPOINTING AN ARBITRATOR.

8  WE HEREBY APPOINT X, WHO IS THE PERSON THAT WAS AS A RESULT OF

9  THE STRIKE AND MATCH PROCESS.  SO I HAVE NEVER, NEVER SEEN A

10  CASE WHERE SOMEONE LET A DEADLINE PASS, AND THEN THE DEADLINE

11  GOT RESET, AND CAME IN A SECOND TIME AND SAID, WE WOULD BE

12  IRREPARABLY HARMED.

13          THAT IS ACTUALLY WHY WE'RE HERE TODAY.  AND IF THERE IS

14  ANY MERIT TO THELEN'S PRELIMINARY INJUNCTION MOTION, THE COURT

15  CAN ENTER A PRELIMINARY INJUNCTION LATER, BUT THE T.R.O. IS

16  ABSOLUTELY WITHOUT MERIT, AND TO SEEK A T.R.O. WITHOUT

17  DISCLOSING TO THE COURT THAT THE DEADLINE ALREADY PASSED ONCE,

18  IS UNFORTUNATE.  I THINK JUST ON THAT, YOU OUGHT TO SAY,

19  APPLICATION FOR T.R.O. DENIED, COME BACK TO ME WITH A SCHEDULE

20  FOR PRELIMINARY INJUNCTION, HAVE A NICE DAY.

21          MS. THURM:  YOUR HONOR, THE ICDR IS ESSENTIALLY WAITING

22  FOR THIS COURT TO ORDER SOMETHING.  IF THE COURT DOESN'T STAY OR

23  TEMPORARILY ENJOIN MR. MARLAND FROM PROCEEDING, THE ICDR IS

24  GOING TO APPOINT AN ARBITRATOR AND THE PROCESS OF AN ARBITRATION

25  WILL COMMENCE.

1    THE COURT:  IS THERE ANYTHING THAT I NEED THAT I DON'T

2 NOW HAVE BEFORE ME FOR PURPOSES OF DECIDING THIS MATTER AS A

3 PRELIMINARY INJUNCTION AS OPPOSED TO A TEMPORARY RESTRAINING

4 ORDER?

5    MS. THURM:  WE DON'T THINK SO.  WE ARE PREPARED, IN

6 LIGHT OF THE FACT THERE WAS ADDITIONAL TIME FOR BRIEFING, AND IN

7 LIGHT OF THE ADDITIONAL SUBMISSION MR. HAYES MADE TODAY,

8 SUBMITTING SOME ADDITIONAL EVIDENCE TO THE COURT, WHICH WE THINK

9 IS ABSOLUTELY IN FURTHER SUPPORT OF OUR POSITION, WE ARE

10 PREPARED TO REST ON THESE PAPERS FOR PURPOSES OF BOTH THE T.R.O.

11 AND THE PRELIMINARY INJUNCTION.

12    MR. HAYES:  YOUR HONOR, I GOT LESS THAN 48 HOURS TO

13 DRAFT THIS RESPONSE.  MISS THURM HAD FROM FRIDAY EVENING TO

14 TUESDAY TO DRAFT HER REPLY; AND THEY TAKE US TO TASK IN THEIR

15 REPLY FOR NOT ADDRESSING CASES THEY DIDN'T CITE IN THEIR

16 APPLICATION.

17    THE COURT:  HOW MUCH MORE TIME DO YOU THINK YOU NEED?

18    MR. HAYES:  WELL, BESIDES SOMETHING APPROACHING A MORE

19 CIVIL BRIEFING SCHEDULE, I DID OUTLINE SOME DISCOVERY TOPICS.  I

20 WOULD LIKE TO KNOW.  MISS THURM WANTS TO SAY, WELL, WE WROTE A

21 WHOLE PARAGRAPH IN OUR BRIEF.  FINE.  IF THAT'S GOING TO BE

22 THEIR DEFENSE, FINE.

23    THE COURT:  HOLD ON.  HOW MUCH MORE TIME DO YOU NEED TO

24 SUBMIT OPPOSITION, SO THAT THE COURT CAN TAKE THIS MATTER AS A

25 PRELIMINARY INJUNCTION MOTION?

1    MR. HAYES:  A COUPLE OF WEEKS, YOUR HONOR.

2    THE COURT:  TWO WEEKS.

3    MR. HAYES:  IN WHICH ALSO, AS I SAID, I'D RATHER NOT

4 HAVE TO TAKE DEPOSITION.  I THINK WE CAN STIPULATE TO SOME

5 THINGS, BUT THE RESPONSE WAS EVERYTHING I WANTED TO KNOW IS

6 IRRELEVANT.  JUST ONE EXAMPLE --  THELEN SAYS -- NECESSARILY

7 FOUND THAT THE DISPUTES AREN'T ARBITRABLE.  THELEN'S 30(B)(6)

8 WITNESS REFUSED TO ANSWER THAT QUESTION.

9    I ASKED THE QUESTION SIX DIFFERENT WAYS.

10    "ISN'T IT TRUE THAT THE ARBITRATION AGREEMENT IN THE

11 1999 ATTORNEY/CLIENT AGREEMENT CAME INTO THE 2002 AGREEMENT BY

12 THE LANGUAGE OF THE 2002 AGREEMENT THAT SAYS 'THIS REPLACES ALL

13 PRIOR AGREEMENTS'?"  QUOTE:  "EXCEPT T.R.T. SHALL RESUME ITS

14 ROLE AS GENERAL COUNSEL."

15    THEN, "AS PROVIDED IN THE SEPTEMBER 18TH AMENDMENT TO

16 THE ATTORNEY/CLIENT AGREEMENT."

17    I ASKED THAT QUESTION, AND THE ANSWER WAS NOT "NO".

18 THE ANSWER WAS "I REFUSE TO ANSWER.  I CANT TAKE A POSITION ON

19 THAT".

20    SO THEY DIDN'T EVEN REST ON THIS ARGUMENT BEFORE YOUR

21 HONOR.  IT'S NOT ADDRESSED IN THE SUMMARY JUDGEMENT BRIEF.

22 THERE'S ALL KINDS OF THINGS LIKE THAT THAT PERHAPS WE CAN

23 RESOLVE ON STIPULATION; AND IF WE CAN'T, WE CAN TAKE A QUICK

24 DEPOSITION AND GET THIS IN IN A COUPLE OF WEEKS, BUT IT'S

25 COMPLICATED AND A LITTLE PREJUDICIAL, BECAUSE SAYING A COUPLE OF

1   WEEKS -- DECEMBER 10, OUR APPEAL BRIEF IS DUE.

2          MS. THURM:  FOR PURPOSES OF PRELIMINARY INJUNCTION, OUR

3   POSITION IS THERE IS NO ARBITRATION CLAUSE UNDER THE ORDER THE

4   COURT ALREADY ISSUED.  HAVING TO PUT THELEN THROUGH DISCOVERY,

5   THAT MR. HAYES IS NOW CONCEDING WOULD BE DUPLICATIVE OF

6   DISCOVERY THAT ALREADY TOOK PLACE IN THE UNDERLYING ACTION, IS

7   UNNECESSARY.

8          THE QUESTION IS, IS IT A PART OF THE ORDER AND/OR

9   WHETHER THE CLAIM HE IS MAKING, THIS INCORPORATION BY REFERENCE

10  ARGUMENT IS BARRED BY RES JUDICATA COLLATERAL ESTOPPEL.

11         THE COURT:  MR. HAYES, DON'T INTERRUPT.

12         MS. THURM:  THERE IS NO DISCOVERY THAT IS NECESSARY.  I

13  MEAN, FOR PURPOSES OF PRELIMINARY INJUNCTION.  THERE IS AN

14  AGREEMENT.  THIS COURT HAS FOUND THAT AGREEMENT TO BE VALID.

15  THERE IS NO ARBITRATION CLAUSE ON THE FACE OF THE AGREEMENT.

16  MR. HAYES HAS AN INCORPORATION BY REFERENCE ARGUMENT THAT, BY

17  THE TERMS OF THE COURT ORDER, HAS BEEN REJECTED.  THIS COURT

18  FOUND THAT THE 1999 AGREEMENT WAS TERMINATED.  THIS COURT FOUND

19  THAT A NEW AGREEMENT WAS NEGOTIATED.  THIS COURT FOUND THAT THE

20  NEW AGREEMENT REPLACED AND SUPERCEDES THE PRIOR AGREEMENT.  THAT

21  SETTLES THE MATTER.

22         TO THE EXTENT HE HAS THIS INCORPORATION BY REFERENCE

23  ARGUMENT, HE PLED THAT IN HIS ANSWER, PARAGRAPH SIX, SO IF IT'S

24  NOT SPECIFICALLY DEALT WITH BY THE ORDER, THEN IT'S DEALT WITH

25  BY CLAIM AND ISSUE PRECLUSION; AND TO SUGGEST THAT THELEN SHOULD

1    BE PUT TO THE BURDEN OF A 30(B)(6)  DEPOSITION ON PRECISELY THE

2    TOPICS MR. HAYES HAS NOW ADMITTED HE TOOK DISCOVERY ON THE

3    UNDERLYING ACTION, IS UNNECESSARY AND ALSO HARASSING.

4          THE COURT:  ALL RIGHT.  MR. HAYES, YOU MAY RESPOND, AND

5    THEN THE MATTER IS SUBMITTED.

6          MR. HAYES:  YOUR HONOR, IF EVERYTHING MISS THURM SAID

7    IS RIGHT, THE DUTY THAT IS  -- THE 2005 CLAIM OF BREACH LOYALTY

8    ARISES FROM THE 1999 AGREEMENT, WHETHER THE AGREEMENT IS

9    TERMINATED OR NOT.  IT'S NOT RELIEF FROM THE 2000 AGREEMENT.

10   IT'S A DUTY THAT WAS CREATED IN 1999.  IT CONTINUED.  SO TO SAY,

11   WELL, YOU KNOW, THAT'S NOT ARBITRABLE -- THAT'S JUST WRONG.

12          I DO TAKE STRENUOUS OBJECTION TO MISS THURM SAYING I

13   ADMITTED I TOOK DISCOVERY.  I TRIED TO.  I ASKED A QUESTION, I

14   GOT A NON-RESPONSE ANSWER.  I RAISED IT WITH YOUR HONOR, THEN I

15   RAISED IT IN THE JANUARY 3RD CONFERENCE OF THIS YEAR.  YOU SAID,

16   IF YOU COME TO AN ISSUE LATER -- THAT, AND A COUPLE OF OTHER

17   THINGS I SAID THEY DIDN'T RESPOND TO --IF IT BECOMES AN ISSUE

18   LATER, WE'LL REVISIT IT.

19          I SAID, "THAT'S FINE, YOUR HONOR".

20          IT DIDN'T BECOME AN ISSUE IN THELEN ONE.  NOW IT'S AN

21   ISSUE HERE.  SO THAT'S TERRIBLY WRONG, TO SAY I AM ADMITTING I

22   TOOK DISCOVERY.  I AM ADMITTING I TRIED TO.  THE RECORD IS

23   CRYSTAL CLEAR MR. CARGO SAID, "I'M NOT GOING TO ANSWER THAT

24   QUESTION."

25          THE COURT:  SUBMITTED?

1        MS. THURM:  YES.

2        THE COURT:  THE QUESTION, OF COURSE, BEFORE THE COURT,

3  IS WHETHER OR NOT A TEMPORARY RESTRAINING ORDER SHOULD BE ISSUED

4  IN THIS CASE AND THE STANDARD BY WHICH THE COURT MAKES A

5  DETERMINATION IS WELL KNOWN, CERTAINLY WELL KNOWN TO THE PARTIES

6  HERE; THAT IS, WHETHER SERIOUS QUESTIONS GOING TO THE MERITS ARE

7  RAISED AND WHETHER THE BALANCE OF HARDSHIPS TIPS CAREFULLY IN

8  FAVOR OF THE PARTY SEEKING A TEMPORARY RESTRAINING ORDER.

9        IN THIS CASE, I THINK THE GROUNDS FOR ISSUANCE OF A

10  TEMPORARY RESTRAINING ORDER HAVE BEEN SATISFIED.  THE ISSUE

11  BEFORE THE COURT IS WHETHER OR NOT THERE WOULD BE A IRREPARABLE

12  INJURY SUFFERED BY THELEN IN THE EVENT THAT IT WERE FORCED TO GO

13  FORWARD WITH AN ARBITRATION.  IN LIGHT OF THE FACT THAT THE

14  COURT HAS DETERMINED THE DECEMBER, 2002 AGREEMENT IS THE

15  GOVERNING AGREEMENT BETWEEN THE PARTIES, AND IN THAT AGREEMENT

16  THERE IS NO ARBITRATION PROVISION, HAVING TO GO THROUGH AN

17  ARBITRATION WHEN THERE IS NOT A CONTRACTUAL OR OTHER BASIS FOR

18  DOING SO DOES REPRESENT THE IRREPARABLE INJURY, AND UNDER

19  CIRCUMSTANCES WHERE THAT IS A POSSIBILITY, THE PARTY FORCED TO

20  GO THROUGH ARBITRATION UNDER THOSE CIRCUMSTANCES WOULD SUFFER

21  INJURY THAT IS INJURY THAT CANNOT BE REPAIRED.

22        THE BALANCE OF HARDSHIPS, I THINK THEN TIPS IN FAVOR OF

23  THELEN FOR THAT REASON; AND, SUBSEQUENTLY, THE TEMPORARY

24  RESTRAINING ORDER TO RESTRAIN THE ARBITRATION TEMPORARILY IS

25  APPROPRIATE.

1        MR. HAYES HAS INDICATED THAT HE NEEDS ADDITIONAL TIME

2    WITHIN WHICH TO RESPOND TO THIS MATTER FOR PURPOSES OF

3    DETERMINING IT AS A PRELIMINARY INJUNCTION AND, CONSEQUENTLY,

4    THE COURT WILL SET THE FOLLOWING BRIEFING SCHEDULE.

5        MR. HAYES, ON BEHALF OF MARLAND, MAY FILE HIS

6    OPPOSITION TO A PRELIMINARY INJUNCTION, NOT LATER THAN NOVEMBER

7    29TH.  THELEN MAY FILE ITS REPLY NOT LATER THAN DECEMBER 6TH,

8    AND THE COURT WILL SET THE MATTER DOWN FOR HEARING ON DECEMBER

9    13TH AT 2:30 P.M.  COUNSEL SHOULD KEEP IN TOUCH WITH THE CLERK

10   TO DETERMINE WHETHER OR NOT THE MATTER IS GOING TO BE RULED UPON

11   ON THE PAPERS.

12       IN THE MEANTIME, MISS THURM, WHAT IS THE AMOUNT OF THE

13   BOND, MISS THURM, THAT THELEN IS PREPARED TO POST?

14       MS. THURM:  I THINK THE CASE LAW, INCLUDING THE WORLD

15   SECURITIES CASE THAT WE CITED FOR THE COURT, INDICATES NORMAL

16   BOND IS APPROPRIATE.

17       THE COURT:  THAT DOESN'T ANSWER MY QUESTION.  GIVE ME A

18   NUMBER.

19       MS. THURM:  WELL, IF THE COURT CAN GIVE ME AN

20   INDICATION WHAT THE COURT THINKS IS APPROPRIATE UNDER THE

21   CIRCUMSTANCES, THEN I CAN RESPOND.

22       THE COURT:  $25,000.

23       MS. THURM:  THELEN CAN MEET A BOND IN THAT AMOUNT.

24       THE COURT:  VERY WELL.  THEN ON THE FILING OF THE BOND,

25   THE RESTRAINING ORDER WILL GO INTO EFFECT, AND WE HAVE A HEARING

1   DATE.   STAY IN TOUCH WITH THE COURT, BECAUSE THE COURT MAY

2   DECIDE THIS ON THE PAPERS.

3            MS. THURM:   I TAKE IT THAT THE TEMPORARY RESTRAINING

4   ORDER WILL BE IN EFFECT UNTIL AT LEAST DECEMBER 6 WHEN THE REPLY

5   BRIEF IS DUE.

6            THE COURT:   UNTIL DECEMBER 13TH.

7            THANK YOU.

8            MS. THURM:   THANK YOU, YOUR HONOR.

9            MR. HAYES:   THANK YOU, YOUR HONOR.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8      I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

9 TRANSCRIPT OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER.

10

11

12

13

14

15

16

17

18 JUANITA GONZALEZ

19 CSR NO. 3003

20

21

22

23

24

25